## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO.: 1:20-cv-20836-BB

AARON FRUITSTONE, on behalf of himself and
all other similarly situated,

      Plaintiff,

v.

SPARTAN RACE INC., a Delaware Corporation,

      Defendant.

_____/

### DEFENDANT SPARTAN RACE, INC.'S MOTION TO TRANSFER THIS CASE UNDER 28 U.S.C. § 1404(A) OR, *IN THE ALTERNATIVE*, MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT WITH INCORPORATED MEMORANDUM OF LAW

Defendant, Spartan Race, Inc., and incorrectly named in the Complaint [D.E. 1] and Amended Complaint [D.E. 15] as Spartan Race Inc. ("Spartan"), in accordance with 28 U.S.C. § 1404(a), files this Motion to Transfer this case to the United States District Court for Massachusetts or, *in the alternative*, pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure, files this Motion to Dismiss Plaintiff's, Aaron Fruitstone ("Plaintiff"), Amended Complaint [D.E. 15] *with prejudice*, with Incorporated Memorandum of Law, and states as follows:

### EXECUTIVE SUMMARY

As addressed *infra,* this Honorable Court should, respectfully, transfer this case to the United States District Court for Massachusetts, which is overwhelmingly a more convenient forum for this litigation.  *In the alternative*, should this Court decide not to transfer this case, Spartan requests Plaintiff's Amended Complaint be dismissed *with prejudice*.  By way of brief background, this case involves an ***expressly disclosed*** "mandatory administrative and racer insurance fee," which Spartan, a Delaware corporation with its principal place of business in Boston, Massachusetts,[1] charged to

---

[1] *See* Affidavit of Spartan Race, Inc., dated May 4, 2020, at 1-2, ¶ 4, attached hereto as Exhibit "1."

Plaintiff in connection with his registration for an obstacle course race organized by Spartan.[2]  In particular, Plaintiff, a purported resident of Florida, claims Spartan charges consumers "a mandatory, non-transferable, and non-refundable 'Racer Insurance Fee'," which purportedly serves as a "hidden profit center" for Spartan and "is objectively likely to deceive any reasonable consumer into believing that the $14 charge reflects the cost of the insurance coverage being passed through to that consumer."[3] Given the foregoing allegations, amongst many other unsubstantiated and immaterial claims, Plaintiff asserts the following causes of action against Spartan: **1)** alleged violations of the Massachusetts Consumer Protection Law, Massachusetts General Laws, Chapter 93A on behalf of a putative nationwide class (Count I); **2)** alleged violations of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") on behalf of a putative Florida subclass (Count II); and **3)** purported unjust enrichment (Count III).

For the various reasons addressed herein, however, this Court should transfer this case to the United States District Court for Massachusetts, which is unequivocally the more convenient forum for this litigation.  Indeed, notwithstanding Plaintiff's alleged Florida residency, the instant case could have been brought in the United States District Court for Massachusetts.  Even more so, the instant case _should have_ been brought in the United States District Court for Massachusetts given, among other things, the convenience (including the location and availability) of the parties and witnesses, Spartan's substantial connection to Massachusetts and limited connection to Florida, the relative ease of access to sources of proof, and the United States District Court for Massachusetts' familiarity with its state consumer protection laws.  Simply stated, maintaining this lawsuit in Florida would place a significant, and entirely unnecessary, strain on many of Spartan's officers and employees and, consequently, would cause a substantial disruption to Spartan's business and operations.

Should this Court, however, be inclined to deny the warranted transfer of the instant case and, instead, choose to adjudge Plaintiff's claims itself, this Honorable Court should dismiss Plaintiff's

---

[2] _See generally_ [D.E. 15].
[3] [_Id._ at 3, ¶¶ 4, 6-7].

Amended Complaint *with prejudice*, as: **1)** Plaintiff lacks Article III standing to assert claims, on behalf of himself and unnamed putative class members, pursuant to Massachusetts (or any other states) consumer protection statutes – thus, Count I fails as a matter of law;[4] **2)** the parties entered into a binding contract,[5] which expressly disclosed Plaintiff's registration payment total "include[d] a mandatory administrative ***and*** racer insurance fee ($14.00)," and because Spartan did not make any material misstatement or misrepresentation as to how this $14.00 would be specifically calculated and/or allocated, no reasonable consumer (including Plaintiff) could believe the $14.00 fee would be distributed *solely* to a third party insurance carrier – therefore, Count II fails as a matter of law;[6] and

---

[4] *See, e.g., Renzi v. Demilec (USA) LLC,* 2013 WL 6410708, at *3 (S.D. Fla. Dec. 9, 2013) (recognizing Article III standing issues need not be delayed until after class certification and finding plaintiff did not have "standing to bring claims pursuant to other state's statutes."); *Zaycer v. Sturm Foods, Inc.,* 896 F. Supp. 2d 399 (D. Md. Sept. 12, 2013) (resolving standing challenge prior to class certification and holding "[b]ecause the injury to the named plaintiff occurred in Maryland, she has no standing to sue under any state consumer protection law except for Maryland's."); *In re Checking Account Overdraft Litig.,* 694 F.Supp.2d 1302, 1324-25 (S.D. Fla. Mar. 11, 2010) ("[A] claim cannot be asserted on behalf of a class unless at least one named plaintiff has suffered the injury that gives rise to the claim.").

[5] As part of any obstacle course race registration, a prospective registrant, including Plaintiff, executes a "WAIVER, RELEASE OF LIABILITY, COVENANT NOT TO SUE & IMAGE RELEASE" (the "Waiver"). A copy of Plaintiff's Waiver, Release of Liability, Covenant Not to Sue & Image Release, and Plaintiff's acknowledgement of the same during the registration process is attached hereto as Composite Exhibit "2." As made evident by Exhibit "2," the Waiver is prefaced with language making clear the registrant's "order total includes a mandatory administrative ***and*** racer insurance fee ($14.00) for each event registration." *Id.* (emphasis supplied). Then, on the date of the actual obstacle course race, any registrant and prospective participant, including Plaintiff, is provided with a *second* copy of the Waiver and, prior to participating in the obstacle course race, must acknowledge and initial the Waiver again. A copy of Plaintiff's *second* Waiver, Release of Liability, Covenant Not to Sue & Image Release, which Plaintiff acknowledged/executed on April 28, 2019, is attached hereto as Exhibit "3." As made evident by Exhibit "3," prior to participating in the April 28, 2019 obstacle course race, Plaintiff was apprised, *for a second time*, his "order total include[d] a mandatory administrative ***and*** racer insurance fee ($14.00) for each event registration." *Id.* (emphasis supplied).

[6] Ex. "2" and Ex. "3" (emphasis supplied). *See, e.g., Costa v. Kerzner Intern. Resorts, Inc.,* 2011 WL 2519244, at *2 (S.D. Fla. June 23, 2011) (recognizing "[t]he parties' agreement, however provides that the funds are to pay a 'mandatory housekeeping gratuity and utility service fee' and, therefore, holding plaintiff "could not reasonably expect all of the funds to be for a gratuity, and has fallen short of stating a [FDUTPA] claim."); *Berry v. Budget Rent A Car Sys., Inc.,* 497 F. Supp. 2d 1361, 1367 (S.D. Fla. July 17, 2007) (holding itemization of a cost recovery fee "as a separate charge, is not unfair or deceptive because it was clearly disclosed at the time of the rental"); *Deere Construction, LLC v. Cemex Construction Materials Florida,* 2016 WL 2770537, at *3 (S.D. Fla. May 12, 2016) (dismissing plaintiff's FDUTPA claim, in part, because "the Complaint [did not] allege that Defendants ever made a statement or representation as to how the surcharges would be calculated.").

**COLE, SCOTT & KISSANE, P.A.**
110 TOWER - 110 S.E. 6TH STREET, SUITE 2700 - FT. LAUDERDALE, FLORIDA 33301 (954) 703-3700 (954) 703-3701 FAX

3) Plaintiff's unjust enrichment claim is barred by the existence of the Waiver that Plaintiff willingly executed – thus, Count III fails as a matter of law.[7]

## BACKGROUND

1.      As Plaintiff concedes, Spartan is a widely-known and renowned obstacle course race organizer with its principal place of business in Boston, Massachusetts.[8]  In fact, Spartan, which held its first official obstacle course race in 2010, is now the global leader in obstacle course races and organizes a variety of obstacle course races across the world – actually, since 2010, Spartan has grown to 250+ annual events across 42+ countries.[9]

2.      To that end, each time an individual registers to participate in a race offered by Spartan, the registrant is required to pay various fees, among them, a $14.00 fee, which is invoiced as the "Racer Insurance Fee."  This invoiced "Racer Insurance Fee," is used, *in part*, to purchase "accident medical insurance coverage from a licensed third-party insurance carrier, which provides limited coverage to participants for medical bills arising from an injury incurred while participating at an event operated by Spartan Race, Inc."[10]

3.      Further, as part of the registration process, and as Plaintiff points out in his Amended Complaint, a registrant is provided a contract (the "Waiver"), is prefaced with clear language the registrant's "order total includes a mandatory administrative ***and*** racer insurance fee ($14.00) for each

---

[7] Florida law is well-established that, where there is an express contract between the parties, claims arising out of that contractual relationship will not support a claim for unjust enrichment *See, e.g., Reese v. JPMorgan Chase & Co.,* 686 F. Supp. 2d 1291, 1309 (S.D. Fla. Oct. 15, 2009) (dismissing plaintiff's unjust enrichment claim *with prejudice* because of existence of express contract); *Berry,* 497 F. Supp. 2d at 1369 (finding "a quasi-contractual claim fails upon a showing that an express contract exists"); *Ocean Communications, Inc. v. Bubeck,* 956 So. 2d 1222, 1225 (Fla. 4th DCA 2007) ("[A] plaintiff cannot pursue an equitable theory, such as unjust enrichment . . . to prove entitlement to relief if an express contract exists.").

[8] [D.E. 15 at 4, ¶ 11].  Of significance, the vast majority of Spartan's officers and directors are employed at that location, and virtually all of Spartan's personnel with decision-making authority are employed at that location. In addition to the foregoing, many Spartan employees, who serve as "field employees" across the country, report to the office in Massachusetts. Ex. "1" at 1, ¶ 4.

[9] Ex. "1" at 2, ¶ 8.  By way of brief background, Spartan was officially incorporated, in Delaware, on July 25, 2012.  *Id.* at 2, ¶ 9.

[10] *See* [D.E. 15 at 6, ¶ 19] – note, the image superimposed within Plaintiff's Amended Complaint [D.E. 15 at 6, ¶ 19] resolves "What . . . the race insurance policy cover[s]," ***not*** how the $14.00 fee is calculated and/or allocated.

event registration"[11]  – if an individual wishes to participate in any obstacle course race offered by Spartan, he/she must read and acknowledge the Waiver (note, a portion of the Waiver is superimposed below with emphasis supplied).

## Read and agree to the waiver to continue

*Please note that your order total includes a mandatory administrative and racer insurance fee ($14.00) for each event registration and a Chronotrack processing fee. Insurance fee only applicable to racers.  Depending on your state of residence, there may also be a state sales tax applied.*

**SPARTAN RACE SERIES**

**WAIVER, RELEASE OF LIABILITY, COVENANT NOT TO SUE & IMAGE RELEASE**

In consideration of my ("I", "my" or "myself") and/or on behalf of my child/ward's (each a "Ward") participation as a competitor, volunteer (or other staff member) and/or spectator (any of the foregoing, a "Participant") in a Spartan Race, Spartan Kids' or Varsity Race, Spartan workout or other Spartan-owned, operated, licensed or sponsored event(s) (any of the foregoing and any ancillary events/activities/operations related thereto, an "Event"), I, on behalf of myself and Ward, acknowledge, accept and agree the following:

4.      Thus, prior to finalizing registration and purchasing any race ticket, a consumer is well apprised the invoiced $14.00 "Racer Insurance Fee" is comprised of a mandatory administrative ***and*** racer insurance fee.

5.      That said, Plaintiff, a purported Florida resident, alleges to have *only* registered for a Spartan obstacle course race in Palm Beach, Florida on April 28, 2019.  *See* [D.E. 15 at 7, ¶ 22]. Accordingly, despite the Waiver unequivocally stating that the $14.00 charge invoiced as 'Racer Insurance Fee' comprised of "a mandatory administrative ***and*** racer insurance fee," Plaintiff *willingly*

---

[11] *See* [*Id.* at 3, ¶ 5]; Ex. "2" (emphasis supplied). *See also Financial Sec. Assur., Inc. v. Stephens, Inc.,* 500 F.3d 1276, 1284-85 (11th Cir. 2007) ("This court recognizes an exception [to the general rule courts will not consider anything beyond the face of the complaint and documents attached thereto when analyzing a motion to dismiss], a plaintiff refers to a document in its complaint, the document is central to its claim, its contents are not in dispute, and the defendant attaches the document to its motion to dismiss.")

**COLE, SCOTT & KISSANE, P.A.**
110 TOWER - 110 S.E. 6TH STREET, SUITE 2700  - FT. LAUDERDALE, FLORIDA 33301 (954) 703-3700 (954) 703-3701 FAX

completed registration and tendered the total registration payment, including the $14.00 fee, to Spartan. [*Id.* at 7, ¶¶ 23-24]; Ex. "2" (emphasis supplied).

6.     Then, on the actual date of the obstacle course race (April 28, 2019), Plaintiff was provided with a *second* copy of the Waiver and, prior to participating in the obstacle course race, acknowledged and initialed the Waiver again.  *See* Exhibit "3."  Indeed, prior to ever even participating in the April 28, 2019 obstacle course race, Plaintiff was apprised, *for a second time*, his "order total include[d] a mandatory administrative ***and*** racer insurance fee ($14.00) for each event registration." *Id.* (emphasis supplied).

7.     That said, only after having actually participated in the April 28, 2019 race offered by Spartan, Plaintiff filed his putative class action Complaint [D.E. 1] and, thereafter, on April 14, 2020, Plaintiff filed his Amended Complaint [D.E. 15].  Within Plaintiff's Amended Complaint, Plaintiff alleges, amongst other unsubstantiated allegations, Spartan's "representations and marketing materials regarding its 'mandatory' 'Racer Insurance Fee' create in a reasonable consumer the false impression that the $14 'Racer Insurance Fee' is used solely to pay for accident insurance for the benefit of the registrant" and Spartan "pockets nearly all of the $14 Race Insurance Fee [sic] as a hidden profit center for the company, undisclosed to consumers."  [*Id.* at 3, ¶ 6].

8.     Moreover, and despite being well apprised (on two separate occasions) the $14.00 registration fee comprises of "a mandatory administrative ***and*** racer insurance fee" – as it is made abundantly clear by the Waiver, Plaintiff claims Spartan "marketing description and charging of the mandatory 'Racer Insurance Fee' is objectively likely to deceive any reasonable consumer into believing that the $14 charge reflects the cost of the insurance coverage being passed through to that consumer."  Ex."2" and Ex. "3" (emphasis supplied); [D.E. 15 at 3, ¶ 7].[12]

9.     In fact, despite none of Spartan's marketing and/or advertising material providing any statement or representation as to how the at-issue $14.00 fee would be calculated and/or allocated

---

[12] Spartan refutes Plaintiff's baseless accusation the accident insurance provided to race participants is "basically worthless."  [D.E. 15 at 3, ¶ 5].

**COLE, SCOTT & KISSANE, P.A.**
110 TOWER - 110 S.E. 6TH STREET, SUITE 2700  - FT. LAUDERDALE, FLORIDA 33301 (954) 703-3700 (954) 703-3701 FAX

amongst the administrative ***and*** racer insurance fee, Plaintiff alleges Spartan "representations would lead a reasonable consumer to believe that the $14 'Racer Insurance Fee' is used solely to purchase insurance on behalf of the registrant." [*Id.* at 7, ¶ 20].[13]  Significantly, however, Plaintiff does not allege any portion of the $14.00 fee went to anything other than what the Waiver states it is for, *i.e.,* recovery of administrative fees incurred by Spartan and payment to a third-party insurance carrier for accident insurance coverage.

10.     Based on the foregoing allegations, amongst other claims which lack merit, Plaintiff asserts an array of common-law and consumer protection claims: 1) alleged violations of the Massachusetts Consumer Protection Law, Massachusetts General Laws, Chapter 93A (Count I); 2) alleged violations of FDUTPA (Count II); and, in the alternative, 3) purported unjust enrichment (Count III).

11.     As dissected *infra,* however, Plaintiff's putative class action case against Spartan, however, should be transferred to the United States District Court for Massachusetts, which is undoubtedly the far more convenient forum for this litigation.  *In the alternative*, and should this Court decline to transfer the instant case, Plaintiff's Amended Complaint should be dismissed *with prejudice*.

12.     In sum, Plaintiff was well-aware the $14.00 registration fee charged by Spartan encompassed an "administrative ***and*** racer insurance fee" and expressly agreed to pay those fees.  Now, through sleight of hand, Plaintiff is ignoring the clear language of the Waiver he agreed to and relying upon the itemizations on the final race registration receipt to proclaim deception.  Respectfully, however, and although this Court is bound to accept Plaintiff's allegations of fact as true for the purpose of this Motion, the same does not hold for Plaintiff's opinions and conclusory, unsubstantiated allegations.  Indeed, in the event this Court decides to retain jurisdiction, this Court need not accept

---

[13] Of note, Plaintiff also superimposes a chart <u>created by a business competitor of Spartan</u> in a futile attempt to support its baseless claim the $14.00 charge is represented to be totally allocated to mandatory insurance; although the registration process makes evident the $14.00 charge is allocated amongst administrative fees and the racer insurance fee.  [*See id.* at 2, ¶ 3].

Plaintiff's mere opinions that the $14.00 registration fee, clearly comprising of administrative fees and the racer insurance fee, is "deceptive" or "unfair."

## MOTION TO TRANSFER THIS CASE UNDER 28 U.S.C. § 1404(A)

## I.  LEGAL STANDARD TO TRANSFER CIVIL CASE PURSUANT TO 28 U.S.C. § 1404(A).

It is well-established that transfer of venue in a civil case is governed by 28 U.S.C. § 1404(a). Under this section, "[f]or the convenience of parties and witnesses, [and] in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." *Rothschild Storage Retrieval Innovations, LLC v. Sony Mobile Communications (USA) Inc.,* 2015 WL 224952, at *2 (S.D. Fla. Jan. 15, 2015) (citing *Piper Aircraft Co. v. Reyno,* 454 U.S. 235, 253, 102 S.Ct. 252, 70 L.Ed.2d 419 (1981) and quoting 28 U.S.C. § 1404(a)).[14] To that end, the inquiry on a motion to transfer under 28 U.S.C. § 1404(a) is not whether one venue or another would be the best venue, *but whether there is a venue that is more convenient*.  *See* 28 U.S.C. § 1404(a).  In this regard, this Court is granted "broad discretion" in ruling on this Motion to Transfer. *Rothschild Storage,* 2015 WL 224952, at *2 (citing *Osgood v. Disc. Auto Parts, LLC,* 981 F.Supp.2d 1259, 1263 (S.D. Fla. Nov. 1, 2013) (stating that the "standard for transfer under 28 U.S.C. §1404(a) leaves much to the broad discretion of the court").

"In determining the appropriateness of transfer, courts employ a two-step process." *Id.*; *see also Osgood,* 981 F.Supp.2d at 1263 (citing *Abbate v. Wells Fargo Bank, Nat. Ass'n,* 09-62047-Civ, 2010 WL 3446878, at *4 (S.D. Fla. Aug. 31, 2010)).  The threshold question requires this Court to determine whether the case could have been brought in the forum to which the transfer is sought. *See* 28 U.S.C. § 1404(a). If the transferee district is a proper venue, as it is here, this Court then must conduct a balancing test, assessing "whether convenience and the interests of justice require transfer to the requested forum." *Rothschild Storage,* 2015 WL 224952, at *2 (citing *Osgood,* 981 F.Supp.2d at 1263).  "In analyzing this second prong, the Court applies several factors:

---

[14] The purpose of §1404(a) is to prevent the waste "of time, energy, and money" and "to protect litigants, witnesses, and the public against unnecessary inconvenience and expense."  *Van Dusen v. Barrack,* 376 U.S. 612, 616 (1964) (citing *Continental Grain Co. v. Barge FBL–585,* 364 U.S. 19, 26, 27 (1960)).

**COLE, SCOTT & KISSANE, P.A.**
110 TOWER - 110 S.E. 6TH STREET, SUITE 2700  - FT. LAUDERDALE, FLORIDA 33301 (954) 703-3700 (954) 703-3701 FAX

> the convenience of the witnesses; (2) the location of relevant
> documents and the relative ease of access to sources of proof; (3) the
> convenience of the parties; (4) the locus of operative facts; (5) the
> availability of process to compel the attendance of unwilling witnesses;
> (6) the relative means of the parties; (7) a forum's familiarity with the
> governing law; (8) the weight accorded a plaintiff's choice of forum;
> and (9) trial efficiency and the interests of justice, based on the totality
> of the circumstances."

*Id.* (citing *Motorola Mobility, Inc. v. Microsoft Corp.,* 804 F.Supp.2d 1271, 1275-76 (S.D. Fla. Aug.

17, 2011)).  Consequently, where the balance of convenience weighs strongly in favor of the transferee,

and "'in a case featuring most witnesses and evidence closer to the transferee venue with few or no

convenience factors favoring the venue chosen by the plaintiff,' transfer is appropriate." *Rothschild*

*Digital Media Innovations, LLC v. Sony Computer Entertainment America LLC*, No. 14–22134–CIV–

MIDDLEBROOKS, slip op. at 4 (S.D. Fla. Aug. 28, 2014) (quoting *In re Biosearch Techns., Inc.*, 452

F. App'x 986, 989 (Fed. Cir. 2011)).

## II.  MEMORANDUM OF LAW IN SUPPORT OF TRANSFER.

As addressed *supra,* this Court should, respectfully, transfer this case to the United States

District Court for Massachusetts, which is overwhelmingly a more convenient forum for this litigation.

Indeed, it is clear the vast majority of factors outlined by this Court in *Rothschild Storage* weigh in

favor of transfer, and Spartan, having extremely strong ties to Massachusetts, would be substantially

burdened by having to litigate in this District, especially if Plaintiff's putative class claims under

Massachusetts law are certified.  In sum, there is no question this action could have and should have

been brought in the United States District Court for Massachusetts, and Spartan respectfully requests

this Court recognize that, on balance, the relevant factors weigh in favor of transfer.

### a. The instant case could have been brought in the District Court for Massachusetts.

The threshold question under section 1404(a) requires the court to determine whether the case

could have been brought in the forum to which the transfer is sought.  *See* 28 U.S.C. § 1404(a).  Here,

there is no credible dispute that this case could have been brought in the United States District Court

for Massachusetts.  Preliminarily, the District Court for Massachusetts has personal jurisdiction over

-9-

**COLE, SCOTT & KISSANE, P.A.**
110 TOWER - 110 S.E. 6TH STREET, SUITE 2700  - FT. LAUDERDALE, FLORIDA 33301 (954) 703-3700 (954) 703-3701 FAX

Spartan,[15] as Spartan has its principal place of business in Massachusetts, and the bulk of its business operations are performed in Massachusetts.[16]   Moreover, and given Plaintiff's own allegations, the United States District Court for Massachusetts also has subject matter jurisdiction under 28 U.S.C.  § 1332(d)(2)(A) and 28 U.S.C. § 1332(a)(1), as Plaintiff is a resident of Florida and Spartan is a resident of Massachusetts, and Plaintiff claims the amount of controversy, from an individual perspective, is greater than $75,000.00 and, from a class perspective, greater than $5,000,000.00.[17]   Finally, venue under 28 U.S.C. § 1391(b) is proper in a judicial district where, *inter alia*, any defendant resides. *See* 28 U.S.C. § 1391(b).   Because Spartan is subject to personal jurisdiction in the United States District Court for Massachusetts, and is therefore a resident of that district, 28 U.S.C. § 1391(c)(2), venue is proper in the United States District Court for Massachusetts.[18]   Accordingly, given Spartan is also amenable to process issuing out of the transferee court, the threshold requirement for transfer under section 1404(a) is satisfied.

   **b. *Convenience of the parties, witnesses, and availability of process.***

   Without question, the convenience of the parties and witnesses weighs heavily in favor of transfer.  At the outset, there is no dispute Spartan is headquartered in Massachusetts, and the bulk of its business operations are primarily conducted in Massachusetts.[19]   Given the foregoing, it is self-evident the majority of the anticipated key witnesses in this case are located in Massachusetts.[20]   In fact, the vast majority of Spartan's officers, and virtually all personnel with decision-making authority for Spartan work in Massachusetts and reside in or near the District of Massachusetts.[21]   A number of

---

[15] The inquiry under §1404 involves only whether the proposed transferee court would have had personal jurisdiction over the defendant(s).  *In re Genentech*, *Inc.,* 566 F.3d 1338, 1346 (Fed. Cir. 2009) ("There is no requirement under § 1404(a) that a transferee court have jurisdiction over the plaintiff . . . .").

[16] Ex. "1" at 2, ¶ 6.

[17] [D.E. 15 at 4-5, ¶ 12].

[18] "With regard to the first prong, an action 'might have been brought' in any court that has subject-matter jurisdiction, where venue is proper, and where the defendant is amenable to process issuing out of the transferee court." *Rothschild Storage,* 2015 WL 224952, at *3 (quoting *Windemere Corp. v. Remington Prod., Inc.,* 617 F.Supp. 8, 10 (S.D. Fla. May 31, 1985) (citation omitted)).

[19] *See generally* Ex. "1."

[20] Even more so, Plaintiff has not listed a single non-party witness located in Florida within his Rule 26 Initial Disclosures.  *See* Plaintiff's Rule 26 Initial Disclosures, dated April 20, 2020, attached hereto as Exhibit "4."

[21] Ex. "1" at 3, ¶ 11.

**COLE, SCOTT & KISSANE, P.A.**
110 TOWER - 110 S.E. 6TH STREET, SUITE 2700  - FT. LAUDERDALE, FLORIDA 33301 (954) 703-3700 (954) 703-3701 FAX

these persons will likely have pertinent information regarding and knowledge as to Spartan's defense of Plaintiff's allegations, and will likely testify as to Spartan's business practices and decision-making, and some of them will likely be called as witnesses by Plaintiff, as well.  On the other hand, aside from Plaintiff and one potential non-party witness, no anticipated witnesses are located in this District.  To that end, and of the utmost significance, it is clear the witnesses with the most knowledge of the facts and circumstances of this case and Plaintiff's allegations are, for the most part, located in Massachusetts.[22]  *See Rothschild Storage,* 2015 WL 224952, at *4 (citing *Microspherix LLC v. Biocompatibles, Inc.*, 2012 WL 243764, at *3 (S.D. Fla. Jan. 25, 2012) (noting that the Court does not simply tally the number of witnesses on each side, but rather, "the witnesses' actual knowledge relative to the instant dispute, and the location and convenience of the witnesses are [the] important considerations when evaluating whether transfer is justified") (citations omitted)).[23]

Even more so, "[t]he convenience of non-party witnesses is an important, *if not the most important*, factor in determining whether a motion for transfer should be granted."  *Cellularvision Tech. & Telecomms., L.P. v. Cellco P'ship*, No. 06–60666, 2006 WL 2871858, at *3 (S.D. Fla. Sept. 12, 2006) (emphasis supplied).  Certainly, the potential knowledge of these non-party individuals is likely to be directly relevant to critical issues in the case, including, but not limited to, the purported $14.00 fee issue.  Further, and as Plaintiff is aware, any non-party witnesses located in Massachusetts are beyond the subpoena power of this Court.[24]  Given the majority of anticipated non-party witnesses

---

[22] *See* Spartan's Rule 26 Initial Disclosures, dated May 4, 2020, attached hereto as Exhibit "5."

[23] *See also Gonzalez v. Pirelli Tire, LLC,* 2008 WL 516847, at *2 (S.D. Fla. Feb. 22, 2008) (finding when a court weighs the convenience to witnesses, it "does not merely tally the number of witnesses who reside in the current forum in comparison to the number located in the proposed transferee forum. Instead, the court must qualitatively evaluate the materiality of the testimony that the witnesses may provide.")

[24] "A corporate employee who does not qualify as an officer, director, or managing agent is not subject to deposition by notice. Rather, the employee is treated as any other non-party; before being compelled to testify, he or she must be served with a subpoena pursuant to Federal Rule of Civil Procedure 45." *Karakis v. Foreva Jens Inc.*, No. 08-61470, 2009 WL 113456, at *1 (S.D. Fla. Jan. 19, 2009). To that end, the issuance of subpoenas and power to enforce any Massachusetts non-party witnesses' attendance at trial is vested in the District Court of Massachusetts.  Indeed, Rule 45 of the Federal Rules of Civil Procedure requires a court to quash, upon timely motion, any subpoena that would require "a person who is neither a party nor a party's officer to travel more than 100 miles from where that person resides, is employed, or regularly transacts business in person." Fed. R. Civ. P. 45(c)(3)(A)(ii).

**COLE, SCOTT & KISSANE, P.A.**
110 TOWER - 110 S.E. 6TH STREET, SUITE 2700  -  FT. LAUDERDALE, FLORIDA 33301 (954) 703-3700 (954) 703-3701 FAX

reside in Massachusetts, "the factors regarding the convenience of non-party witnesses, the availability of process to the presence of unwilling witnesses, and the cost of obtaining the presence of witnesses all weigh heavily in favor" of transfer. *Id.* In contrast to the numerous Spartan and non-party witnesses that are centered in Massachusetts, only Plaintiff and one potential non-party witness are located in Florida.

### c. *The location of relevant documents and the relative ease of access to sources of proof.*

Aside from the anticipated pertinent testimony being most readily available in Massachusetts, the bulk of the likely relevant documentary evidence is located in Massachusetts.[25] Accordingly, this factor also weighs in favor of transfer. Certainly, there can be no dispute Spartan's documents related to the allegations in Plaintiff's Amended Complaint are located and may be most easily accessed from its office in Massachusetts. As such, and despite certain capabilities afforded by 21st century technological advances, transfer of this case would relieve any anticipated burden on the parties regarding the ease of access to sources of proof. Consequently, the location of the relevant documents in this case and the relative ease of access to sources of proof tilts in favor of the requested transfer.

### d. *Forum's familiarity with the governing law.*

Plaintiff brought the instant lawsuit in Florida and claims to bring this action "on behalf of himself and all others similarly situated in Florida, Massachusetts, and Nationwide . . . ." [D.E. 15 at 1]. Plaintiff further claims the purported "unfair and deceptive scheme emanated from Spartan's headquarters in Massachusetts, its actions violate the Massachusetts Consumer Protection Law, Massachusetts General Laws, Chapter 93A, et seq." [*Id.* at 4, ¶ 8]. Given Plaintiff's allegations (albeit denied), Plaintiff's asserted putative nationwide class claim based on Massachusetts law could potentially include every obstacle course race registrant from every region of the United States, as well as registrants from around the world. In contrast, Plaintiff's Florida consumer protection claim does

---

[25] Substantially all of the documents relating to Spartan's business operations, as well as the issues purportedly forming the basis of Plaintiff's claims, are located at 234 Congress Street, Boston, Massachusetts 02110, which is approximately 0.5 miles from the U.S. District Courthouse at 1 Courthouse Way, Boston, Massachusetts 02210. Ex. "1" at 2, ¶ 7.

not implicate such a broad spectrum of potential class members.  In sum, the most pertinent of legal issues will clearly require the application of Massachusetts law.[26]

Simply put, Plaintiff's assertion of multi-jurisdictional consumer protection claims will likely place a significant and unnecessary burden on whichever district court presides over this matter; however, to preclude substantial prejudice to Spartan, it is imperative the United States District Court for Massachusetts presides over Plaintiff's putative class action claim for purported violation of Massachusetts Consumer Protection Law, Massachusetts General Laws, Chapter 93A (Count I). Indeed, Spartan would be unquestionably prejudiced if Plaintiff is able to assert and proceed forward in a Florida District Court with a potential Massachusetts claim on behalf of a possible nationwide class.  Plainly stated, the United States District Court for Massachusetts is better equipped to preside over a Massachusetts consumer protection claim.   As such, not only should the United States District Court for Massachusetts be permitted to rule as to whether Plaintiff, a Florida resident, who has not alleged any injury occurred in Massachusetts, has Article III standing to even assert this claim, but in the unlikely event Plaintiff does have standing (which is, again, denied), the United States District Court for Massachusetts should be permitted to preside over a putative nationwide class action claim under its own laws.  Indeed, such a claim should be prioritized over any Florida consumer protection claim a Florida subclass may have.

### e.  *Plaintiff's choice of forum*

Generally, while a plaintiff's choice of forum is given weight when determining whether a transfer is appropriate pursuant to 28 U.S.C. § 1404(a), where, as here, a defendant satisfies its burden of showing many of the other factors weigh in favor transfer, such a request is warranted.  *See Decter v. MOG Sales, LLC,* 2006 WL 3703368, at *3 (E.D. Cal. Dec. 14, 2006).  In the same vein, plaintiff's choice of forum is given even less weight when an individual, such as Plaintiff, purports to represent a class.  *Lou v. Belzberg,* 834 F.2d 730, 739 (9th Cir. 1987) ("Although great weight is generally

---

[26] Plaintiff, within his general allegations, claims "Spartan Race has been unjustly enriched under Massachusetts law," which lends even more credence to Spartan contention this case should be transferred to the United States District Court for Massachusetts.  *See* [D.E. 15 at 4, ¶ 8].

**COLE, SCOTT & KISSANE, P.A.**
110 TOWER - 110 S.E. 6TH STREET, SUITE 2700  - FT. LAUDERDALE, FLORIDA 33301 (954) 703-3700 (954) 703-3701 FAX

accorded plaintiff's choice of forum, when an individual . . . represents a class, the named plaintiff's choice of forum is given less weight.") (citation omitted); *see also Credit Bureau Services, Inc. v. Experian Information Solutions, Inc.,* 2012 WL 6102068, at *23 (S.D. Fla. Dec. 7, 2012) ("[A] plaintiff's choice of forum receives less deference where, as here, the case is brought as a class action, and the putative class members are residents of numerous, different states.").

Analogous to the instant case, in *Moghaddam v. Dunkin Donuts,* 2002 WL 1940724 (S.D. Fla. Aug. 13, 2002), plaintiffs, who operated Dunkin Donuts' stores in Florida, asserted a class action lawsuit against the defendant in Florida state court. *Id.* at *1. After the case was removed to federal court based on diversity jurisdiction, defendant moved to transfer the case to the United States District Court of Massachusetts pursuant to 28 U.S.C. § 1404(a). *Id.* In its consideration of the transfer factors, this District noted that "a plaintiff's choice of forum will be afforded less deference where, as here, the action is a class action." *Id.* at *2 (citing *Gould v. Nat'l Life Ins. Co.,* 990 F. Supp. 1354, 1358 (M.D. Ala. 1998). Given the foregoing, this District Court ultimately granted the motion to transfer, in part, because it found plaintiffs' "choice of forum [was] entitled to less than normal deference" because plaintiffs asserted a class action. *Id.* at *3.

In sum, and in balancing the aforementioned factors, it is clear this case is more appropriately suited to be adjudicated in the United States District Court for Massachusetts, which is undeniably the more convenient forum for this litigation. As such, Spartan respectfully requests this Court recognize that, on balance, the relevant factors weigh in favor of transfer and grant Spartan's request to have the instant case transferred. Should this Court, however, be inclined to decline the warranted transfer of the instant case, and for the reasons discussed below, this Honorable Court should, *in the alternative,* dismiss Plaintiff's Amended Complaint *with prejudice*.

## MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT

## I.   LEGAL STANDARD TO DISMISS CASE PURSUANT TO FED. R. CIV. P. 12(B)(1)

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) encompasses challenges based on the court's lack of subject matter jurisdiction, as well as challenges based on lack

of standing. *See Stalley v. Orlando Reg'l Healthcare Sys., Inc.,* 524 F.3d 1229, 1232 (11th Cir. 2008) ("Because standing is jurisdictional, a dismissal for lack of standing has the same effect as a dismissal for lack of subject matter jurisdiction under [Federal Rule of Civil Procedure 12(b)(1)].") (internal quotations omitted); *see also Sream, Inc. v. Smoke This Too, LLC,* 2017 WL 3025864 (S.D. Fla. July 14, 2007). Indeed, "Federal Courts cannot exercise jurisdiction over cases where the parties lack standing." *Fla. Wildlife Fed'n, Inc. v. S. Fla. Water Mgmt. Dist.,* 647 F.3d 1296, 1302 (11th Cir. 2011). That said, when a party moves to dismiss based upon a lack of standing, "the court evaluates standing based on the facts of the complaint." *Correa v. BAC Home Loans Servicing LP,* 853 F.Supp.2d 1203, 1207 (M.D. Fla. Apr. 6, 2012). To that end, however, "[t]he Court should not speculate concerning the existence of standing," and neither "should it attempt to piece together an injury sufficient to confer standing to the plaintiff; the plaintiff must demonstrate that she has satisfied this burden." *Uberi v. Labarga,* 769 Fed. App'x 692, 697 (11th Cir. 2019).

## II. LEGAL STANDARD TO DISMISS CASE PURSUANT TO FED. R. CIV. P. 12(B)(6)

Under Federal Rule of Civil Procedure 12(b)(6), a court shall grant a motion to dismiss where, based upon a dispositive issue of law, the factual allegations of the complaint cannot support the asserted cause of action. *Glover v. Liggett Grp., Inc.*, 459 F.3d 1304, 1308 (11th Cir. 2006). To that end, a plaintiff's complaint need not contain detailed factual allegations; however, the plaintiff has an obligation to provide the grounds of his entitlement to relief, and "that obligation requires more than labels and conclusion or a formulaic recitation of the elements of a cause of action." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) ("Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true."). If the court can only infer "the mere possibility of misconduct" from the complaint, the plaintiff has not shown entitlement to relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). Mere conclusory allegations, however, are not entitled to an assumption of truth. *Ashcroft*, 556 U.S. at 663. Therefore, a court should grant a motion to dismiss when, "on a dispositive issue of law, no construction of the factual allegations will support the cause of action*." Marshall Cnty. Bd. of*

-15-

**COLE, SCOTT & KISSANE, P.A.**
110 TOWER - 110 S.E. 6TH STREET, SUITE 2700 - FT. LAUDERDALE, FLORIDA 33301 (954) 703-3700 (954) 703-3701 FAX

*Educ. v. Marshall Cnty. Gas Dist.*, 992 F.2d 1171, 1174 (11th Cir. 1993). Additionally, courts have held that dismissal of a complaint with prejudice is proper where it conclusively appears that there is no possible way to amend a complaint to state a claim. *See Lopez v. First Union Nat'l Bank*, 129 F.3d 1196, 1189 (11th Cir. 1997).

## III. PLAINTIFF'S MASSACHUSETTS CONSUMER PROTECTION CLAIM (COUNT I) FAILS AS PLAINTIFF LACKS STANDING TO ASSERT ANY SUCH CLAIM.

Despite Plaintiff's attempts to spurn the most rudimentary of federal civil procedure concepts, standing is not a technicality which can be so simply disregarded. To that end, Plaintiff, a purported resident of Florida, <u>who only alleges to have registered for a Spartan obstacle course race in Florida and has not (and cannot) allege any purported injury occurred in Massachusetts</u>, does not have standing to bring claims pursuant to Massachusetts' (or any other states) consumer protection laws. Therefore, Plaintiff cannot assert Count I on behalf of himself nor any other absent putative class members. *See, e.g., O'Shea v. Littleton*, 414 U.S. 488, 494 (1974) ("[I]f none of the named plaintiffs purporting to represent a class establishes the requisite case or controversy with the defendants, none may seek relief on behalf of himself or any other member of the class."); *Griffin v. Dugger,* 823 F.2d 1476, 1483 (11th Cir. 1987) (holding "a claim cannot be asserted on behalf of a class unless at least one named plaintiff has suffered the injury that gives rise to that claim."). Given Plaintiff's manifest failure to satisfy the elementary principle of standing, Count I of Plaintiff's Complaint should be dismissed *with prejudice*.

Indeed, to establish Article III standing, a plaintiff must plead and prove (1) an "injury in fact," (2) causation, and (3) redressability. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). An injury in fact is "'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1548 (2016) (quoting *Lujan*, 504 U.S. at 560). The "particulariz[ation]" requirement means that the injury "must affect the plaintiff in a personal and individual way." *Id.* The requirement that it be "concrete" means that "it must actually exist." *Id.* A plaintiff cannot "allege a bare procedural violation, divorced from any concrete harm, and satisfy the injury-in-fact requirement of Article III." *Id.* at 1549. Here, not only does Plaintiff not allege he is a resident of Massachusetts, but Plaintiff does not allege he: **1)**

registered for the April 28, 2019 in Massachusetts; **2)** viewed any purported advertising or marketing materials of Spartan in Massachusetts; **3)** participated in any obstacle course race offered by Spartan in Massachusetts; and **4)** suffered any purported injury or harm in Massachusetts.

Pointedly, and of significance to the instant case, "if none of the named plaintiffs purporting to represent a class establishes the requisite case or controversy with the defendants, none may seek relief on behalf of himself or any other member of the class." *O'Shea*, 414 U.S. 488, 494; *see also Griffin*, 823 F.2d at 1483 (a named plaintiff "in a class action who cannot establish the requisite case or controversy between himself and the defendants simply cannot seek relief for anyone—not for himself, and not for any other member of the class."). Thus, "a claim cannot be asserted on behalf of a class *unless at least one named plaintiff has suffered the injury that gives rise to that claim.*" *Prado-Steiman ex rel. Prado v. Bush*, 221 F.3d 1266, 1280 (11th Cir. 2000) (emphasis supplied).

In the same vein, "[i]t is not enough that a named plaintiff can establish a case or controversy between himself and the defendant by virtue of having standing as to one of many claims he wishes to assert," as each claim "must be analyzed separately." *Id.* In other words, and as federal courts consistently hold, the mere fact that a plaintiff has standing to pursue claims against a defendant under the laws of the forum state (here, Florida) *does not* thereby confer standing to pursue claims under the laws of other jurisdictions in which he seeks to represent absent class members. *See, e.g., Barron v. Snyder's-Lance, Inc.,* 2015 WL 11182066, at *17 (S.D. Fla. Mar. 20, 2015) (holding "it is not enough that a named plaintiff can establish a case or controversy between himself and the defendant by virtue of having standing as to just one of many claims he wishes to assert"); *Perez v. Metabolife Int'l, Inc.*, 218 F.R.D. 262, 267–68 (S.D. Fla. 2003) (finding that named plaintiffs, who were all Florida residents whose claims were governed by Florida law, lacked "standing to raise questions of state law for states other than Florida" and the court lacked "jurisdiction to evaluate the law of those other states"); *In re Apple & AT & TM Antitrust Litig.*, 596 F. Supp. 2d 1288, 1309 (N.D. Cal. 2008) (dismissing claims based on consumer protection laws of every state from which no plaintiff was named). Here, Plaintiff, who is the only named plaintiff in a putative multi-district class action case, is not a resident of

Massachusetts and does not assert a single claim he suffered any purported injury or harm in Massachusetts at the hands of Spartan.  Given the foregoing, Plaintiff's lack of standing quashes his questionable attempt to assert a Massachusetts-based claim, and Count I should, respectfully, be summarily dismissed.

## IV. PLAINTIFF'S FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT CLAIM (COUNT II) FAILS AS A MATTER OF LAW.

Plainly stated, Plaintiff fails to plead a material misrepresentation because his allegations regarding the mandatory "Racer Insurance Fee" omit Plaintiff acknowledged the Waiver (twice), which fully disclosed Plaintiff's "order total includes a mandatory administrative ***and*** racer insurance fee ($14.00) for each event registration." Accordingly, because Spartan ***did not*** provide any statement or representation as to how this $14.00 fee would be calculated and/or allocated amongst administrative fees and payment to a third-party insurance carrier, no reasonable consumer (including Plaintiff) could believe the $14.00 fee would be distributed *solely* to a third-party insurance carrier.  Simply put, nothing about the $14.00 fee was misrepresented or deceptive, and Plaintiff does not allege any portion of the $14.00 fee went to anything other than recovery of administrative fees incurred by Spartan and payment to a third-party insurance carrier.  To that end, Plaintiff's Amended Complaint is predicated on the notion that ***all*** of the $14.00 fee must go to a third-party insurance carrier or else Spartan has engaged in some type of deceptive practice; however, the Waiver acknowledged by Plaintiff is explicit in what the $14.00 comprises and, thus, Plaintiff falls short of stating a claim for purported violation of FDUTPA.

As Plaintiff correctly points out, FDUTPA prohibits all "unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce." Fla. Stat. § 501.204 (2019).  As is well-established under Florida law, "elements of a FDUTPA action consist of 1) a deceptive or unfair practice; 2) causation; and 3) damages." *KC Leisure, Inc. v. Haber,* 972 So. 2d 1069, 1073 (Fla. 5th DCA 2008).  In interpreting whether or not a practice is deceptive or unfair under section 501.204(1), Florida Statutes, the Florida legislature intended that "due consideration and great weight . . . be given to the interpretations of the Federal Trade

Commission and the federal courts relating to s. 5(a)(1) of the Federal Trade Commission Act." Fla. Stat. § 501.204(2) (2019). To that end, the Federal Trade Commission has interpreted "deceptive acts or practices" to require a material representation, omission, or practice that is likely to mislead consumers acting reasonably under the circumstances. *Cliffdale Associates, Inc.,* 103 FTC 110, 1984 WL 565319, at *37 (F.T.C. 1984), *appeal dismissed sub nom. Koven v. FTC,* No. 84-5337 (11th Cir. 1984). Here, even taking Plaintiff's unsubstantiated allegations as true, there is no <u>material</u> misrepresentation, as the explicit Waiver that must be acknowledged to complete registration for any Spartan event discloses the "total includes a mandatory administrative ***and*** racer insurance fee ($14.00)."

Parallel to the instant case, in *Costa,* the plaintiff alleged the defendants, related entities responsible for the sales, marketing, reservations, accounting, solicitation, or travel arrangements related to the Atlantis Resort in the Bahamas, engaged in an unfair and deceptive act or practice by charging a "mandatory housekeeping gratuity and utility service fee" to consumers but not paying all of that "'gratuity' to the housekeeping staff,"[27] and based upon this alleged conduct asserted, among other claims, an FDUTPA claim.[28] In defense of plaintiff's FDUTPA claims, defendants "contend[ed] that Plaintiff . . . failed to plead a material misrepresentation because its statement regarding the combined 'mandatory housekeeping gratuity and utility service fee' of 'up to' various amounts 'would not have provided a reasonable person with any belief as to the amount of such charges that would be distributed to housekeeping staff.'" *Id.* at *2. Of paramount significance, this District Court agreed with defendants that nothing was misrepresented or deceptive, finding because plaintiff "never allege[d] that some of the [f]unds went to something other than the housekeeping staff or the utility service fee" and because the "parties' agreement, however, provides that the Funds are to pay a

---

[27] *Id.* at *2.
[28] *See generally id.*

'mandatory housekeeping gratuity and utility service fee," plaintiff "could not reasonably expect all of the [f]unds to be for a gratuity, and has fallen just short of stating a claim." *Id.*[29]

There is also a striking similarity between the instant case and *Deere Construction, LLC v. Cemex Construction Materials Florida, LLC,* a case which Plaintiff's counsel should be fully familiar with.[30]  In *Deere,* plaintiff asserted a class action complaint against defendants, therein alleging, among other things, defendants, in purported connection with the sale of concrete, "fraudulently, deceptively, and unfairly charged Plaintiff for 'fuel charges' and 'environmental surcharges' that are unrelated to Defendants actual or increased fuel and environmental costs." *Id.* at *1.  On a motion to dismiss, defendants contended plaintiff failed to state a cause of action for violation of FDUTPA, in part, because "the surcharges Plaintiff complains of were disclosed before they were charged, as well as disclosed on each invoice, and argues that there is nothing deceptive or unfair about charges which are disclosed in such a manner." *Id.* at *2.  Ultimately, this District Court rejected plaintiff's claim that the at-issue charges were violative of FDUTPA, finding, in part, "the Complaint [does not] allege that Defendants ever made a statement or representation as to how the surcharges would be calculated," and further holding "the Complaint contains no factual allegations which support Plaintiff's subjective belief . . . ." *Id.* at *3.

Indeed, as in *Costa and Deere,* Plaintiff's ill-conceived FDUTPA claim should also be dismissed for failing to plead a material misrepresentation and, ultimately, failing to state a cause of action.  Again, as Spartan *did not* provide any statement or representation as to how this $14.00 fee would be calculated and/or allocated amongst administrative fees and payment to a third-party insurance carrier, no reasonable consumer (including Plaintiff) could believe the $14.00 fee would be distributed *solely* to a third-party insurance carrier.  Moreover, Plaintiff does not allege any portion of the $14.00 fee went to anything other than recovery of administrative fees incurred by Spartan and

---

[29] *Berry*, 497 F. Supp. 2d at 1367 (the title "cost-recovery fee" implies that the company will keep the money collected as a "recovery for costs"); *Vorst v. TBC Retail Group, Inc.*, 2012 WL 13026643 at *2 (S.D. Fla. Apr. 12, 2012) (the title "oil-disposal fee" implies that the company will "keep the fee for itself").

[30] *Deere,* 2016 WL 2770537 (S.D. Fla. May 12, 2016).

**COLE, SCOTT & KISSANE, P.A.**
110 TOWER - 110 S.E. 6TH STREET, SUITE 2700 - FT. LAUDERDALE, FLORIDA 33301 (954) 703-3700 (954) 703-3701 FAX

payment to a third-party insurance carrier. As such, Plaintiff's Count II fails as a matter of law and, therefore, should be summarily dismissed.

## V. PLAINTIFF'S UNJUST ENRICHMENT CLAIM (COUNT III) FAILS.

In Count III of the Complaint, Plaintiff seeks to recover purported damages based on a theory of unjust enrichment. *See generally* [D.E. 15 at 13-14]. In particular, Plaintiff, while failing to elucidate the notice provided to him during the registration process that the $14.00 fee comprises of "a mandatory administrative ***and*** racer insurance fee," claims Spartan "profited from its unlawful collection and retention of the 'Racer Insurance Fee' . . . under circumstances in which it would be unjust for Spartan to be permitted to retain the benefit." [*Id.* at 13, ¶ 63]. However, Plaintiff's claim for unjust enrichment, which is rooted in the same factual predicate as his FDUTPA claim, should similarly be dismissed under Rule 12(b)(6), as there is an express contract governing the subject matter and relationship of the parties – the Waiver. Therefore, an unjust enrichment claim is precluded under well-established Florida law.

Indeed, under Florida law, and as this District has repeatedly held, "unjust enrichment is an equitable remedy which necessarily fails upon a showing that an express contract exists." *Alvarez v. Royal Caribbean Cruises, Ltd.,* 905 F. Supp. 2d 1334, 1341 (S.D. Fla. Nov. 27, 2012); *Reese,* 686 F. Supp. 2d 1291 (dismissing plaintiff's unjust enrichment claim *with prejudice* because of existence of express contract); *Berry,* 497 F. Supp. 2d at 1369 (finding "a quasi-contractual claim fails upon a showing that an express contract exists"); *Ocean Communications, Inc.,* 956 So. 2d at 1225 ("[A] plaintiff cannot pursue an equitable theory, such as unjust enrichment . . . to prove entitlement to relief if an express contract exists."); *Zarrella v. Pac. Life. Ins. Co.,* 2010 WL 4663296 (dismissing unjust enrichment claim with prejudice because "[n]o cause of action in unjust enrichment can exist where the parties' relationship is governed by an express contract.").

In *Costa,* which is discussed at length above, in defense of plaintiff's unjust enrichment claim, the defendants "contend[ed] that because there is an express contract (the Terms and Conditions) between the parties that neither side disputes, a claim for unjust enrichment arising out of the

contractual relationship cannot exist." *Id.* at \*4. To that end, this District Court agreed with the defendants' argument, holding that because "Plaintiff's unjust enrichment claim arises out of that contract, [it is] therefore precluded under Florida law." *Id.; see also Berry,* 497 F.Supp.2d at 1369 (this District Court dismissed plaintiffs' unjust enrichment claim *with prejudice,* determining that the existence of the rental car agreement precluded such a claim and disregarding plaintiffs' argument that "because the equitable claims are rooted in Budget's fraudulent behavior, not the contract itself, the existence of the contract should not bar relief" under an unjust enrichment theory.")

Here, and analogous to *Costa,* as well as *Berry,* Plaintiff's quasi-contractual claim is precluded by the existence of an express written contract between the parties – the Waiver – which makes clear for Plaintiff, and any other race registrant, that as consideration for the opportunity to participate in any race held by Spartan, a $14.00 "mandatory administrative ***and*** racer insurance fee" must be paid. Indeed, this express notice and contractual language restrains Plaintiff's unjust enrichment claim and renders the same untenable. Even more so, Plaintiff acknowledges within its own allegations that the $14.00 fee mandated by Spartan "is required along with a waiver of absolving any liability by Spartan for any resulting injury." [D.E. 15 at ¶ 3]. Given the foregoing, this Honorable Court should, respectfully, dismiss Plaintiff's claim for unjust enrichment (Count III) *with prejudice.*

## CONCLUSION

For the various reasons addressed *supra,* this Honorable Court should transfer this case to the United States District Court for Massachusetts – the far more convenient forum for this litigation. Indeed, the instant case could have (and should have) been brought in the District Court for Massachusetts and, in "[f]or the convenience of parties and witnesses, [and] in the interest of justice," transfer of this case is appropriate. *Rothschild Storage,* 2015 WL 224952, at \*2. *In the alternative,* should this Court decline to transfer this case, this Honorable Court should, respectfully, dismiss Plaintiff's Amended Complaint *with prejudice,* as: **1)** Plaintiff lacks Article III standing to assert Count I; **2)** Spartan did not provide any statement or representation to Plaintiff as to how the "mandatory administrative ***and*** racer insurance fee ($14.00)" he willing agreed to pay would be calculated and/or

-22-

**COLE, SCOTT & KISSANE, P.A.**
110 TOWER - 110 S.E. 6TH STREET, SUITE 2700 - FT. LAUDERDALE, FLORIDA 33301 (954) 703-3700 (954) 703-3701 FAX

allocated, thus, no reasonable consumer (including Plaintiff) could believe the $14.00 fee would be distributed *solely* to a third party insurance carrier[31] – therefore, Count II fails as a matter of law; and 3) Plaintiff's unjust enrichment claim is barred by the existence of the Waiver – thus, Count III also fails as a matter of law.

WHEREFORE, Defendant, Spartan Race, Inc., respectfully requests this Honorable Court enter an Order granting Spartan Race, Inc.'s Motion to Transfer. *In the alternative,* Spartan Race, Inc. respectfully requests this Honorable Court enter an Order granting Spartan Race, Inc.'s Motion to Dismiss Plaintiff's Amended Complaint, *with prejudice*, and awarding Spartan Race, Inc. its reasonable attorneys' fees and costs incurred in defense of Plaintiff's claims and in preparation of this Motion, pursuant to section 501.2105, Florida Statutes and Rule 54 of the Federal Rules of Civil Procedure, along with any and all other relief this Court deems just and appropriate in light of the foregoing.

**Dated: May 4, 2020**

Respectfully submitted,

By: /s/ Matthew A. Green
Scott A. Bassman, Esq.
Florida Bar No. 232180
Matthew A. Green, Esq.
Florida Bar No. 1019717
COLE, SCOTT & KISSANE, P.A.
*Counsel for Defendant SPARTAN RACE, INC.*
110 Tower, 110 S.E. 6th Street, Suite 2700
Fort Lauderdale, Florida 33301
Telephone (954) 703-3700
Facsimile (954) 703-3701
Primary e-mails: scott.bassman@csklegal.com
                              matthew.green@csklegal.com
Secondary e-mail: sandra.merizalde@csklegal.com

---

[31] Moreover, and of additional significance, Plaintiff does not allege any portion of the $14.00 fee went to anything other than recovery of administrative fees incurred by Spartan and payment to a third-party insurance carrier

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on this 4th day of May 2020, true and correct copy of the foregoing was electronically filed with the Clerk of Southern District of Florida by using the Florida District Courts CM/ECF Filing System, which will send an automatic e-mail message to the parties listed on the Service List below.

<u>/s/ Matthew A. Green</u>
Scott A. Bassman, Esq.
Florida Bar No. 232180
Matthew A. Green, Esq.
Florida Bar No. 1019717
COLE, SCOTT & KISSANE, P.A.
*Counsel for Defendant*

## <u>SERVICE LIST</u>

Adam M. Moskowitz, Esq.
Florida Bar No. 984280
adam@moskowitz-law.com
Howard M. Bushman, Esq.
Florida Bar No. 0364230
howard@moskowitz-law.com
Joseph M. Kaye, Esq.
Florida Bar No. 117520
joseph@moskowitz-law.com
Barbara C. Lewis, Esq.
Florida Bar No. 118114
barbara@moskowitz-law.com
**THE MOSKOWITZ LAW FIRM, PLLC**
2 Alhambra Plaza, Suite 601
Coral Gables, FL 33134
Telephone: (305) 740-1423

Andrew S. Friedman, Esq.
(*pro hac vice application purportedly forthcoming*)
afriedman@bffb.com
Francis J. Balint, Jr., Esq.
(*pro hac vice application purportedly forthcoming*)
fbalint@bffb.com
**BONNETT, FAIRBOURN, FRIEDMAN & BALINT, P.C.**
2325 East Camelback Road, Suite 300
Phoenix, Arizona 85016
Telephone: (602) 274-1100

Paul M. Scott, Esq.
(*appearing pro hac vice*)
pscott@brbcsw.com
Steven G. Blackerby, Esq.
(*appearing pro hac vice*)
sblackerby@brbcsw.com
Bradley J. Watkins, Esq.
(*appearing pro hac vice*)
bwatkins@brbcsw.com
**BROWN, READDICK, BUMGARTNER, CARTER, STRICKLAND & WATKINS LLP**
Post Office Box 220, 5 Glynn Avenue Brunswick, Georgia 31521-0220
Telephone: 912-264-8544

*Counsel for Plaintiff and Putative Class Members*