## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### Case No. 1:20-cv-20836-BLOOM/Louis

AARON FRUITSTONE, on behalf of
himself and all others similarly situated,

      Plaintiff,

v.

SPARTAN RACE INC.,

      Defendant.
_____/

## ORDER

**THIS CAUSE** is before the Court upon Defendant's Motion to Transfer this Case under 28 U.S.C. § 1404(a) or, in the Alternative, Motion to Dismiss Plaintiff's Amended Complaint, ECF No. [24] ("Motion"). Plaintiff filed a Response, ECF No. [32] ("Response"), to which Defendant filed a Reply, ECF No. [34] ("Reply"). The Court has considered the Motion, the Response, the Reply, the record in this case, the applicable law, and is otherwise fully advised. For the reasons set forth below, the Motion is denied.

### I.      BACKGROUND

On April 13, 2020, Plaintiff filed the operative First Amended Class Action Complaint, ECF No. [15] ("Complaint"). The Complaint asserts three causes of action: violation of the Massachusetts Consumer Protection Law, Massachusetts General Laws, Chapter 93A (Count I), violation of the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. § 501.201 *et seq.* ("FDUTPA") (Count II), and unjust enrichment (Count III).

According to the Complaint, Defendant is a widely-known obstacle course race organizer that conducts the "Spartan Races," which races have attracted millions of participants worldwide.

*Id.* at ¶¶ 1, 16. Plaintiff alleges that, in addition to collecting funds based on registration racer fees, parking services and bag check fees, Defendant has "extracted millions of additional dollars from consumers, through an unfair and deceptive self-enrichment scheme that violates state consumer protection laws" in Massachusetts and Florida based on a "mandatory 'Racer Insurance Fee.'" *Id.* at ¶¶ 2, 17. Specifically, Defendant "purchased a group insurance policy through CHUBB that covers each racer and costs Spartan Race much less than what they represent ($14) to all racers." *Id.* The Complaint states that each time a consumer registers for a Spartan Race event, Defendant "charges a mandatory, non-transferable, and non-refundable 'Racer Insurance Fee'" of $14, which operates as a "secret revenue source" because the insurance fee costs Defendant less than $1 per racer per day. *Id.*[1] *Id.* at ¶¶ 2-4. Defendant's website allegedly represents that, in reference to the Racer Insurance Fee, Defendant "purchases accident medical insurance from a licensed third-party insurance carrier[.]" *Id.* at ¶¶ 4, 19. This fee, moreover, is billed to race registrants as a distinct line-item entry that is separate from Defendant's registration fee and from other fees and taxes collected by Defendant. *Id.*

Plaintiff alleges that the racer insurance Defendant requires is "basically worthless" because it is "(1) always secondary to any insurance that most of the racers already have, (2) it is non-refundable if the race is canceled, postponed, or delayed by Spartan or the racer, (3) has a large $500 deductible, and (4) is required along with a waiver absolving any liability by Spartan for any resulting injury." *Id.* at ¶ 5. Further, registrants must pay the Racer Insurance Fee again each time they defer or reschedule their race. *Id.* at ¶¶ 5, 18. According to Plaintiff, Defendant's representations and marketing materials "create in a reasonable consumer the false impression that

---

[1] Plaintiff asserts that compared to its competitors Rugged Mudder and Tough Mudder, Defendant charges $14 for "mandatory insurance" while the competitors do not charge any racer insurance. *Id.* at ¶ 3.

the $14 'Racer Insurance Fee' is used solely to pay for accident insurance for the benefit of the registrant." *Id.* at ¶ 6. "In truth, Spartan secures that insurance through a group policy, issued by a third-party insurer, that affords racers secondary insurance coverage at a tiny fraction of the cost Spartan charges them," and Defendant "pockets nearly all of the $14 Race Insurance Fee as a hidden profit center for the company, undisclosed to consumers." *Id. See also id.* at ¶ 21.

The Complaint maintains that Defendant's marketing description and charging of the Racer Insurance Fee is "objectively likely to deceive any reasonable consumer into believing that the $14 charge reflects the cost of the insurance coverage being passed through to that consumer." *Id.* at ¶ 7.[2] Plaintiff asserts that Defendant's representations "would lead a reasonable consumer to believe that the $14 'Racer Insurance Fee' is used solely to purchase insurance on behalf of the registrant." *Id.* at ¶ 20. In this respect, Plaintiff alleges that, as the Racer Insurance Fee is a distinct line item when Defendant invoices race participants, Defendant "creat[es] the impression that the fee is a pass-through to the third-party insurance carrier." *Id.* at ¶ 37. He adds that the alleged unfair and deceptive scheme "emanated from Spartan's headquarters in Massachusetts." *Id.* at ¶ 8.

---

[2] Defendant's website, in a link addressing "[w]hat does the racer insurance policy cover?[,]" states, in part, the following:

> Spartan Race Inc. purchases accident medical insurance coverage from a licensed third-party insurance carrier, which provides limited coverage to participants for medical bills arising from an injury incurred while participating at an event operated by Spartan Race, Inc. . . . Please note that the accident medical insurance coverage does not include Disability Insurance or Loss of Income coverage. All claimants are required to complete certain forms and provide copies of all medical records to the insurance carrier. This policy is secondary to a claimant's primary medical insurance policy. Please note there is a $500 deductible under the policy. . . . For more information regarding the specific coverage provided, please contact us at insurance@spartan.com.

*Id.* at 6, ¶ 19.

According to the Complaint, Plaintiff registered for a Spartan "Sprint" race in Palm Beach, Florida in April 2019, completed the online registration process, and paid the $14 Racer Insurance Fee "[i]n reliance on Spartan's foregoing misrepresentations and omissions[.]" *Id.* at ¶¶ 22-24. He now brings a putative nationwide and Florida class action with classes comprised of persons that paid the Racer Insurance Fee in connection with any races organized by Defendant during the applicable limitations period. *Id.* at ¶ 26.

Defendant now moves to transfer the action to the District of Massachusetts or, alternatively, to dismiss the Complaint with prejudice pursuant to Rules 12(b)(1) and 12(b)(6), Fed. R. Civ. P. *See generally* ECF No. [24]. According to Defendant, the Massachusetts federal court is the "more convenient forum for this litigation" and the action "should have been brought" there. *Id.* at 2. Defendant asserts that if the Court declines to transfer the case, dismissal with prejudice is appropriate as to each count. Specifically, regarding Count I, Plaintiff lacks Article III standing to assert claims under Massachusetts law. *Id.* at 3, 16-18. As to Count II, the parties entered into a binding contract, the Waiver, ECF Nos. [24-2] and [24-3], that expressly disclosed that Plaintiff's registration payment total included a "mandatory administrative and racer insurance fee," and because Defendant did not make any misrepresentation or misstatement as to how the $14 fee is calculated or allocated, no reasonable consumer could believe the Racer Insurance Fee would be distributed solely to a third-party insurance carrier. *Id.* at 3, 18-21. Finally, Count III fails because it is barred by the existence of the Waiver that Plaintiff executed. *Id.* at 4, 21-22.

In response, Plaintiff contends that Defendant falls "far short of its burden" to establish that transfer is warranted. ECF No. [32] at 1. Additionally, he asserts that no count should be dismissed because he "(1) adequately alleges his FDUTPA claim, premised on a 'pass-through' theory of liability; (2) has standing to assert a Massachusetts consumer protection claim against Spartan on behalf of the putative nationwide class; and (3) states a claim for unjust enrichment

which this Court in authority uncited by Spartan squarely recognizes as actionable." *Id.* In particular, Plaintiff maintains that Defendant "attempts to recast [his] action as involving what it now claims is a 'mandatory administrative and racer insurance fee,' based on its contorted reading of a single reference found in a document not at issue in this lawsuit." *Id.* (internal citation omitted).

In the Reply, Defendant asserts that the balance of factors favors transfer given the burden it faces in litigating in Florida. ECF No. [34] at 2-8. It then reargues that the FDUTPA claim fails to state a cause of action because Defendant's allegations "regarding the mandatory 'Racer Insurance Fee' omit Plaintiff acknowledged the Waiver (twice), which fully disclosed Plaintiff's 'order total includes a mandatory administrative and racer insurance fee ($14.00) for each event registration." *Id.* at 8 (emphasis omitted). Defendant adds that the case law Plaintiff cites is distinguishable and that "Plaintiff completely distorts what the Spartan website actually provides[.]" *Id.* at 8-9. Further, it maintains that Plaintiff lacks standing to assert his Massachusetts consumer protection claim and that *Geis v. Nestle Water N. Am., Inc.*, 321 F. Supp. 3d 230 (D. Mass. 2018), cited in the Response, is distinguishable because it did not involve multi-state statutory claims. *Id.* at 9-10. Finally, it asserts that the unjust enrichment claim fails because there is an express contract (the Waiver) governing the subject matter and relationship of the parties and "Plaintiff may not assert an unjust enrichment claim based on fees that were charged in accordance with the Waiver[.]" *Id.* at 10-11 (emphasis omitted).

The Motion, accordingly, is ripe for consideration.

## II.     LEGAL STANDARDS

### A.     Motion to Transfer

The transfer statute, 28 U.S.C. § 1404(a), which embodies a codification and revision of the *forum non conveniens* doctrine, *see Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 253, 102 S.Ct. 252, 70 L.Ed.2d 419 (1981), provides that "[f]or the convenience of parties and witnesses, in the

interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." "Section 1404(a) reflects an increased desire to have federal civil suits tried in the federal system at the place called for in the particular case by considerations of convenience and justice." *Van Dusen v. Barrack*, 376 U.S. 612, 616, 84 S.Ct. 805, 11 L.Ed.2d 945 (1964). The statute grants broad discretion to the district court. *See Osgood v. Disc. Auto Parts, LLC*, 981 F. Supp. 2d 1259, 1263 (S.D. Fla. 2013) (stating that the "standard for transfer under 28 U.S.C. § 1404(a) leaves much to the broad discretion of the trial court") (citation omitted); *see also Piper Aircraft*, 454 U.S. at 253 (noting that "[d]istrict courts were given more discretion to transfer under § 1404(a) than they had to dismiss on grounds of *forum non conveniens*") (citation omitted); *Motorola Mobility, Inc. v. Microsoft Corp.*, 804 F. Supp. 2d 1271, 1275 (S.D. Fla. 2011) ("The Court has broad discretion in determining whether these factors suggest that transfer is appropriate."). The party seeking transfer bears the burden of demonstrating entitlement. *In re Ricoh Corp.*, 870 F.2d 570, 573 (11th Cir. 1989) ("[I]n the usual motion for transfer under section 1404(a), the burden is on the movant to establish that the suggested forum is more convenient.").

In determining the appropriateness of transfer, courts employ a two-step process. *See Osgood*, 981 F. Supp. 2d at 1263 (citing *Abbate v. Wells Fargo Bank, Nat. Ass'n*, 09–62047–Civ, 2010 WL 3446878, at *4 (S.D. Fla. Aug.31, 2010)); *Precision Fitness Equip., Inc. v. Nautilus, Inc.*, No. 07–61298–CIV–COOKE, 2008 WL 2262052, at *1 (S.D. Fla. May 30, 2008) (citing *Thermal Techs., Inc. v. Dade Serv. Corp.*, 282 F. Supp. 2d 1373, 1376 (S.D. Fla. 2003); *Jewelmasters, Inc. v. May Dep't Stores*, 840 F. Supp. 893, 894–95 (S.D. Fla.1993) (citing *Cont'l Grain Co. v. The Barge FBL–585*, 364 U.S. 19, 80 S.Ct. 1470, 4 L.Ed.2d 1540 (1960))). First, the district court is tasked with determining whether the action could have been pursued in the venue to which transfer is sought. *See Osgood*, 981 F. Supp. 2d at 1263

(citing *Abbate*, 2010 WL 3446878, at \*4). Second, "courts assess whether convenience and the interest of justice require transfer to the requested forum." *Id.* (citation omitted). In analyzing this second prong, the Court applies several factors:

> (1) the convenience of the witnesses; (2) the location of relevant documents and the relative ease of access to sources of proof; (3) the convenience of the parties; (4) the locus of operative facts; (5) the availability of process to compel the attendance of unwilling witnesses; (6) the relative means of the parties; (7) a forum's familiarity with the governing law; (8) the weight accorded a plaintiff's choice of forum; and (9) trial efficiency and the interests of justice, based on the totality of the circumstances.

*Motorola Mobility*, 804 F.Supp.2d at 1275–76 (quoting *Meterlogic, Inc. v. Copier Solutions, Inc.*, 185 F. Supp. 2d 1292, 1299 (S.D. Fla. 2002) and citing *Manuel v. Convergys Corp.*, 430 F.3d 1132, 1135 n. 1 (11th Cir.2005)). Traditionally, a plaintiff's choice of forum is accorded considerable deference, *In re Ricoh*, 870 F.2d at 573 (citing *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508, 67 S.Ct. 839, 91 L.Ed. 1055 (1947)), and, "[u]ltimately, transfer can only be granted where the balance of convenience of the parties strongly favors the defendant." *Steifel Labs., Inc. v. Galderma Labs., Inc.*, 588 F. Supp. 2d 1336, 1339 (S.D. Fla. 2008) (citing *Robinson v. Giarmarco & Bill, P.C.*, 74 F.3d 253, 260 (11th Cir. 1996)). With regard to the first prong, an action "might have been brought" in any court that has subject-matter jurisdiction, where venue is proper, and where the defendant is amenable to process issuing out of the transferee court. *Windmere Corp. v. Remington Prods., Inc.*, 617 F. Supp. 8, 10 (S.D. Fla. 1985) (citing 15 C. Wright, A. Miller and E. Cooper, Federal Practice and Procedure § 3845 (1976)).

### B.      Motion to dismiss

#### i.      Rule 12(b)(1)

One element of the case-or-controversy requirement under Article III of the United States Constitution is that plaintiffs "must establish that they have standing to sue." *Raines v. Byrd*, 521 U.S. 811, 818 (1997). "The law of Article III standing serves to prevent the judicial process from

being used to usurp the powers of the political branches, and confines the federal courts to a properly judicial role." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016) (quoting *Clapper v. Amnesty Int'l USA*, 133 S. Ct. 1138, 1146 (2013)) (alteration adopted; citations omitted). "Standing for Article III purposes requires a plaintiff to provide evidence of an injury in fact, causation and redress[a]bility." *Dermer v. Miami-Dade Cnty.*, 599 F.3d 1217, 1220 (11th Cir. 2010) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)). Specifically, "[t]o have standing, a plaintiff must show (1) he has suffered an injury in fact that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to conduct of the defendant; and (3) it is likely, not just merely speculative, that the injury will be redressed by a favorable decision." *Kelly v. Harris*, 331 F.3d 817, 819-20 (11th Cir. 2003); *see Bochese v. Town of Ponce Inlet*, 405 F.3d 964, 980 (11th Cir. 2005) (same).

"Federal courts are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute, which is not to be expanded by judicial decree." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377, 114 S.Ct. 1673, 128 L.Ed.2d 391 (1994) (internal citations omitted). "It is to be presumed that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction." *Id.* (citing *Turner v. Bank of North America*, 4 U.S. (4 Dall.) 8, 11, 1 L.Ed. 718 (1799) and *McNutt v. General Motors Acceptance Corp.*, 298 U.S. 178, 182–183, 56 S.Ct. 780, 80 L.Ed. 1135 (1936)). A Rule 12(b)(1) motion challenges the district court's subject matter jurisdiction and takes one of two forms: a "facial attack" or a "factual attack." "A 'facial attack' on the complaint 'require[s] the court merely to look and see if [the] plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in his complaint are taken as true for the purposes of the motion.'" *McElmurray v. Consol. Gov't of Augusta–Richmond Cnty.*, 501 F.3d 1244, 1251 (11th Cir. 2007) (quoting *Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990)). "A 'factual attack,' on the

other hand, challenges the existence of subject matter jurisdiction based on matters outside the pleadings." *Kuhlman v. United States*, 822 F. Supp. 2d 1255, 1256–57 (M.D. Fla. 2011) (citing *Lawrence*, 919 F.2d at 1529); *see Stalley ex rel. U.S. v. Orlando Reg'l Healthcare Sys., Inc.*, 524 F.3d 1229, 1233 (11th Cir. 2008) ("By contrast, a factual attack on a complaint challenges the existence of subject matter jurisdiction using material extrinsic from the pleadings, such as affidavits or testimony.").

"In assessing the propriety of a motion for dismissal under Fed. R. Civ. P. 12(b)(1), a district court is not limited to an inquiry into undisputed facts; it may hear conflicting evidence and decide for itself the factual issues that determine jurisdiction." *Colonial Pipeline Co. v. Collins*, 921 F.2d 1237, 1243 (11th Cir. 1991). As such, "[w]hen a defendant properly challenges subject matter jurisdiction under Rule 12(b)(1), the district court is free to independently weigh facts and 'may proceed as it never could under Rule 12(b)(6) or Fed. R. Civ. P. 56.'" *Turcios v. Delicias Hispanas Corp.*, 275 F. App'x. 879, 880 (11th Cir. 2008) (citing *Morrison v. Amway Corp.*, 323 F.3d 920, 925 (11th Cir. 2003)).

### ii.    *Rule 12(b)(6)*

Rule 8 of the Federal Rules requires that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Although a complaint "does not need detailed factual allegations," it must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007); *see Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (explaining that Rule 8(a)(2)'s pleading standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation"). In the same vein, a complaint may not rest on "'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678, 129 S.Ct. 1937 (quoting *Twombly*, 550 U.S. at 557,

127 S.Ct. 1955 (alteration in original)). "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555, 127 S.Ct. 1955. These elements are required to survive a motion brought under Rule 12(b)(6) of the Federal Rules of Civil Procedure, which requests dismissal for "failure to state a claim upon which relief can be granted."

When reviewing a motion under Rule 12(b)(6), a court, as a general rule, must accept the plaintiff's allegations as true and evaluate all plausible inferences derived from those facts in favor of the plaintiff. *See Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1337 (11th Cir. 2012); *Miccosukee Tribe of Indians of Fla. v. S. Everglades Restoration Alliance*, 304 F.3d 1076, 1084 (11th Cir. 2002); *AXA Equitable Life Ins. Co. v. Infinity Fin. Grp., LLC*, 608 F. Supp. 2d 1349, 1353 (S.D. Fla. 2009). However, this tenet does not apply to legal conclusions, and courts "are not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555, 127 S.Ct. 1955; *see Iqbal*, 556 U.S. at 678, 129 S.Ct. 1937; *Thaeter v. Palm Beach Cnty. Sheriff's Office*, 449 F.3d 1342, 1352 (11th Cir. 2006). A court considering a Rule 12(b) motion is generally limited to the facts contained in the complaint and attached exhibits, including documents referred to in the complaint that are central to the claim. *See Wilchombe v. TeeVee Toons, Inc.*, 555 F.3d 949, 959 (11th Cir. 2009); *Maxcess, Inc. v. Lucent Technologies, Inc.*, 433 F.3d 1337, 1340 (11th Cir. 2005) ("[A] document outside the four corners of the complaint may still be considered if it is central to the plaintiff's claims and is undisputed in terms of authenticity.") (citing *Horsley v. Feldt*, 304 F.3d 1125, 1135 (11th Cir. 2002)).

"On a Rule 12(b)(6) motion to dismiss, '[t]he moving party bears the burden to show that the complaint should be dismissed.'" *Sprint Sols., Inc. v. Fils–Amie*, 44 F.Supp.3d 1224, 1228 (S.D. Fla. 2014) (quoting *Mendez–Arriola v. White Wilson Med. Ctr. PA*, 2010 WL 3385356, at *3 (N.D. Fla. Aug. 25, 2010)). "The movant must support its arguments for dismissal with citations to legal authority." *Id.* (citing S.D. Fla. L. R. 7.1(a)(1)). "Where a defendant seeking dismissal of

a complaint under Rule 12(b)(6) does not provide legal authority in support of its arguments, it has failed to satisfy its burden of establishing its entitlement to dismissal." *Id.* (citing *Super. Energy Servs., LLC v. Boconco, Inc.*, 2010 WL 1267173, at \*5–6 (S.D. Ala. Mar. 29, 2010) and *United States v. Vernon*, 108 F.R.D. 741, 742 (S.D. Fla. 1986)).

It is through these lenses that the Court considers the Motion and the parties' arguments.

## III.     DISCUSSION

Disposition of the Motion raises two overarching issues. The first is whether the case should be transferred from this district to the United States District Court for the District of Massachusetts. The second issue, which the Court reaches only if it answers the first issue in the negative, is whether Plaintiff has stated actionable claims. The Court will address each issue in turn.

### A.     Transfer is inappropriate based on the balance of considerations

As noted, courts employ a two-step test to determine if transfer is appropriate. The parties do not dispute that this matter could have been brought in the District of Massachusetts, the first step. *Compare* ECF No. [24] at 9-10 *with* ECF No. [32] at 10. The Court agrees. Accordingly, the Court's examination focuses on the second inquiry: whether convenience and the interests of justice support transfer. The Court, therefore, will examine and weigh the factors set forth above.

#### i.     *Convenience of the parties and witnesses, and the availability of process to compel the attendance of unwilling witnesses*

Defendant asserts that factors 1 (convenience of the witnesses), 3 (convenience of the parties), and 5 (the availability of process to compel the attendance of unwilling witnesses) favor transfer because Defendant is based in Massachusetts, the bulk of its business operations are conducted there, and most of the "key witnesses" are located there. ECF No. [24] at 10. Defendant adds that the "vast majority" of its officers and "virtually all personnel with decision-making

authority" work in or reside near the District of Massachusetts. *Id.* According to Defendant, Plaintiff and only "one potential non-party witness" reside in the Southern District of Florida, and "it is clear the witnesses with the most knowledge of the facts and circumstances of this case and Plaintiff's allegations are, for the most part, located in Massachusetts." *Id.* at 11. Defendant adds that the convenience of non-party witnesses is an important factor, and is of greater importance given that the majority of anticipated non-party witnesses reside in Massachusetts. *Id.* at 11-12. Further, Defendant notes that any non-party witnesses located in Massachusetts are beyond the subpoena power of this Court. *Id.* at 11.

In response, Plaintiff maintains that Defendant reduces the determination of convenience into a "meaningless numbers game" by "emphasizing that the 'vast majority' of its corporate management resides in Massachusetts, but never explaining who those individuals are, why their testimony would be relevant to the straightforward disclosure issues raised by the case, or addressing their availability at trial." ECF No. [32] at 13. "To determine which party's witnesses are more inconvenienced by the venue, 'the court must qualitatively evaluate the materiality of the testimony that the witness[es] may provide' with respect to the issues in the case, not simply compare the number of witnesses in the transferor and transferee forums." *Kenneth F. Hackett & Assocs., Inc. v. GE Capital Info. Tech. Sols., Inc.*, No. 10-20715-CIV, 2010 WL 3056600, at *4 (S.D. Fla. Aug. 4, 2010). In Plaintiff's view, Defendant "(a) has not identified any third-party (i.e. not employees or former employees) key witnesses; and (b) has not identified a single key trial witness, much less, detailed their proposed testimony." ECF No. [32] at 15. Plaintiff further notes that Defendant's general manager of U.S. and Canada Events, Brian Duncanson, lives in Vero Beach, Florida, which is located in this district. *Id.* (citing ECF No. [24-5] at 2-4).

Plaintiff maintains that regardless of importance, Defendant has not established that any given witness would be unwilling to testify at trial in Florida. *Id.* at 15 (citing *Mason v. Smithkline*

*Beecham Clinical Labs.*, 146 F. Supp. 2d 1355, 1361 (S.D. Fla. 2001) ("The convenience of non-party witnesses is an important factor in determining whether a transfer should be granted. However, when considering this factor, it is not so much the convenience of the witnesses but the possibility of having their testimony at the trial that is important.") (internal citation omitted)). According to Plaintiff, "[a]ll but one of the individuals identified in Spartan's Initial Disclosures are current employees, and Spartan offers no explanation why the testimony of its own employees cannot be presented at trial in Florida; nor could it, given the presumption that an employer can ensure its employees' attendance at trial." *Id.* (citations omitted). Plaintiff additionally contends that technological advances have "greatly reduced witness inconvenience," and video depositions and video conferencing can be used to secure testimony. *Id.* at 16-17.

In reply, Defendant argues that "[w]ithout question, the convenience of the witnesses weighs heavily in favor of transfer" and that "it is self-evident, given the unrelenting global coronavirus pandemic that trial availability is marred with uncertainty." ECF No. [34] at 4.

Upon consideration, the Court is unpersuaded that these factors weigh in favor of transfer. Regarding factor 3, the convenience of the parties, this factor is "practically irrelevant to whether the motion to transfer should be granted." *Cent. Money Mortg. Co. v. Holman*, 122 F. Supp. 2d 1345, 1346 (M.D. Fla. 2000). Although Defendant is inconvenienced by traveling to Florida, the same can be said for Plaintiff if he is forced to travel to Massachusetts to litigate. "Where a transfer 'merely shifts the inconvenience from one party to another, Plaintiff's choice of forum should remain.'" *Mason*, 146 F. Supp. 2d at 1361 (citation omitted). Therefore, this factor is neutral.

Regarding factor 1, the convenience of the witnesses, and factor 5, the availability of process to compel the attendance of unwilling witnesses, Defendant has shown that a majority of its witnesses with relevant and discoverable information reside outside Florida. However, it has not identified third-party non-employee or former employee witnesses. Rather, as Plaintiff

correctly points out, Defendant focuses on the quantity of witnesses outside Florida, yet nearly all of the witnesses it identifies and considers "key witnesses" are its employees. "[T]ransfer may be denied when the witnesses, although in another district, are employees of a party and their presence can be obtained by that party.  It may also be denied where the movant does not show that the witnesses would be unwilling to testify and that compulsory process would be necessary." *Id.* at 1361-62. *See also Michael Kors, LLC v. Chunma USA, Inc.*, No. 15-23587-CIV, 2016 WL 11020246, at *4 (S.D. Fla. Feb. 23, 2016) ("the Court gives less weight to the inconvenience imposed on employees of the parties than it does for non-party witnesses"); *Kenneth F. Hackett & Assocs., Inc.*, 2010 WL 3056600, at *5-6 (noting that convenience of witnesses did not weigh in favor of transfer where defendants did not explain why any proposed witness' testimony was "crucial," and stating that "transfer may be denied when the witnesses, although in another district, are employees of a party and their presence can be obtained by that party" because the "[p]rocesses to compel a witness's presence are less necessary for employee-witnesses who are controlled by one of the litigants"); *Roy v. Perdue Farms, Inc.*, No. 613CV1656ORL36KRS, 2014 WL 12783276, at *1 (M.D. Fla. June 9, 2014) (noting that inconvenience for employee-witnesses is afforded "little weight due to [employer's] ability to compel them to testify"). Because Defendant has not identified key witnesses unrelated to Defendant itself nor shown why their testimony is so important to this case, factor 3 does not weigh in favor of transfer.

Likewise, Defendant has not provided evidence that any witnesses will not be present for trial or will be unable or otherwise unwilling to give testimony. Thus, this factor does not tilt in favor of transfer. *See, e.g.*, *Legg v. Quicken Loans, Inc.*, No. 14-61116-CIV, 2015 WL 13753742, at *3 (S.D. Fla. Mar. 6, 2015) (determining that the fifth factor "does not weigh in either party's favor at this early stage" where "[n]either party has identified any witnesses that are potentially unwilling to participate at trial and thus the availability of process to compel the attendance of

unwilling witnesses is a non-issuue"); *Roy*, 2014 WL 12783276, at *2 (convenience of witnesses and availability of process to compel attendance did not weigh in favor of transfer where defendant did "not identify any non-party witnesses who are unwilling to testify"); *Figueroa v. Sharper Image Corp.*, No. 05-21251-CIV, 2005 WL 8154985, at *3 (S.D. Fla. Dec. 13, 2005) (noting that transfer may be denied "where the movant does not show that the witnesses would be unwilling to testify") (quoting *Mason,* 146 F. Supp. 2d at 1361-62); *Perlman v. Delisfort-Theodule*, No. 09-80480-CIV, 2010 WL 11504751, at *2 (S.D. Fla. Mar. 30, 2010), *aff'd*, 451 F. App'x 846 (11th Cir. 2012) (denying transfer where movant "has identified no witnesses who would be unwilling to travel to Florida to testify or who could not be compelled to do so"). Accordingly, the Court does not find that factors 1, 3, or 5 weigh in Defendant's favor.

### ii. *Location of relevant documents and relative ease of access to sources of proof*

Defendant asserts that factor 2, the location of relevant documents and relative ease of access to sources of proof, favors transfer because the "anticipated pertinent testiny [is] most readily available in Massachusetts" and the "bulk of the likely relevant documentary evidence is located in Massachusetts" and is most easily accessed from there. ECF No. [24] at 12. Additionally, Defendant states that "despite certain capabilities afforded by 21st century technological advances, transfer of this case would relieve any anticipated burden on the parties regarding the ease of access to sources of proof." *Id. See also* ECF No. [34] at 6.

Plaintiff responds that this factor is "virtually irrelevant" given the "pervasive existence of electronically stored documents and the availability of production via FTP links." ECF No. [32] at 17 (quoting *Ritter v. Metroplitan Cas. Ins. Co.*, No. 4:19-CV-10105-KMM, 2019 WL 8014511, at *4 (S.D. Fla. Dec. 3, 2019) ("In most cases today, including this one, technological advancements have rendered the physical location of documents and other types of proof virtually irrelevant. *See,*

*e.g.*, *Microspherix LLC v. Biocompatibles, Inc.*, No. 9:11-CV-80813-KMM, 2012 WL 243764, at *3 (S.D. Fla. Jan. 25, 2012) ("In a world with fax machines, copy machines, email, overnight shipping, and mobile phones that can scan and send documents, the physical location of documents is irrelevant. In light of the burden a party moving for transfer bears, absent a showing by the moving party to the contrary, this Court considers the location of relevant documents and the relative ease of access to sources of proof a non-factor.")).

Upon review, the Court agrees with Plaintiff that this factor is "virtually irrelevant" and does not favor transfer under the present circumstances. Defendant has not identified any particular prejudice that may arise from having to produce documents from Massachusetts. *See Guarantee Ins. Co. v. Amazing Home Care Servs., LLC*, No. 12-24026-CIV, 2013 WL 12094328, at *3 (S.D. Fla. Feb. 13, 2013) ("[I]n this age of electronic discovery, it is no more burdensome for Defendant to produce its documents in Florida than it is for it to produce them in New York. The Court has previously found, and repeats here, that '[p]roducing documents and other files for litigation . . . is not usually a burdensome ordeal due to technological advancements, such as electronic document-imaging and retrieval.'"). Nor has it provided evidence that available tools are insufficient to address the potential needs of this case. Accordingly, this factor does not favor transfer.

### iii.    *Locus of operative facts and the relative means of the parties*

In its Motion, Defendant does not address factor 4, the locus of operative facts, nor factor 6, the relative means of the parties. In the Reply, Defendant contends that because the Complaint alleges that Defendant's conduct emanates from Massachusetts, factor 4 favors transfer. Upon review, the Court finds this factor is neutral. Specifically, the Complaint demonstrates that the operative facts span both Florida and Massachusetts, and neither state can claim a greater role in the underlying events. *See Plain Bay Sales, LLC v. Gallaher*, No. 18-80581-CIV, 2018 WL

8899305, at *4 (S.D. Fla. July 11, 2018) (noting that this factor does not weigh in favor of transfer where the operative facts occurred in both plaintiff's chosen forum and the proposed transfer forum). Regarding factor 6, Plaintiff is an individual whereas Defendant admits that it is the "global leader in obstacle course races" with "250+ annual events across 42+ countries." ECF No. [24-1] at 2. In this setting, this factor does not weigh in Defendant's favor. *See, e.g.*, *Roy*, 2014 WL 12783276, at *2 ("Perdue is a corporation with over $4 billion in annual sales. Roy, on the other hand, is an individual consumer. Perdue is therefore far more well-equipped to litigate in a less convenient forum. Accordingly, this factor weighs against transfer.") (internal citation omitted); *Legg* 2015 WL 13753742, at *3 (relative means of the parties "strongly weighs in favor of [plaintiff]. He is an individual, living and working in Florida, whereas Quicken Loans is 'the nation's largest online banker' with a strong national presence").

### iv. *Forum's familiarity with the governing law*

Defendant asserts that factor 7, a forum's familiarity with the governing law, supports transfer because Count I invokes Massachusetts law and "Plaintiff's assertion of multi-jurisdictional consumer protection claims will likely place a significant and unnecessary burden on whichever district court presides over this matter[.]" ECF No. [24] at 12-13. According to Defendant, it will be "substantial[ly] prejudice[d]" if a non-Massachusetts court presides over a putative class action implicating Massachusetts Consumer Protection Law, Massachusetts General Laws, Chapter 93A. *Id.* at 13. In this respect, Defendant contends that the Massachusetts federal court is "better equipped" to preside over Count I, and Count I "should be prioritized over any Florida consumer protection claim a Florida subclass may have." *Id.* Indeed, it contends that it is "apodictic" that the Massachusetts court adjudicate a putative class action based on Massachusetts law and that the "Florida consumer protection claim does not implicate such a broad spectrum of potential class members." ECF No. [34] at 7.

The Court finds Defendant's arguments to be unavailing. First, Defendant focuses on the Massachusetts claim while largely overlooking the Florida claims. As Plaintiff rightfully notes in his Response, Defendant fails to consider fully that regardless of the forum, either a Florida court or a Massachusetts court will have to apply both the law of the state in which it sits and the law of a foreign state—either Florida or Massachusetts. *See Kenneth F. Hackett & Assocs., Inc.*, 2010 WL 3056600, at *6 ("With respect to the law that will govern this suit, although Hackett asserts a breach of contract claim under Georgia law, it also asserts a FDUTPA claim. Hence the hurdles that exist when Florida applies Georgia contract law would in turn exist when Georgia applies Florida statutory law."). In this respect, Defendant fails to show why the Massachusetts claim should be given more weight under this factor in comparison to the Florida claims.

Second, Defendant provides no authority to support the contention that this Court, or any other federal court in the country, is ill-equipped to apply the laws of Massachusetts. *See, e.g.*, *Atl. Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Texas*, 571 U.S. 49, 67–68 (2013) ("And, in any event, federal judges routinely apply the law of a State other than the State in which they sit. We are not aware of any exceptionally arcane features of Texas contract law that are likely to defy comprehension by a federal judge sitting in Virginia."). In fact, it notes that this Court is "certainly capable of applying Massachusetts law." ECF No. [34] at 7.

Third, Defendant has not demonstrated that the consumer protection statutes at issue are so dissimilar that a Massachusetts court would have overriding expertise in handling these claims so as to warrant transfer. *See Bezdek v. Vibram USA Inc.*, No. CIV.A. 12-10513-DPW, 2013 WL 639145, at *3 (D. Mass. Feb. 20, 2013) ("Chapter 93A and the FDUTPA employ similar standards of liability."). Accordingly, this factor does not support transfer.

Case No. 1:20-cv-20836-BLOOM/Louis

### v.  Weight accorded a plaintiff's choice of forum

Defendant asserts that factor 8, the weight accorded a plaintiff's choice of forum, is given less deference when an individual purports to represent a class. ECF No. [24] at 13-14 (citing *Moghaddam v. Dunkin Donuts, Inc.*, No. 02-60045-CIV-ZLOCH, 2002 WL 1940724, at *2 (S.D. Fla. Aug. 13, 2002) ("a plaintiff's choice of forum will be afforded less deference where, as here, the action is a class action"). It adds that under the circumstances, Plaintiff's choice "should be entitled to considerably less weight" because multi-state statutory claims are alleged. ECF No. [34] at 3. Plaintiff asserts that a plaintiff's choice of forum is ordinarily entitled to "nearly paramount weight," and that while less deference applies to a plaintiff's choice of forum in class action cases, "some deference" is 'still appropriate." ECF No. [32] at 10-11 (quoting *Legg*, 2015 WL 13753742, at *3).

Upon review, the Court concludes that this factor does not tip in favor of transfer. Although Plaintiff's choice of forum is entitled to less deference in this setting, the Court finds that some deference to this forum is still appropriate. Florida is Plaintiff's home forum, certain operative facts occurred here, and Plaintiff asserts Florida-law based claims.

### vi.  Trial efficiency and the interests of justice

Defendant asserts that it has "extremely strong ties to Massachusetts" and would be "substantially burdened" by having to litigate here if the class claims under Massachusetts law are certified. ECF No. [24] at 9. *See also* ECF No. [34] at 7. Plaintiff argues that factor 9, trial efficiency and the interests of justice, based on the totality of the circumstances, "weighs strongly against transfer." ECF No. [32] at 19. In particular, he cites statistics that demonstrate that civil cases are disposed of considerably faster in this district compared to the District of Massachusetts. *See id.* at n.7. Likewise, he notes that Defendant has not asserted any need for a transfer to alleviate congestion in this forum. *See Gubarev v. Buzzfeed, Inc.*, 253 F. Supp. 3d 1149, 1168 (S.D. Fla.

2017) (stating that this factor weighed against transfer because "[c]ourts require a significant difference between districts before finding that congestion merits transfer" and noting that "statistics from the Administrative Office of the United States Courts speak for themselves" regarding the speed of trials across districts).

Upon review, the Court finds that although Defendant, like all out-of-state defendants, is burdened by litigating in this forum, trial efficiency and the interests of justice do not weigh in its favor. The public's interest in a fast and efficient adjudication of consumer claims is not hindered by litigating this action in this district. In fact, to the contrary, the statistics "speak for themselves" and demonstrate that this forum enjoys a considerable advantage in median time-to-trial compared to the District of Massachusetts. *See* https://www.uscourts.gov/statistics/table/c-5/statistical-tables-federal-judiciary/2019/12/31 (last visited on May 25, 2020).

### vii.    *Weighing the balance of considerations*

As noted, a "plaintiff's choice of forum should not be disturbed unless it is clearly outweighed by other considerations." *Robinson*, 74 F.3d at 260. Indeed, "transfer can only be granted where the balance of convenience of the parties strongly favors the defendant." *Steifel Labs., Inc.*, 588 F. Supp. 2d at 1339 (citing *Robinson*, 74 F.3d at 260). Defendant has not shown that transfer is appropriate. Although it argues that it is more convenient for it to litigate in its home forum, Defendant has not demonstrated that this factor should be given near-dispositive weight. Likewise, it has not shown that the factors, when assessed as a whole, weigh so strongly in its favor that Plaintiff's choice of forum should be disturbed. Accordingly, the Motion is denied as to Defendant's request to transfer this lawsuit to the District of Massachusetts.

### B.    Dismissal is not warranted

Defendant maintains that even if tranfer is not ordered, the Complaint should be dismissed with prejudice. In particular, it contends that Plaintiff lacks Article III standing to assert claims

under Massachusetts law, causing Count I to fail. ECF No. [24] at 3, 16-18. Further, because the parties entered into the Waiver, ECF Nos. [24-2] and [24-3], which disclosed that Plaintiff's registration payment total included a "mandatory administrative and racer insurance fee," and because Defendant, in its view, did not make any misrepresentation or misstatement as to how the $14 fee would be specifically calculated and/or allocated, Defendant argues that no reasonable consumer could believe the Racer Insurance Fee would be distributed solely to a third-party insurance carrier, thus defeating Count II. *Id.* at 3, 18-21. Finally, Defendant asserts that Count III, unjust enrichment, is barred by the existence of the Waiver. *Id.* at 4, 21-22. The Court will address each argument.

### i.   *Count I – Massachusetts consumer protection claim*

Regarding Count I, violation of the Massachusetts Consumer Protection Law, Massachusetts General Laws, Chapter 93A *et seq.*, Defendant asserts that Plaintiff does not have standing to bring this claim because he is a Florida resident, he registered for the Spartan race in Florida, and he has not alleged any purported injury occurred in Massachusetts. ECF No. [24] at 16. Additionally, Defendant notes that Plaintiff does not allege that he viewed any purported advertising or marketing materials in Massachusetts. *Id.* at 17. Therefore, in Defendant's view, these features preclude Plaintiff from raising a non-Florida law claim. *See id.* at 16-18.

In response, Plaintiff counters that the "critical factor for relief under Chapter 93A is not Plaintiff's state of residence, but rather Spartan's alleged deceptive conduct in and emanating from Massachusetts." ECF No. [32] at 8. Similarly, he adds that Massachusetts courts have permitted Florida residents to bring Chapter 93A claims. *See id.* (citing *Geis v. Nestle Waters N. Am., Inc.*, 321 F. Supp. 3d 230 (D. Mass. 2018) and *Bezdek v. Vibram USA, Inc.*, 79 F. Supp. 3d 324 (D. Mass. 2015), *aff'd*, 809 F.3d 78 (1st Cir. 2015)). He also notes that "Chapter 93A and the FDUTPA employ similar standards of liability," *id.* (quoting *Bezdek*, 2013 WL 639145, at *3), and

challenges that Defendant "does not question that Plaintiff's Chapter 93A claim is sufficiently pled[.]" *Id.* In reply, Defendant asserts that *Geis* is distinguishable because that case did not involve multi-state statutory claims in a forum outside Massachusetts. ECF No. [34] at 10. In Defendant's view, this is "fatal" to Count I. *Id.*

Upon review, the Court concludes that Plaintiff has sufficiently alleged standing to assert a Massachusetts consumer protection claim based on the facts alleged in the Complaint. Specifically, the Complaint alleges that Defendant's "unfair and deceptive scheme emanated from Spartan's headquarters in Massachusetts[.]" ECF No. [15] at ¶ 8. Further, the "harm suffered by Plaintiff and consumers" "was directly and proximately caused by Spartan's unfair and deceptive practices[.]" *Id.* at ¶ 48. Moreover, the affidavit Defendant submitted in support of the Motion states that the "bulk of Spartan Race, Inc.'s business operations occur [in Massachusetts], including, but not limited to, advertising and marketing, administrative functions, purchasing of insurance, and implementation and management of the $14.00 fee apparently at issue in this case." *See* ECF No. [24-1] at ¶ 6. Taken together, the Complaint alleges wrongful conduct originating in Massachusetts and harm to Plaintiff in Florida based on the Massachusetts conduct.

Defendant's contention that Plaintiff lacks Article III standing because Plaintiff is a Florida resident and did not suffer harm in Massachusetts is relatedly unavailing. In *Geis*, a Florida resident brought a putative class action Chapter 93A claim against a Massachusetts defendant. 321 F. Supp. 3d 230. Like here, the defendant in that case argued that the plaintiff lacked Article III standing because she never lived in Massachusetts, did not suffer an injury in that state, and was not protected by its laws. *Id.* at 240. That court rejected the defendant's argument, and noted that Chapter 93A on its face "does not require that a plaintiff reside in Massachusetts to bring a claim," "there is no requirement that the allegedly deceptive activity had to occur 'primarily and substantially' in Massachusetts," and the Massachusetts Supreme Judicial Court has "interpreted

chapter 93A's private right of action to be broadly available to consumers." *Id.* at 241. Likewise, Massachusetts state and federal courts "have allowed chapter 93A suits by out-of-state plaintiffs to go forward[.]" *Id.* Therefore, that court "decline[d] to hold that Massachusetts residents are the only consumers who can bring chapter 93A actions, particularly when a consumer is harmed by a fraudulent statement that was made in Massachusetts." *Id.*

Based on *Geis* and the Complaint's allegations, the Court does not agree that Plaintiff lacks standing to assert Count I. Contrary to Defendant's argument, *Geis* is not inapplicable on the basis that that case did not involve multi-jurisdictional consumer protection claims litigated in a non-Massachusetts forum. This supposed distinction, at its core, is meaningless. Plaintiff's standing to assert non-Massachusetts based claims has no bearing on whether it has standing to assert the instant Chapter 93A claim. Indeed, as Defendant notes, "[i]t is not enough that a named plaintiff can establish a case or controversy between himself and the defendant by virtue of having standing as to one of many claims he wishes to assert" because each claim "must be analyzed separately." ECF No. [24] at 17 (quoting *Prado-Steiman ex rel. Prado v. Bush*, 221 F.3d 1266, 1280 (11th Cir. 2000)). Likewise, nothing in *Geis* indicates that Chapter 93A claims can only be brought in Massachusetts courts. The fact that *Geis* was litigated in Massachusetts and involved only Massachusetts claims does not lend support to the proposition that a plaintiff is precluded from asserting Chapter 93A claims, in a non-Massachusetts forum, when it also raises a separate state consumer protection law claim. Accordingly, the Motion is denied as to Count I.

### ii.    *Count II – FDUTPA*

Regarding Count II, Defendant contends that Plaintiff "fails to plead a material misrepresentation because his allegations regarding the mandatory 'Racer Insurance Fee' omit that Plaintiff acknowledged the Waiver (twice), which fully disclosed Plaintiff's 'order total includes a mandatory administrative ***and*** racer insurance fee ($14.00) for each event registration.'

Accordingly, because Spartan *did not* provide any statement or representation as to how this $14.00 fee would be calculated and/or allocated amongst administrative fees and payment to a third-party insurance carrier, no reasonable consumer (including Plaintiff) could believe the $14.00 fee would be distributed solely to a third-party insurance carrier." ECF No. [24] at 18 (emphasis in original). Thus, Defendant posits that the $14.00 fee was not deceptive and did not involve a "material misrepresentation." *Id.* at 18-19.

In response, Plaintiff maintains that whether a reasonable consumer would interpret the Racer Insurance Fee as a "pass-through charge" is a jury question, ECF No. [32] (citing *Coleman v. CubeSmart*, 328 F. Supp. 3d 1349 (S.D. Fla. 2018)), and that the "net impression" created by Defendant's alleged representations and omissions supports the view that a reasonable consumer would be deceived that the $14.00 fee is not solely used for purchasing third-party insurance. *Id.* at 4-7. Further, he argues that Defendant's emphasis that the Waiver discloses an "administrative and racer insurance fee" does not support dismissal in light of the Complaint's factual allegations. *Id.* at 7. In reply, Defendant asserts that the cases Plaintiff cites are distinguishable and that Plaintiff "completely distorts what the Spartan website actually provides[.]" ECF No. [34] at 8-9.

One of the stated purposes of FDUTPA is to "protect the consuming public and legitimate business enterprises from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce." Fla. Stat. § 501.202(2). FDUTPA is to be construed "liberally" to promote its underlying policies. *Id.* at § 501.202. *See also id.* at § 501.204(2) ("due consideration and great weight shall be given to the interpretations of the Federal Trade Commission and the federal courts relating to s. 5(a)(1) of the Federal Trade Commission Act."). A "claim for damages under FDUTPA has three elements: (1) a deceptive act or unfair practice; (2) causation; and (3) actual damages." *Caribbean Cruise Line, Inc v. Better Business Bureau of Palm Beach Cnty.*, 169 So. 3d 164, 167 (Fla. 4th DCA 2015)

(quoting *Kertesz v. Net Transactions, Ltd.*, 635 F. Supp. 2d 1339, 1348 (S.D. Fla. 2009)). An "unfair practice" is "one that offends established public policy" and is "immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers." *Kertesz*, 635 F. Supp. 2d at 1348 (citation omitted). A "deceptive practice" is one that is "likely to mislead." *Id. See also Cox v. Porsche Fin. Serv., Inc.*, 342 F. Supp. 3d 1271, 1286 (S.D. Fla. 2018) (noting that "[c]ourts in this district have held that a 'deceptive act' is one where a 'representation, omission, or practice occurred that was likely to mislead the consumer acting reasonably in the circumstances, to the consumer's detriment'") (citation omitted).

Upon review, the Court cannot conclude, based on the Complaint's factual allegations, that the Racer Insurance Fee—or the $14.00 fee, as characterized by Defendant—is not a deceptive act or unfair practice.[3] Although the Waiver contains a prefatory statement that the "order total includes a mandatory administrative and racer insurance fee ($14.00) for each event registration," *see* ECF Nos. [24-2] and [24-3], the Waiver does not provide any further information about the insurance fee's purpose or what it entails. The Waiver also does not contain any information about "administrative fees" aside from the language quoted above. By contrast, as alleged in the Complaint, the "Racer Insurance Fee" is set forth as a separate line-item entry in a registrant's checkout cart on Defendant's website. *See* ECF No. [15] at 6 ¶ 19. The image contained in the Complaint depicts a checkout invoice stating "Racer Insurance Fee" across from "$14.00," and there is no mention of an "administrative fee" or that the Racer Insurance Fee is somehow connected to another fee. *Id.* In this respect, notably, the checkout invoice also depicts a separate "service fee" that is set forth as a discrete line-item charge. *Id.*

---

[3] Defendant does not challenge the causation and damages prongs of the FDUTPA claim. The Court, accordingly, will not analyze whether those elements are sufficiently pled.

The second sentence of the Waiver, additionally, states that the "[i]nsurance fee [is] only applicable to racers." ECF Nos. [24-2] and [24-3]. The sentence above that, which contains the language Defendant relies upon, references the $14.00 charge immediately behind the "racer insurance fee." *Id.* Thus, when examining the Waiver's language against the Complaint's allegations and representations, the Court cannot conclude that the "administrative and racer insurance fee ($14.00)" consists of two separate charges totaling $14.00 together. According to the Complaint's allegations, the Racer Insurance Fee is $14.00, and the Complaint sufficiently alleges that Defendant represented that fee as a stand alone item without reference to any administrative or service fee component. Likewise, the Complaint references a link on Defendant's website that provides information concerning what the racer insurance policy covers. *Id.* That link notes that Defendant "purchases accident medical insurance coverage from a licensed third-party insurance carrier, which provides limited coverage to participants[.]" *Id.* That link, however, does not mention an administrative fee or provide a basis for the Court to infer that part of the fee for racer insurance coverage goes to anything besides purchasing third-party insurance.

Taken as a whole, the Court finds that Plaintiff has sufficiently alleged that a reasonable consumer could be deceived to conclude that the Racer Insurance Fee was a pass-through charge. Defendant, therefore, has pled a FDUTPA claim and dismissal of Count II is denied.

### iii.    Count III – Unjust enrichment

Regarding Count III, unjust enrichment, Plaintiff alleges that Defendant "profited from its unlawful collection and retention of a portion of the 'Racer Insurance Fee' it charged at the expense of Plaintiff and Class Members, under circumstances in which it would be unjust for Spartan to be permitted to retain the benefit. Under common law principles of unjust enrichment, Spartan should not be permitted to retain the benefits of this unjust enrichment, as they were obtained through deceptive representations and omissions[.]" ECF No. [15] at ¶ 63.

26

Defendant contends that this claim is "rooted in the same factual predicate as [the] FDUTPA claim" and it should be dismissed under Rule 12(b)(6) because "there is an express contract governing the subject matter and relationship of the parties – the Waiver." ECF No. [24] at 21. According to Defendant, unjust enrichment is an equitable remedy that necessarily fails upon a showing that an express contract exists. *Id.* (citations omitted). Further, Defendant notes that the Complaint alleges that the $14.00 fee "is required along with a waiver absolving any liability by Spartan for any resulting injury." *Id.* at 22.

In response, Plaintiff argues that the claim is not barred by an express contract, he does not allege a breach of contract claim, and this Court has permitted an unjust enrichment claim to be pled together with a FDUTPA claim. ECF No. [32] (citing *Harris v. Nordyne, LLC*, No. 14-CIV-21884, 2014 WL 12516076, at *7 (S.D. Fla. Nov. 14, 2014)). In reply, Defendant asserts that irrespective of whether Plaintiff has asserted a breach of contract cause of action, Plaintiff may not assert an unjust enrichment claim based on fees that were charged in accordance with the Waiver. ECF No. [34] at 11. In Defendant's view, the Waiver unambiguously provided notice that as consideration for the opportunity to participate in a Spartan race, a $14.00 "mandatory administrative and racer insurance fee" must be paid. *Id.*

In *Harris*, this Court rejected the defendant's argument that plaintiffs' unjust enrichment claim should be dismissed on the ground that plaintiffs also plead a FDUTPA claim based on the same underlying factual allegations. In particular, this Court noted the following:

> "It is generally true that equitable remedies are not available under Florida law when adequate legal remedies exist. However, that rule does not apply to unjust enrichment claims." *State Farm Mut. Auto. Ins. Co. v. Physicians Injury Care Ctr., Inc.*, 427 Fed. App'x. 714, 722 (11th Cir. 2011) (citing *Williams v. Bear Stearns & Co.*, 725 So. 2d 397, 400 (Fla. 5th DCA 1998)). "Rather, it is only upon a showing that an express contract exists between the parties that the unjust enrichment . . . count fails." *State Farm Mut. Auto. Ins. Co. v. Altamonte Springs Diagnostic Imaging, Inc.*, 2011 WL 6450769, at *5 (M.D. Fla. Dec. 21, 2011) (quoting *State Farm v. Physicians*); *Williams*, 725 So. 2d 400 ("Until an express contract is

*proven*, a motion to dismiss a claim for . . . unjust enrichment . . . is premature."
(emphasis added)). "[T]o the extent that a plaintiff has adequate legal remedies
under theories of liability other than a claim of breach of an express contract, those
remedies do not bar an unjust enrichment claim." *In re Horizon Organic Milk Plus
DHA Omega-3 Mktg. & Sales Practice Litig.*, 955 F. Supp. 2d 1311, 1337 (S.D.
Fla. 2013); *see also Marty v. Anheuser-Busch Companies, LLC*, 2014 WL
4388415, at \*13 (S.D. Fla. Sept. 5, 2014) (refusing to dismiss unjust enrichment
claim). Thus, the availability of Plaintiffs' FDUTPA claim does not require
dismissal of its unjust enrichment claim. *See Reilly v. Amy's Kitchen, Inc.*, 2013
WL 9638985, at \*7 & n.3 (S.D. Fla. Dec. 9, 2013) ("Because the Eleventh Circuit
has rejected the very argument Defendant makes in support of dismissal of the
unjust enrichment claim, and there is no allegation that an express contract exists
between the parties, the Court will deny the Motion as to the unjust enrichment
claim."); *Feiner v. Innovation Ventures LLC*, 2013 WL 2386656, at \*5 (S.D. Fla.
May 30, 2013) ("[U]njust enrichment claims are available under Florida law even
where adequate legal remedies exist."); *Hill v. Hoover Co.*, 899 F. Supp. 2d 1259,
1268 (N.D. Fla. 2012) ("[T]he existence of an adequate legal remedy does not
preclude the Plaintiff from pleading unjust enrichment in the alternative.").

*Id.* at \*7 (footnotes omitted). Accordingly, to the extent Defendant argues that Count III fails

because it is "rooted in the same factual predicate as his FDUTPA claim," that argument is

unavailing. ECF No. [24] at 21. Additionally, in *Harris*, the Court examined the defendant's

argument that the unjust enrichment claim failed because an express contract governed the parties'

dispute. In particular, the Court noted as follows:

Defendant, however, argues that Plaintiffs cannot maintain their unjust enrichment
claim under the facts as alleged here because an express contract does in fact govern
the subject of Plaintiffs' dispute. "It is well settled that the law will not imply a
contract where an express contract exists concerning the same subject
matter." *Kovtan v. Frederiksen*, 449 So. 2d 1, 1 (Fla. 2d DCA 1984). Therefore, an
"unjust enrichment claim [is] precluded by the existence of an express contract
between the parties concerning the same subject matter. *Diamond "S" Dev. Corp.
v. Mercantile Bank*, 989 So. 2d 696, 697 (Fla. 1st DCA 2008). *See also Degutis v.
Fin. Freedom, LLC*, 978 F. Supp. 2d 1243, 1266 (M.D. Fla. 2013) ("In this case, it
is undisputed by Plaintiff that an express mortgage contracts exists between
Plaintiff and the Defendants. Even though Plaintiff argues that it is alleging the
unjust enrichment claim in the alternative, . . . Plaintiff is not alleging that the
contract is invalid. [Because] Plaintiff does not contest that there was a valid
mortgage contract between the Parties[,] Plaintiffs claim for unjust enrichment
fails."); *Cent. Magnetic Imaging Open MRI of Plantation, Ltd. v. State Farm Mut.
Auto. Ins. Co.*, 789 F. Supp. 2d 1311, 1317 (S.D. Fla. 2011) ("As there is a valid
express contract that no party challenges, Plaintiff may not recover under unjust
enrichment, and may not assert it as an alternative claim under Federal Rule 18.").

> Further, an unjust enrichment claim can only be pled in the alternative if one or more parties contest the existence of an express contract governing the subject of the dispute. *Speier-Roche v. Volksw Agen Grp. of Am. Inc.*, 2014 WL 1745050, at *8 (S.D. Fla. Apr. 30, 2014).

*Id.* at *8. In that case, the Court determined that the "standard express warranty" did not defeat plaintiffs' unjust enrichment claim because the document was insufficient to prove the existence of an express written contract governing the terms between defendant and plaintiffs. *Id.*

Here, although Defendant contends that the Waiver is an "express contract governing the subject matter and relationship of the parties," the Waiver does not contain terms and conditions regarding the Racer Insurance Fee. Instead, the document merely includes three short sentences at the top of the first page (above the bolded "Spartan Race Series Waiver, Release of Liability, Covenant Not to Sue & Image Release") noting that "your order total includes a mandatory administrative and racer insurance fee ($14.00) for each event registration and a Chronotrack processing fee. Insurance fee only applicable to racers. Depending on your state of residence, there may also be a state sales tax applied." ECF Nos. [24-2], [24-3]. This language is not reincorporated in the Waiver as "consideration" to participate in the race. Further, it is unclear at this setting whether the language at issue is even considered part of the Waiver itself. Specifically, language addressing "consideration" for participating in the Spartan Races is located two paragraphs below the "racer insurance fee" portion, and payment of a "racer insurance fee" is not listed as one of the Waiver's provisions.[4]

---

[4] In paragraph 5(iv) of the Waiver, the person signing the Waiver must "attest and verify that: . . . (iv) on the date of the Event, Participant will possess and be covered by medical/health insurance, individually or as part of an organization." ECF Nos. [24-2] at 2; [24-3] at 4. That provision, however, does not contain any reference to the Racer Insurance Fee specifically or to Defendant's purchase of third-party insurance generally. Similarly, although Plaintiff alleges that the $14.00 fee is "required along with a waiver of absolving any liability by Spartan for any resulting injury," ECF No. [15] at ¶ 5, that allegation was made in the context of Plaintiff alleging why the Racer Insurance Fee is "basically worthless." *Id.* That allegation also does not state that the Racer Insurance Fee is an express term of the Waiver nor that the Waiver is the parties' complete contract.

While the Waiver may be an "express contract" for different aspects of Plaintiff's and Defendant's relationship, the Court cannot conclude at this juncture that the document operates as an express contract vitiating Plaintiff's unjust enrichment claim. Therefore, the Motion is denied as to Count III.

**IV.      CONCLUSION**

Accordingly, it is **ORDERED AND ADJUDGED** that the Motion, **ECF No. [24]**, is **DENIED**. Defendant shall file its answer to the Complaint no later than June 11, 2020.

**DONE AND ORDERED** in Chambers at Miami, Florida, on May 28, 2020.

_____
**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

Copies to:

Counsel of Record