**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

**Case No.: 1:20-CV-20836-BLOOM/Louis**

AARON FRUITSTONE, on behalf of himself
and all others similarly situated,

      Plaintiff,

v.                                                              **CLASS ACTION**

SPARTAN RACE, INC.,
a Delaware Corporation,

      Defendant.

_____

**PLAINTIFF'S UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS**
**ACTION SETTLEMENT AND CERTIFICATION OF THE SETTLEMENT CLASS**

# TABLE OF CONTENS

TABLE OF AUTHORITIES …………………………………………………... iii

INTRODUCTION ………………………………………………….......... 1

I. FACTUAL BACKGROUND………………………………...………….. 2

    A. *The Mediation Process*…………………………………………… 2

    B. *The Proposed Settlement*…………………………………… 4

II. THE SETTLEMENT TERMS AND AGREEMENT……………………………… 5

    A. *The Proposed Settlement Class* …………………………………… 5

    B. *Settlement Relief*…………………………………………… 5

        1. The Spartan+ Membership Program (the "Program")……………… 6

        2. Electronic Vouchers for Free Purchase of Spartan Merchandise…….. 7

        3. Election of Benefits………………………………………… 7

        4. Injunctive Relief to the Settlement Class…………………………… 7

    C. *Class Notice*… ……………………………………………... 8

    D. *Class Counsel's Fees and Expenses and Named Plaintiff's Case Contribution Award*……………………………………………… 8

    E. *Final Approval and Objections*……………………………………… 9

IV. THE COURT SHOULD GRANT PRELIMINARY APPROVAL OF THE SETTLEMENT……… 9

    A. The Settlement Is the Product of Good Faith, Informed, and Arm's-Length Negotiations among Experienced Counsel. ……………………….. 10

    B. The Settlement Falls Squarely within the Range of Reasonableness…………. 11

        1. Settlement Relief…………………………………………….. 11

    C. The Settlement Saves the Settlement Class from Considerable Litigation Hurdles. ……………………………………………… 14

    D. Class Counsel Believes the Settlement Is Reasonable. ……………………… 14

    E. No Additional Agreements Required to Be Identified. ………………………. 14

V. THE COURT SHOULD CERTIFY THE PROPOSED SETTLEMENT CLASS……………...... 14

    A. The Settlement Class Meets the Four Requirements of Rule 23(a)………….. 15

        1. The Settlement Class Is Ascertainable and Sufficiently Numerous…. 15

        2. Questions of Law and Fact Are Common to All Settlement Class Members. ……………………………………………… 15

        3. Plaintiff's Claims Are Typical of Those of the Settlement Class…. … 16

        4. Plaintiff and Their Counsel Are Adequate Representatives…………. 17

a.   Plaintiff and Their Counsel Are Adequate Representatives....... 17

b.   Settlement Class Counsel Are Qualified and Experienced......... 17

B.   The Settlement Class Meets the Requirements of Rule 23(b)(3)............... 17

VI. THE COURT SHOULD APPROVE THE PROPOSED CLASS NOTICE........................... 19

VII. THE COURT SHOULD APPOINT THE MOSKOWITZ LAW FIRM AND BONNETT, FAIRBOURN, FRIEDMAN & BALINT, P.C. AS CLASS COUNSEL ......................... 19

VIII. THE COURT SHOULD PRELIMINARILY ENJOIN PARALLEL PROCEEDINGS................ 19

IX.   NOTICE REGARDING INCENTIVE AWARD............................................... 20

X.   THE COURT SHOULD SCHEDULE A FINAL APPROVAL HEARING.......................... 20

CONCLUSION................................................................... 20

CERTIFICATE OF SERVICE......................................................... 21

**TABLE OF AUTHORITIES**

*Agan v. Katzman & Korr, P.A.,* 222 F.R.D. 692 (S.D. Fla. 2004) ................................................ 16

*Anchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997) ................................................................ 18

*Association for Disabled Ams., Inc. v. Amoco Oil Co.*, 211 F.R.D. 457 (S.D. Fla. 2002) .......... 17

*Behrens v. Wometco Enters., Inc.*, 118 F.R.D. 534 (S.D. Fla. 1988) ........................................... 12

*Bohannan v. Innovak Int'l, Inc.*, 318 F.R.D. 525 (M.D. Ala. 2016) ............................................ 15

*Browning v. Yahoo! Inc.*, No. C04-01463 HRL, 2007 WL 4105971 (N.D. Cal. Nov. 16, 2007) 13

*Carriulo v. Gen. Motors Co.*, 823 F.3d 977 (11th Cir. 2016) ...................................................... 18

*Cotton v. Hinton*, 559 F.2d 1326 (5th Cir. 1977) ........................................................................ 11

*Cox v. Am. Cast Iron Pip Co.*, 784 F.2d 1546 (11th Cir. 1986) .................................................. 15

*David v. Am. Suzuki Motor Corp.*, No. 08-cv-22278, 2010 WL 1628362 (S.D. Fla. Apr. 15, 2010) ........................................................................................................................................ 12

*DeBoer v. Mellon Mortg. Co.*, 64 F.3d 1171 (8th Cir. 1995) ..................................................... 14

*Dupler v. Costco Wholesale Corp.,* 705 F. Supp. 2d 231 (E.D. N.Y. 2010) .............................. 13

*Erica P. John Fund, Inc. v. Halliburton Co.*, 563 U.S. 804 (2011) ............................................ 18

*Fisher Bros., Inc. v. Mueller Brass Co.*, 630 F. Supp. 493 (E.D. Pa. 1985) ............................... 12

*Francisco v. Numismatic Guaranty Corp. of Am.*, No. 06-61677-CIV, 2008 WL 649124 (S.D. Fla. Jan. 31, 2008) ....................................................................................................................... 11

*Fresco v. Auto Data Direct, Inc.*, No. 03-cv-61063, 2007 WL 2330895 (S.D. Fla. May 14, 2007) ................................................................................................................................................... 9

*Glaberson v. Comcast Corp.*, No. 03-6604, 2015 WL 5582251 (E.D. Pa. 2015) ....................... 13

*Great Neck Capital Appreciation Inv. P'ship, L.P. v. PricewaterhouseCoopers, L.L.P.*, 212 F.R.D. 400, 409–10 (E.D. Wis. 2002) ...................................................................................... 11

*Hanon v. Dataprods. Corp.*, 976 F.2d 497 (9th Cir. 1992) ........................................................ 16

*In re Am. Online Spin-Off Accounts Litig.*, No. CV 03-6971-RSWL, 2005 WL 5747463 (C.D. Cal. May 9, 2005) ....................................................................................................................... 20

*In re Checking Account Overdraft Litig.*, 830 F. Supp. 2d 1330 (S.D. Fla. 2011) ....... 6, 10, 15, 16

*In re Coordinated Pretrial Proceedings in Antibiotic Antitrust Actions*, 410 F. Supp. 659 (D. Minn. 1974) .................................................................................................. 14

*In re Domestic Air Transp. Antitrust Litig.*, 137 F.R.D. 677 (N.D. Ga. 1991) ........................... 16

*In re Equifax Inc. Customer Data Sec. Breach Litig.*, No. 1:17-MD-2800-TWT, 2020 WL 256132 (N.D. Ga. Mar. 17, 2020) ................................................................. 13

*In re Jiffy Lube Securities Litig.*, 927 F.2d 155 (4th Cir. 1991) .................................................. 11

*In re Mid-Atl. Toyota Antitrust Litig.*, 564 F. Supp. 1379 (D. Md. 1983) ................................... 10

*In re Newbridge Networks Sec. Litig.*, No. 94-cv-1678, 1998 WL 765724 (D.D.C. 1998 ............ 6

*In re Online DVD-Rental Antitrust Litigation*, 779 F.3d 934 (9th Cir. 2015) .............................. 13

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 330 F.R.D. 11 (E.D.N.Y. 2019) ........................................................................................................ 10

*In re Rite Aid Corp. Sec. Litig.*, 146 F. Supp. 2d 706 (E.D. Pa. 2001) ......................................... 6

*In re Terazosin Hydrochloride,* 220 F.R.D. 672 (S.D. Fla. 2004) ................................................ 16

*In re U.S. Oil & Gas Litig.,* 967 F.2d 489 (11th Cir.1992) ............................................................ 9

*ITT Cmty. Dev. Corp. v. Barton*, 569 F.2d 1351 (5th Cir. 1978) ................................................ 20

*Jackson v. Motel 6 Multipurpose, Inc.*, 130 F.3d 999 (11th Cir. 1997) ........................................ 18

*Johnson v. Ashley Furniture Industries, Inc.*, No. 13cv2445 BTM(DHB), 2016 WL 866957 (S.D. Cal. Mar. 7, 2016) ...................................................................................... 13

*Johnson v. Brennan*, No. 10-cv-4712, 2011 WL 4357376 (S.D.N.Y. Sept. 16, 2011) ............... 12

*Johnson v. NPAS Solutions, LLC*, No. 18-12344, 2020 WL 5553312 (11th Cir. Sept. 17, 2020) 20

*Karhu v. Vital Pharm., Inc.*, 621 F. App'x 945 (11th Cir. 2015) ................................................. 15

*Key Enters. of Del., Inc. v. Venice Hosp.,* 9 F.3d 893 (11th Cir. 1993) ...................................... 20

*Kornberg v. Carnival Cruise Lines, Inc.*, 741 F.2d 1332 (11th Cir. 1984) ................................. 16

*Kreuzfeld A.G. v. Carnehammar*, 138 F.R.D. 594 (S.D. Fla. 1991) ........................................... 17

*Lazy Oil Co. v. Witco Corp.*, 95 F. Supp. 2d 290 (W.D. Pa. 1997), *aff'd*, 166 F.3d 581 (3d Cir. 1999) ............................................................................................................. 6, 11

*Lipuma v. Am. Express Co.*, 406 F. Supp. 2d 1298 (S.D. Fla. 2005)............................................ 11

*McLaughlin v. Liberty Mut. Ins. Co.*, 224 F.R.D. 304 (D. Mass. 2004) ...................................... 17

*McWhorter v. Ocwen Loan Servicing, LLC*, 2019 WL 9171207 (N.D. Ala. Aug. 1, 2019) ........ 11

*Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306 (1950)............................................. 19

*Navelski v. Int'l Paper Co.*, 244 F. Supp. 3d 1275 (N.D. Fla. 2017)............................................ 16

*Officers for Civil Justice v. Civil Serv. Comm'n*, 688 F.2d 615 (9th Cir. 1982).......................... 14

*Ouadani v. Dynamex Operations E., LLC*, 405 F. Supp. 3d 149 (D. Mass. 2019)...................... 17

*Parsons v. Brighthouse Networks, LLC*, No. 2:09-cv-267, 2015 WL 13629647 (N.D. Ala. Feb. 5, 2015) ................................................................................................................................ 6

*Poertner v. The Gillette Co.,* 618 Fed. Appx. 624 (11th Cir. 2015) ............................................ 11

*Roundtree v. Bush Ross, P.A.*, 304 F.R.D. 644 (M.D. Fla. 2015)................................................ 19

*Smith v. Wm. Wrigley Jr. Co.*, No. 09–60646–CIV, 2010 WL 2401149 (S.D. Fla. June 15, 2010)9

*Tefel v. Reno*, 972 F. Supp. 608 (S.D. Fla. 1997) ....................................................................... 17

*Turner Greenberg Assocs. v. Pathman*, 885 So. 2d 1008 (Fla. Dist. Ct. App. 2004).................. 18

*Turner v. Gen. Elec. Co.*, No. 2:05-CV-186-FTM-99DNF, 2006 WL 2620275 (M.D. Fla. Sept. 13, 2006) ............................................................................................................................... 9

*Walco Invs., Inc. v. Thenen*, 168 F.R.D. 315 (S.D. Fla. 1996) .................................................... 15

*Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011) ................................................................ 15

*Williams v. Mohawk Indus., Inc.*, 568 F.3d 1350 (11th Cir. 2009)............................................. 15

*Wright v. Circuit City Stores, Inc.*, 201 F.R.D. 526 (N.D. Ala. 2001)......................................... 17

**Statutes**

28 U.S.C. § 1651................................................................................................................. 19

Florida Deceptive and Unfair Trade Practices Act, §§ 501.201 ..................................................... 2

**Rules**

Fed. R. App. P. 41 ................................................................................................ 20

Fed. R. Civ. P. 23 ............................................................................................ passim

**INTRODUCTION**

The Parties respectfully present for preliminary approval a proposed nationwide class settlement (the "Settlement") which, upon final approval, will fully resolve this action and provide substantial benefits to almost one million Spartan racers who are members of the Settlement Class.[1] The proposed Settlement was reached after a year of hard-fought, contentious litigation and a protracted mediation under the supervision of Michael Young, an experienced and highly qualified mediator approved by the Court on November 5, 2020 [D.E. 81]. Over the course of two months, the Parties participated in a full day Zoom mediation followed by numerous Zoom and telephonic mediation sessions and separate negotiations between the Parties. These arm's length negotiations, which stalled at several points, continued after the class certification hearing and ultimately culminated with the proposed Settlement.

As explained more fully below, the Settlement achieves a very favorable result for the Settlement Class Members, affording immediate economic benefits to compensate them for prior Racer Insurance Fee payments. These Settlement benefits avoid the delay of continued litigation and have a value that likely exceeds the amounts that would be recoverable on behalf of the class members through successful prosecution of this action through trial and the inevitable resulting appeal.[2] The Settlement also provides significant injunctive relief curing the allegedly deceptive and misleading representations and omissions regarding the Racer Insurance Fee. The Settlement requires Spartan to rename the charge as an "Administrative, Insurance and Management Fee," provide specified disclosures concerning the nature of this charge on its website and clearly inform prospective racers that the fee is not a direct pass-through of insurance costs but may instead generate revenues for Spartan.

As the Court is aware, this case does not involve consumer goods or services that are alleged to be worthless or inherently defective, Plaintiff does not contest the quality or value of the Spartan races themselves, nor does Plaintiff allege that Spartan failed to provide the benefits promised to race participants. Indeed, the Spartan racers are generally satisfied with their racing experience as many of them have participated in multiple races in the past and are likely to

---

[1] Unless otherwise noted, capitalized terms have the same meaning as the corresponding defined terms in the Stipulation of Settlement dated January 22, 2021 (the "Settlement Agreement").

[2] Plaintiff has retained a forensic accountant, Soneet Kapila, who will provide expert testimony concerning the estimated value of the Settlement benefits in connection with Plaintiff's motion for final approval of the Settlement.

participate in future races once the COVID 19 pandemic has abated. For that very reason, the injunctive relief provided by the Settlement likely will benefit the Settlement Class Members as well as future Spartan racers. Accordingly, Plaintiff respectfully requests the Court enter the proposed Order granting preliminary approval of the Settlement, attached as **Exhibit 1**, preliminarily certifying a nationwide class for settlement purposes, and approving notice.

## I.    FACTUAL BACKGROUND

### A.    THE MEDIATION PROCESS

Plaintiff initiated this action against Defendant, Spartan Race, Inc. ("Spartan"), almost a year ago, on February 26, 2020. On April 13, 2020, Plaintiff filed the operative Amended Complaint [ECF No. 15] alleging that Spartan's representations regarding the "Racer Insurance Fee," objectively construed, would lead a reasonable consumer to believe that this mandatory, non-refundable $14 charge is used solely to purchase insurance on behalf of the race registrant. The Amended Complaint alleges that, in reality, and unknown to consumers, Spartan uses the Racer Insurance Fees to defray administrative expenses and as a hidden profit center for Spartan. *Id.*, ¶¶ 20–21. Plaintiff alleges that Spartan's representations regarding the Racer Insurance Fee were deceptive and the class members suffered damage. The Amended Complaint asserts claims for violations of the Massachusetts Consumer Protection Law, Massachusetts General Laws, Chapter 93A, et seq., and the Florida Deceptive and Unfair Trade Practices Act, §§ 501.201, et seq., Florida Statutes.

Spartan filed a Motion to Transfer this case to Massachusetts and an alternative Motion to Dismiss. After extensive briefing and oral argument, the Court denied Spartan's transfer motion, as well as Spartan's Motion to Dismiss. The parties thereafter engaged in extensive discovery, exchanging hundreds of thousands of pages of documents and data, conducting several depositions and participating in multiple hearings on discovery disputes before Magistrate Judge Lauren Louis.

Plaintiff filed his Motion for Class Certification on September 3, 2020, [ECF No. 58], which was fully briefed as of December 23, 2020. [ECF Nos. 63–65, 72–73, 95]. On October 13, 2020, the Court granted Spartan's prior counsel's motion for leave to withdraw [ECF Nos. 71, 75] and on October 29, 2020, Spartan's successor counsel entered their notice of appearance. [ECF No. 77]. The parties thereafter moved to stay these proceedings in deference to a private mediation before Michael D. Young, an experienced and highly regarded mediator with the New York office of JAMS. [ECF Nos. 79, 81]. Declaration of Michael D. Young dated January 27, 2021 ("Young

Decl.") (attached as **Exhibit 2**). In addition to counsel for the parties, outside coverage counsel for Travelers and Chubb, the two insurance carriers providing potential coverage to Spartan for the claims asserted in the action, participated actively throughout the mediation. Young Decl., ¶ 8. The mediation was hard-fought and protracted, extending over a two-month period during which the parties participated in a full-day mediation session and multiple Zoom and telephonic follow on mediation sessions. *See, e.g.,* Young Decl. Over the course of the mediation, the parties held numerous telephone and Zoom calls with Mr. Young and, as the negotiations progressed, the parties sought and obtained several extensions of the stay allowing them to continue their negotiations. *See id.*; *see also* [ECF Nos. 83–85, 87–88].

At several points during the mediation, the parties reached a near impasse as counsel for Plaintiff pressed for enhanced settlement benefits to maximize the recovery for the putative class members. Spartan, for its part, emphasized that its insurers were asserting coverage defenses and that Spartan currently lacks the financial resources necessary to satisfy the claims asserted should Plaintiff fully prevail at trial. Young Decl., ¶ 9. Spartan therefore consistently maintained throughout the mediation process that its precarious financial condition precluded it from making any meaningful monetary contribution to any class settlement. *Id.*

Despite their best efforts, the parties informed the Court on December 22, 2020 that they had been unable to reach a mutually satisfactory settlement and the Court lifted the stay and reset the class certification hearing. [ECF Nos. 89–90]. On December 29, 2020, the Court heard oral argument on Plaintiff's Motion for Class Certification, [ECF No. 97] at which the Court inquired about the status of the settlement negotiations. Counsel informed the Court that although their prior efforts had not achieved a settlement agreement, the parties had left open the door for further negotiations. After the class certification hearing, the parties continued settlement negotiations in the ongoing mediation with Mr. Young. After many weekend and late-night calls and Zoom conferences, Mr. Young made a mediator's proposal, based upon all of the relevant circumstances, which the parties accepted. Young Decl., ¶ 11.

Commenting on the mediation process, mediator Young attests that "[t]he proposed Settlement is the product of hard-fought arm's length negotiations … conducted by extremely knowledgeable counsel having extensive experience in complex class actions, who were highly knowledgeable concerning the claims and defenses asserted in the Action. The caliber of the representation of both sides was, in my experience, exemplary." *Id.* ¶ 5.

3

### B.      The Proposed Settlement

The Settlement is memorialized in the Settlement Agreement, which is attached as **Exhibit 3.** As explained below, the Settlement will provide Settlement Class Members with immediate economic benefits without the ensuing risks of class certification, litigation and appeals. The Settlement achieves a favorable result for the Settlement Class Members, particularly given Spartan's current precarious financial condition caused by the ongoing COVID-19 pandemic.

The proposed Settlement allows all Settlement Class Members to choose either: (a) a free, four (4) month membership to the Spartan+ Membership Program (described in detail below), or (b) a $5 electronic Voucher for each Racer Insurance Fee paid by the Settlement Class Member (up to a maximum of 4 electronic Vouchers). Importantly, Settlement Class Members need not submit ***any claim form or participate in any claims process*** to receive these settlement benefits. Moreover, Spartan has agreed to significant injunctive relief, including renaming the "Racer Insurance Fee" to the "Administrative, Insurance, and Management Fee" and providing disclosures concerning the administrative and other costs defrayed by the charges and that the mandatory fee may provide a source of additional revenues for Spartan. Notice of the Settlement will be disseminated by Spartan through direct emails to the Settlement Class Members and the establishment of a settlement website by Plaintiff's counsel. Spartan maintains current email addresses for the Settlement Class Members.

Plaintiff's counsel unequivocally endorse the Settlement and recommend approval by the Court. Plaintiff's counsel were well-positioned to negotiate the Settlement terms. The proposed Co-Lead Counsel, The Moskowitz Law Firm PLLC and Bonnett, Fairbourn, Friedman & Balint are nationally recognized preeminent class action litigators with extensive experience in complex consumer cases. Further, the extensive discovery and motion practice conducted in the action, coupled with counsel's ongoing investigation, positioned Plaintiff's counsel to assess and evaluate the strengths and risks associated with Plaintiff's claims and Spartan's defenses as well as the costs and risks associated with continued litigation. Plaintiff's counsel were keenly aware, based on financial documentation provided by Spartan, that the company had a greatly diminished ability to withstand a judgment for the full relief sought given the effects of the ongoing COVID-19 pandemic on its business. Given the immediate and substantial benefits the Settlement will provide to all Settlement Class Members, Plaintiffs respectfully submit that the Settlement is unquestionably "within the range of reasonableness" and that preliminary approval is warranted.

## II.   THE SETTLEMENT TERMS AND AGREEMENT

### A.   *The Proposed Settlement Class*

> All individuals in the United States who during the Class Period, based on Spartan's records, paid a $14 "Racer Insurance Fee" or "Insurance Fee" in connection with an event organized and sponsored by Spartan. Excluded from the Class are (a) Defendant's board members and executive level officers; (b) the federal district and magistrate judges assigned to this Action and their staff, and (c) individuals who submit a valid, timely exclusion/opt-out request.

Ex. 2, ¶ II.A.3.

### B.   *Settlement Relief*

This proposed Settlement substantially fulfills the main objectives of this action and affords beneficial relief to the Settlement Class Members that certainly falls "within the range of potential recovery" through successful litigation of the claims asserted in this action. Although Spartan does not admit any fault or liability in the Settlement, Spartan has agreed to provide substantial relief to be distributed according to the Settlement Agreement. As described more fully below, each Class Member will be entitled to elect to receive either: (a) one four-month free membership to the "Spartan+ Membership Program," or (b) one $5 electronic Voucher per each paid registration during the Class Period, up to a maximum of four (4) total electronic Vouchers per Class Member.

Plaintiff and his counsel estimate that the value of the Settlement relief made available to Settlement Class Members, exclusive of the valuable injunctive relief, is similar (if not more) to relief that Class Members might receive, if they were able to certify this case nationwide over Spartan's objections and obtain a favorable jury verdict.[3] As noted above, forensic accountant Soneet Kapila will submit an expert declaration estimating the specific value of the Settlement benefits in connection with Plaintiff's motion for final approval of the Settlement. In addition, the Settlement Class Members stand to benefit from the important injunctive relief described below. The Court should therefore find such relief to be within the "range of reasonableness",[4] especially

---

[3] This estimate is based on the retail value of the free four-month membership in the Spartan + Membership Program, which is available at the election of the Settlement Class Members and as the default benefit if a Settlement Class Member does not affirmatively elect the Electronic Voucher(s).

[4] To warrant preliminary approval, a proposed class settlement should offer a recovery that "falls within th[e] range of reasonableness," which need not be "the most favorable possible result of litigation." *Lazy Oil Co. v. Witco Corp.*, 95 F. Supp. 2d 290, 338 (W.D. Pa. 1997), *aff'd*, 166 F3d 581 (3d Cir. 1999). Here, the Settlement relief offered is roughly the same amount which could be won at trial (apart from multiple damages), and sufficient to warrant preliminary approval of the

given the risks of success on the merits of Plaintiff's claims.

### 1. The Spartan+ Membership Program (the "Program")

Each Class member who elects to receive the Program (or simply does not indicate any selection after receiving the email notice) will be provided with a free four-month subscription to the Spartan+ Program. Ex. 2, ¶ III.A. Many similar fitness applications, such as Peloton and Apple, have been met by consumers with great success. In fact, there was a 27% increase in the use of fitness apps last year. See https://www.emarketer.com/content/number-of-health-fitness-app-users-increased-27-last-year, https://apps.apple.com/us/app/spartan-fit/id1504574501. Spartan has long offered a fitness app called SpartanFit™, but the Spartan+ Membership provides much more substance, content and benefits. https://apps.apple.com/us/app/spartan-fit/id1504574501.[5] Spartan currently offers, at a price of $79.99 per year, access to just its SpartanFit™ application.

This new Spartan+ Program subscription provides significant value to each Settlement Class Member in that it includes: (1) the "highest" level of access to all available video, audio, and other digital fitness content; (2) provides free shipping and handling for any merchandise ordered by the Class Member from Spartan's website; (3) provides 20% off all online merchandise purchases; (4) allows free photo downloads after events; and (5) access to other "members only" premium content on Spartan's website. *Id.* **The retail cost of this membership program to the public is $85.00 per year, so the four-month free membership has a value to each Settlement Class Member of $28** (1/3 of $85). *Id.* Settlement Class Members are not required to provide any credit card to initiate the Program subscription and subscriptions will automatically terminate at the end of four months unless the Class Member affirmatively chooses to extend it. *Id.*

---

Settlement given that since 1995, class action settlements typically "have recovered between 5.5% and 6.2% of the class member's estimated losses." *In re Rite Aid Corp. Sec. Litig.*, 146 F. Supp. 2d 706, 715 (E.D. Pa. 2001); *see also Parsons v. Brighthouse Networks, LLC*, No. 2:09-cv-267, 2015 WL 13629647, at *3 (N.D. Ala. Feb. 5, 2015) (noting that a class settlement recovery of between 13% to 20% is "frequently found … to be fair and adequate"); *In re Newbridge Networks Sec. Litig.*, No. 94-cv-1678, 1998 WL 765724, at *2 (D.D.C. 1998) ("[A]n agreement that secures roughly six to twelve percent of a potential trial recovery, while preventing further expenditures and delays and eliminating the risk that no recovery at all will be won, seems to be within the targeted range of reasonableness."); *In re Checking Account Overdraft Litig.*, 830 F. Supp. 2d 1330, 1350 (S.D. Fla. 2011) (9% class recovery "is still within the range of reasonableness").

[5] Many companies offer a variety of fitness apps. https://apps.apple.com/us/app/spartan-fit/id1504574501. Mr. Kapila will provide an expert declaration in support of Final Approval discussing the value of the Spartan+ Membership and the $5 electronic vouchers.

### 2. **Electronic Vouchers for Free Purchase of Spartan Merchandise**

As an alternative to the four-month free subscription to the Program, each Class Member may elect to receive one $5.00 electronic Voucher per each event for which they paid a full registration fee during the Class Period, up to a total of four (4) electronic Vouchers (for a combined value of $20.00). Ex. 2, ¶ III.B. Each electronic Voucher shall entitle the class member to a $5.00 credit towards the purchase of any non-discounted merchandise on Spartan's website. *Id*. There are currently many non-discounted merchandise items available for sale on the Spartan website for $5.00 or less, and Spartan has no intention of removing said items as a result of this Settlement. *Id*. Electronic Vouchers are fully transferable to friends and family and each Voucher will be valid for ***two (2) years*** from the date of issuance. *Id*. Spartan currently sells Spartan Gift Cards in various dollar amounts that are utilized in a similar manner as the electronic Vouchers.

### 3. **Election of Benefits**

The Class Notice will further inform each Class Member that they shall have sixty (60) days from the date the Class Notice email is sent to make their selection, otherwise the default relief will be the free four-month subscription to the Program. *Id*.

### 4. **Injunctive Relief to the Settlement Class**

Plaintiff's main reason for bringing this litigation was so Spartan provides full and adequate disclosures regarding the $14 "Racer Insurance Fee". In addition to providing all Class Members with the relief described above, Spartan also agrees to the following injunctive relief, starting on the Effective Date, that will directly benefit all current and future Spartan consumers:

- Spartan will not describe in writing or abbreviate the at-issue fee as a "Racer Insurance Fee," "Racer Insur. Fee," "Insurance Fee," "Insur. Fee," or similar nomenclature. Spartan specifically retains the right to describe the at-issue fee an "Administrative, Insurance, and Management Fee," "AIM Fee," or "Admin Fee" during the online event registration process or elsewhere.
- Spartan will add the following language to current and future marketing and sales materials, FAQs, relevant website screens in the registration process, and screen indicators or selectors that describe or are adjacent to the at-issue fee: "The Administrative, Insurance, and Management Fee covers a number of different costs involved in Spartan events, including administrative and management costs, insurance costs and expenses for related risk management and safety measures. This fee is not a direct pass-through of third-party costs to the racer and may include revenues to Spartan."
- Spartan agrees that it will not represent, directly or indirectly, that 100% (or all) of the "Administrative, Insurance, and Management Fee" is paid to an insurance provider or other third-party.

Ex. 2, ¶ III.C

Accordingly, there is no question that with the value of both the monetary and injunctive relief, the Settlement is "within the range of reasonableness" and warrants preliminary approval, especially in light of the risks attendant to continued litigation of these claims.

### C. *Class Notice*

Class notice will be efficiently disseminated directly to Settlement Class Members through direct email at the email addresses maintained by Spartan. The Class Notice will be in substantially the form attached to the Settlement Agreement as Exhibit A, if approved by the Court. Ex. 2, section IV. The notice will be sent within twenty-eight (28) days of the entry of the Preliminary Approval Order. *Id.* Plaintiff's counsel will also establish a website on which Settlement Class members may review the Settlement Agreement and its exhibits. *Id.* To provide the proposed class with even more notice, Spartan will also provide a second email to Class Members no later than 10 days after the Effective Date informing them that, depending on the Class Member's selection, the Voucher(s) will be deposited into their account shortly or their membership in the Program is ready to be activated and they can now register and begin using the Program. *Id.* Settlement Class Members may opt out or object by following the prescribed process. *Id.*; *see also id.*, section V.

Due to the fact that Spartan's records contain all information sufficient to identify and directly contact the members of the Settlement Class and that ***there is no Claim Form or Claims Process,*** to save the substantial costs of administration by a third party, Spartan will primarily administer the Settlement in good faith and will absorb that cost and with the participation and oversight of Class Counsel. If Spartan's records conflict with information submitted by a claimant, counsel for both Parties shall in good faith attempt to resolve the conflict as they have done throughout the pendency of this matter.

### D. *Class Counsel's Fees and Expenses and Named Plaintiff's Case Contribution Award*

The Parties stipulate in the Settlement Agreement that The Moskowitz Law Firm PLLC and Bonnett, Fairbourn, Friedman & Balint, P.C. will serve as Class Counsel. Ex. 2, ¶ II.A.4. Collectively, Class Counsel's application for attorneys' fees and expenses for all of the law firms involved, including Brown, Readdick, Bumgartner, Carter, Strickland & Watkins, LLP, as well as a service award for the named Plaintiff of up to $10,000.00 (subject to Court approval), shall not exceed $2,300,000.[6] *Id.*, section VIII. The Court may consider whether to approve these awards

---

[6] *See* Section VI, *infra.* Any award of attorneys' fees and costs will be paid by Spartan's insurance carriers as part of the Settlement. The amount in costs and attorneys' fees that Class Counsel will

separate and apart from its analysis of the fairness, reasonableness, and adequacy of the Settlement.

       **E.**     ***Final Approval and Objections***

Class members may object to the Settlement no later than twenty-one (21) days before the originally scheduled date of the Fairness Hearing, or on such other date as may be ordered by the Court. Ex. 2, section V. The Motion for Attorneys' Fees shall be filed within thirty-five (35) days before the originally scheduled date of the Fairness Hearing, *Id.*, section VIII.A, and the Parties shall respond to any objections no later than 10 days prior to the Fairness Hearing *Id*., section V.

**IV.**    **THE COURT SHOULD GRANT PRELIMINARY APPROVAL OF THE SETTLEMENT**

Settlement "has special importance in class actions with their notable uncertainty, difficulties of proof, and length. Settlements of complex cases contribute greatly to the efficient use of judicial resources, and achieve the speedy resolution of justice[.]" *Turner v. Gen. Elec. Co.*, No. 2:05-CV-186-FTM-99DNF, 2006 WL 2620275, at *2 (M.D. Fla. Sept. 13, 2006). For these reasons, "[p]ublic policy strongly favors the pretrial settlement of class action lawsuits. *In re U.S. Oil & Gas Litig.,* 967 F.2d 489, 493 (11th Cir.1992). "Approval of a class action settlement is a two-step process." *Fresco v. Auto Data Direct, Inc.*, No. 03-cv-61063, 2007 WL 2330895, at *4 (S.D. Fla. May 14, 2007). Preliminary approval is the first step, requiring the Court to "make a preliminary determination on the fairness, reasonableness, and adequacy of the settlement terms." *Id.* In the second step, after notice to the class and time and opportunity for absent class members to object or otherwise be heard, the court considers whether to grant final approval. *Smith v. Wm. Wrigley Jr. Co.*, No. 09–60646–CIV, 2010 WL 2401149, at *2 (S.D. Fla. June 15, 2010). Under Rule 23(e), in weighing a grant of preliminary approval, district courts must determine whether "giving notice is justified by the parties' showing that the court *will likely be able to*: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal." Fed. R. Civ. P. 23(e)(1)(B)(i–ii) (emphasis added). *Id.*

The amended Rule 23(e)(2) requires courts to consider whether:

     (a)     the class representatives and class counsel have adequately represented the class;

     (b)     the proposal was negotiated at arm's length;

     (c)     the relief provided for the class is adequate, taking into account:

            i.  the costs, risks, and delay of trial and appeal;

---

request from the Court at Final Approval ($2.3 million) is justified, either under the "percentage of the fund" method or the "lodestar analysis", as will be explained in greater detail in Class Counsel's Motion for Costs and Attorneys' Fees.

      ii.  the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims, if required;

     iii.  the terms of any proposed award of attorney's fees, including timing of payment; and

     iv.  any agreement required to be identified under Rule 23(e)(3); and

(d)     the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2); *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 330 F.R.D. 11, 28 (E.D.N.Y. 2019).

Further, the standard for preliminary approval of a class action settlement ***is not high***—a proposed settlement should be preliminarily approved if it falls "within the range of possible approval" or if there is "probable cause" to notify the class of the proposed settlement and "to hold a full-scale hearing on its fairness[.]" *In re Mid-Atl. Toyota Antitrust Litig.*, 564 F. Supp. 1379, 1384 (D. Md. 1983) (citation omitted). Applying this standard and the new standard of Rule 23, this settlement is an excellent one by any measure and should be preliminarily approved.

**A. The Settlement Is the Product of Good Faith, Informed, and Arm's-Length Negotiations among Experienced Counsel.**

At the preliminary approval stage, district courts consider whether the proposed settlement appears to be "'the result of informed, good-faith, arms'-length negotiation between the parties and their capable and experienced counsel' and not 'the result of collusion[.]'" *In re Checking Account Overdraft Litig.*, 830 F. Supp. 2d 1330, 1341 (S.D. Fla. 2011). The settlement terms in this case are the product of significant give and take by the settling parties and were negotiated at arm's length. Young Decl. ¶ 5. The parties participated in mediation sessions with Michael Young, Esq., a well-respected mediator with significant experience resolving complex suits. Mr. Young and the Parties participated in mediation sessions throughout November and December 2020. *Id.* The very fact of Mr. Young's involvement weighs in favor of preliminary approval. *See, e.g., Poertner v. The Gillette Co.,* 618 Fed. Appx. 624, 630 (11th Cir. 2015) (settlement achieved only after engaging in extensive arms-length negotiations moderated by an experienced mediator belies any suggestion of collusion).

The parties' extensive negotiations were also informed by considerable investigation, formal and informal discovery by Plaintiff's counsel, and the motion practice before the Court. *See Lipuma v. Am. Express Co.*, 406 F. Supp. 2d 1298, 1316–17 (S.D. Fla. 2005) (approving settlement over objection and concluding that class counsel had sufficient information to evaluate

fairness of the settlement based on informal discovery); *Francisco v. Numismatic Guaranty Corp. of Am.*, No. 06-61677-CIV, 2008 WL 649124, at *11 (S.D. Fla. Jan. 31, 2008) (same); *Cotton v. Hinton*, 559 F.2d 1326, 1332 (5th Cir. 1977) (affirming that class counsel had sufficient information to evaluate the settlement despite "very little formal discovery [being] conducted and … no voluminous record in the case"); *In re Jiffy Lube Securities Litig.*, 927 F.2d 155 (4th Cir. 1991) (affirming that plaintiffs were sufficiently informed about the strength of the case as a result of evidence obtained through informal discovery). Documents were formally and informally produced in this litigation and have been carefully reviewed by Class Counsel. In advance of and during the mediation, Spartan provided Plaintiff and Class Counsel with additional information concerning this Action.

### B.  The Settlement Falls Squarely within the Range of Reasonableness.

As a result of this mediation process, the Settlement Agreement provides considerable relief to the Settlement Class and falls well within the range of possible approval. Under Rule 23(e)(2)(C), the relevant inquiry is whether the proposed settlement affords relief that "'falls within th[e] range of reasonableness, [and] not whether it is the most favorable possible result of litigation.'" *McWhorter v. Ocwen Loan Servicing, LLC*, 2019 WL 9171207 *10 (N.D. Ala. Aug. 1, 2019) (quoting *Lazy Oil Co. v. Witco Corp.*, 95 F. Supp. 2d 290, 338 (W.D. Pa. 1997), *aff'd*, 166 F.3d 581 (3d Cir. 1999) (citation and internal quotation marks omitted)); *Grant*, 2019 WL 367648, at *6; *accord Great Neck Capital Appreciation Inv. P'ship, L.P. v. PricewaterhouseCoopers, L.L.P.*, 212 F.R.D. 400, 409–10 (E.D. Wis. 2002) (Because "[t]he determination of whether a settlement is reasonable is not susceptible to mathematical equation yielding a particularized sum … [,] [t]he mere possibility that the class might receive more if the case were fully litigated is not a good reason for disapproving the settlement.").

As described above, this Settlement provides significant benefits to the Settlement Class Members, while avoiding costly individual litigation. The Settlement further provides significant injunctive relief that fully addresses the claims. The Settlement is unquestionably within the range of reasonableness.

### 1.  Settlement Relief

The Settlement Agreement provides significant monetary benefits. All Settlement Class Members are eligible for either the default option of a free, four-month subscription to the Program or the Vouchers for up to four races they registered for. This represents a significant recovery for

Class Members. Moreover, the agreed-to injunctive relief ensures that the alleged violations will be cured going forward. Federal courts hold that settlements providing the class with a percentage of the recovery sought in litigation are reasonable in light of the attendant risks of litigation. *See, e.g., Johnson v. Brennan*, No. 10-cv-4712, 2011 WL 4357376 (S.D.N.Y. Sept. 16, 2011) ("[T]here is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery."); *see also Behrens v. Wometco Enters., Inc.*, 118 F.R.D. 534, 542–43 (S.D. Fla. 1988) (approving recovery of \$.20 per share where desired recovery was \$3.50 a share because "the fact that a proposed settlement amounts to only a fraction of the possible recovery does not mean the settlement is inadequate or unfair"); *Fisher Bros., Inc. v. Mueller Brass Co.*, 630 F. Supp. 493, 499 (E.D. Pa. 1985) (approving settlement providing recovery of 0.2% of sales). "Moreover, when settlement assures immediate payment of substantial amounts to class members, even if it means sacrificing speculative payment of a hypothetically larger amount years down the road, settlement is reasonable[.]" *Johnson*, 2011 WL 4357376, at *12.

Highlighting the value of the Settlement's benefits to the Settlement Class is Judge Gold's opinion finally approving a class settlement in *David v. Am. Suzuki Motor Corp.*, No. 08-cv-22278, 2010 WL 1628362 (S.D. Fla. Apr. 15, 2010), a case involving Suzuki motorcycles allegedly prone to catastrophic frame failure. In that settlement, Suzuki agreed to provide class members (1) either a \$500 credit towards a new motorcycle purchase or a \$40 credit towards parts, accessories, or service for existing motorcycle, (2) an extension of the frame warranty to 10 years, and (3) an agreement to arbitrate with class members for potential monetary awards for alleged damages to frames. *Id.*, *2. Judge Gold rejected objections to the settlement finding that automatic enrollment in a warranty extension would be valued on the retail price of the relief in the open market and was not premised on a class member's future purchase from defendant. *Id.*, *7.

Courts around the country have approved class action settlements with similar non-cash directly paid settlement benefits, correctly concluding that they are not "coupon settlements." *See In re Equifax Inc. Customer Data Sec. Breach Litig.*, 1:17-MD-2800-TWT, 2020 WL 256132 (N.D. Ga. Mar. 17, 2020) (finally approving settlement with relief including an option to select free credit monitoring and identity protection services, granting a requested fee of \$77.5 million, finding that it constituted "less than 1% [of the value of the other non-monetary benefits available to the class] when the retail value of the credit monitoring services already claimed by class

members is included"); *see also In re Online DVD-Rental Antitrust Litigation*, 779 F.3d 934 (9th Cir. 2015) (affirming final approval of a settlement providing $12 gift cards to 1.2 million claimants and concluding the settlement was not a "coupon settlement" within the meaning of CAFA); *Johnson v. Ashley Furniture Industries, Inc.*, No. 13cv2445 BTM(DHB), 2016 WL 866957 (S.D. Cal. Mar. 7, 2016) (finally approving a class action settlement where defendant would automatically distribute $25 merchandise vouchers to all known class members and to all unknown class members who submitted claim forms, concluding the settlement was not a "coupon" settlement under CAFA because, "class members have choices as to what they may purchase with the voucher and may purchase an entire product as opposed to just reducing the purchase price"); *Glaberson v. Comcast Corp.*, No. 03-6604, 2015 WL 5582251 (E.D. Pa. 2015) (finally approving a settlement where current subscribers could choose either (1) a onetime credit of $15 off their bill or (2) credits from a selection of Comcast services, which were valued at their retail value); *Dupler v. Costco Wholesale Corp.,* 705 F. Supp. 2d 231 (E.D. N.Y. 2010) (finally approving class action settlement providing class members benefits of 1 to 2 free months of Costco membership in exchange for settling claims that Costco improperly calculated renewed memberships, valuing the free memberships as a "$38.8 million direct economic benefit to the class" and approving as reasonable the requested fee award of $5,380,000, which amounted to 14% of the value of the settlement and which would be paid separately from the settlement benefits); *Browning v. Yahoo! Inc.*, No. C04-01463 HRL, 2007 WL 4105971 (N.D. Cal. Nov. 16, 2007) (finally approving a settlement including relief of either a free credit report worth $5 or two months of free credit monitoring worth $9.95 a month, concluding it was not a coupon settlement "because it does not require class members to spend money in order to realize the settlement benefit," even though the relief was not transferable).

Plaintiff and the Settlement Class faced significant hurdles in litigating their claims to resolution, including overcoming Defendants' defenses, including the potential denial of class certification of these claims and potential defeat at trial. Despite these challenges, as a result of the Settlement, each Settlement Class Member stands to recover benefits estimated to be worth twice the amount of the Racer Insurance Fees paid, or twice the amount they would be entitled to at trial (without factoring in potential multiple damages). The Settlement's monetary recovery alone falls well within the range of reasonableness.

**C.  The Settlement Saves the Settlement Class from Considerable Litigation Hurdles.**

Any evaluation of the Settlement benefits must be tempered by the recognition that any compromise involves concessions by the Parties. Indeed, "the very essence of a settlement is compromise, 'a yielding of absolutes and an abandoning of highest hopes.'" *Officers for Civil Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 624 (9th Cir. 1982) (citations omitted). Had litigation continued, Plaintiff and Settlement Class Members would have risked not prevailing on their claims, having to proceed to a jury trial and/or risk the uncertainty of appeals. Additionally, the Settlement provides relief to the Settlement Class much more quickly.

**D.  Class Counsel Believes the Settlement Is Reasonable.**

Significant weight should be attributed to the belief of experienced counsel that the negotiated Settlement is in the best interest of the class. *See In re Coordinated Pretrial Proceedings in Antibiotic Antitrust Actions*, 410 F. Supp. 659, 666 (D. Minn. 1974) (recommendation of experienced counsel is entitled to great weight); *DeBoer v. Mellon Mortg. Co.*, 64 F.3d 1171, 1178 (8th Cir. 1995) ("The views of the parties to the settlement must … be considered."). Class Counsel has been appointed Lead or Co-Lead Class Counsel in over 75 state and federal class actions representing plaintiffs against insurance companies, mortgage companies, cruise lines, consumer product sellers, and spearheaded the litigation and resolution of over 30 nationwide class actions for homeowners against the major mortgage providers in the country. Based on this experience, and decades more with class action lawsuits, it is Class Counsel's informed opinion that, given the uncertainty and expense of pursuing these claims through trial, the settlement is fair, reasonable, adequate, and in the best interests of the Settlement Class.

**E.  No Additional Agreements Required to Be Identified.**

There are no agreements required to be identified under Rule 23(e)(3).

**V.    THE COURT SHOULD CERTIFY THE PROPOSED SETTLEMENT CLASS**

"It is well established that a class may be certified solely for purposes of settlement [if] a settlement is reached before a litigated determination of the class certification issue." *In re Checking Account Overdraft Litig.*, 275 F.R.D. 654,659 (S.D. Fla. 2011) (brackets in original). "In deciding whether to provisionally certify a settlement class, a court must consider the same factors that it would consider in connection with a proposed litigation class," save manageability, "since the settlement, if approved, would obviate the need for a trial." *Id.*

## A. The Settlement Class Meets the Four Requirements of Rule 23(a).

The policies underlying the class action rule dictate that Rule 23(a) should be liberally construed. *See Walco Invs., Inc. v. Thenen*, 168 F.R.D. 315, 323 (S.D. Fla. 1996). Plaintiff satisfies all four requirements of Rule 23 (a) as set forth below.

### 1. The Settlement Class Is Ascertainable and Sufficiently Numerous.

The Settlement Class is an ascertainable one. A class is ascertainable if "the class definition contains objective criteria that allow for class members to be identified in an administratively feasible way," such that identifying class members will be "a manageable process that does not require much, if any, individual inquiry." *Karhu v. Vital Pharm., Inc.*, 621 F. App'x 945, 946 (11th Cir. 2015). Here, the proposed definition of the Settlement Class is based on objective criteria, all of which are determinable from Spartan's business records. Individual, subjective inquiries to identify who may be a member of the Settlement Class are unnecessary. *See Bohannan v. Innovak Int'l, Inc.*, 318 F.R.D. 525, 530 (M.D. Ala. 2016) (proposed class was ascertainable where membership in the class was based on objective criteria and the defendant's data could be used to easily identify the putative class members). The Settlement Class also satisfies the numerosity requirement of Rule 23(a)(1). The Settlement Class is comprised of approximately one million individuals who paid a Racer Insurance Fee to Spartan between February 26, 2016 and December 31, 2020, inclusive. *Cox v. Am. Cast Iron Pip Co.*, 784 F.2d 1546, 1553 (11th Cir. 1986).

### 2. Questions of Law and Fact Are Common to All Settlement Class Members.

The commonality requirement of Rule 23(a)(2) is also satisfied for purposes of settlement. To satisfy Rule 23(a)(2), there must be "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Commonality is met when the claims of all class members "depend upon a common contention," with "even a single common question" sufficing. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350, 359 (2011) (citation omitted); *Williams v. Mohawk Indus., Inc.*, 568 F.3d 1350, 1355 (11th Cir. 2009) (commonality of claims "requires that there be at least one issue whose resolution will affect all or a significant number of the putative class members" (internal citations omitted)). Every key issue in the Action stems from the same alleged course of conduct: Defendants making various representations regarding and charging Settlement Class Members a mandatory, nonrefundable $14 Racer Insurance Fee when registering for a Spartan event. There are many issues raised in this Action that are common to each Settlement Class Member, including, among other things: (a) whether Spartan's description of the "Racer Insurance Fee" is deceptive,

15

unfair, false and misleading; (b) whether Spartan retains any portion of the mandatory "Racer Insurance Fee"; (c) whether Spartan engaged in unfair and deceptive practices by collecting and retaining any portion of the "Racer Insurance Fee;" (d) whether Spartan's representations are objectively likely to mislead reasonable consumers to believe that the amount of the $14 "Racer Insurance Fee" is commensurate with the cost to Spartan of providing the accident medical insurance coverage; (e) whether Spartan's practices in charging the "Racer Insurance Fee" violate M.G.L. Chapter 93A; and (f) whether Spartan's practices in charging the "Racer Insurance Fee" violates FDUTPA. Thus, for purposes of settlement only, Rule 23(a)'s commonality requirement is satisfied. *See In re Terazosin Hydrochloride,* 220 F.R.D. 672, 687 (S.D. Fla. 2004) (commonality prerequisite readily met where "[d]efendants have engaged in a standardized course of conduct that affects all class members"); *Agan v. Katzman & Korr, P.A.,* 222 F.R.D. 692, 697 (S.D. Fla. 2004).

**3.  Plaintiff's Claims Are Typical of Those of the Settlement Class.**

The Settlement Class also satisfies the typicality requirement of Rule 23(a)(3). The test of typicality is "whether other members [of the class] have the same or similar injury, whether the action is based on conduct which is not unique to the named class plaintiffs, and whether other class members have been injured by the same course of conduct." *In re Checking Account Overdraft Litig.,* 307 F.R.D. 630, 641 (S.D. Fla. 2015) (quoting *Hanon v. Dataprods. Corp.,* 976 F.2d 497, 508 (9th Cir. 1992)). The typicality requirement "may be satisfied even though varying fact patterns support the claims or defenses of individual class members, or there is a disparity in the damages claimed by the representative parties and the other members of the class," *In re Domestic Air Transp. Antitrust Litig.,* 137 F.R.D. 677, 698 (N.D. Ga. 1991), so long as the claims or defenses of the class and class representatives "arise from the same events, practice, or conduct and are based on the same legal theories," *Navelski v. Int'l Paper Co.,* 244 F. Supp. 3d 1275, 1306 (N.D. Fla. 2017) (citing *Kornberg v. Carnival Cruise Lines, Inc.,* 741 F.2d 1332, 1337 (11th Cir. 1984)). Here, Plaintiff alleges that he is situated identically with respect to every other Settlement Class Member. Plaintiff has alleged that he suffered the same injuries as every other Settlement Class Member because they arise from Spartan's uniform course of conduct, which injured Plaintiff when he paid the Racer Insurance Fee after being exposed to Spartan's consistent messaging which gave the net impression that the Racer Insurance Fee was a pass-through charge. For purposes of class settlement, this is sufficient to satisfy Rule 23(a)'s typicality requirement.

*Wright v. Circuit City Stores, Inc.*, 201 F.R.D. 526, 539 (N.D. Ala. 2001) ("Typicality is satisfied where the claims of the class representatives arise from the same broad course of conduct [as] the other class members and are based on the same legal theory."); *accord Ouadani v. Dynamex Operations E., LLC*, 405 F. Supp. 3d 149, 162–63 (D. Mass. 2019) (citing *McLaughlin v. Liberty Mut. Ins. Co.*, 224 F.R.D. 304, 310 (D. Mass. 2004) (finding typicality requirement satisfied where class claims arose from "the same policies and wrongful conduct of the Defendant, and [we]re based on the same legal theories").

### 4. Plaintiff and Their Counsel Are Adequate Representatives.

To satisfy Rule 23(a)(4), the representative parties must "fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(a)(4). This requirement is satisfied when the class representatives have (1) no interests antagonistic to the rest of the class and (2) counsel who are "qualified, experienced, and generally able to conduct the proposed litigation." *Cheney*, 213 F.R.D. at 495. "Adequate representation is presumed in the absence of contrary evidence." *Association for Disabled Ams., Inc. v. Amoco Oil Co.*, 211 F.R.D. 457, 464 (S.D. Fla. 2002).

#### a. Plaintiff Does Not Have Interests Antagonistic to Settlement Class Members.

Adequacy exists where a class representative shares common interests with the class and seeks the same type of relief for himself and the settlement class members. *See Tefel v. Reno*, 972 F. Supp. 608, 617 (S.D. Fla. 1997); *Kreuzfeld A.G. v. Carnehammar*, 138 F.R.D. 594, 600 (S.D. Fla. 1991). Here, Plaintiff has no interests antagonistic to those held by the Settlement Class. The class definition includes only those who were subject to Defendant's conduct. Ex. 2 ¶ II.A.3. All class members were allegedly treated in the same manner. *Id.*

#### b. Settlement Class Counsel Are Qualified and Experienced.

The attorneys who seek to represent the Settlement Class in this case are highly qualified to serve as Class Counsel, have been investigating these claims for months, and have served as lead and co-lead counsel in some of the largest class actions in the country, as well as insurance-related complex cases. The law firms that Plaintiff seeks to name as Class Counsel in this action are The Moskowitz Law Firm, PLLC and Bonnett, Fairbourn, Friedman & Balint, P.C. Class Counsel has successfully prosecuted numerous insurance and consumer class actions and are well respected in the community that they serve. A copy of Class Counsels' Firm Resumes are attached

hereto as **Composite Exhibit 4**.

**B. The Settlement Class Meets the Requirements of Rule 23(b)(3).**

In addition to meeting all four of Rule 23(a)'s prerequisites for certification, a proposed class of claims seeking monetary relief also must satisfy Rule 23(b)(3)'s additional requirements—predominance and superiority. As detailed below, both the predominance and superiority requirements of Rule 23(b)(3) are satisfied.

While Rule 23(a)(2) asks whether there are issues common to the class, Rule 23(b)(3) asks whether those common issues predominate over "issues that are subject only to individualized proof." *Jackson v. Motel 6 Multipurpose, Inc.*, 130 F.3d 999, 1005 (11th Cir. 1997). Rule 23(b)(3)'s predominance requirement tests "whether [the] proposed class[] [is] sufficiently cohesive to warrant adjudication by representation." *Carriulo v. Gen. Motors Co.*, 823 F.3d 977, 985 (11th Cir. 2016) (citing *Anchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623–24 (1997)). Whether common issues predominate depends on "the elements of the underlying cause of action." *Erica P. John Fund, Inc. v. Halliburton Co.*, 563 U.S. 804, 809 (2011). Here, as detailed above, the elements of the Settlement Class Members' claims present common factual and legal questions. For the purposes of settlement, the Court finds that these common issues of law and fact predominate over any individualized issues. *See, e.g.*, *Carriuolo*, 823 F.3d at 985 ("In this case, the district court found the predominance requirement to be satisfied by an essential question common to each class member: whether the inaccurate Monroney sticker provided by General Motors constituted a misrepresentation prohibited by FDUTPA."), *Turner Greenberg Assocs. v. Pathman*, 885 So. 2d 1008, 1009 (Fla. Dist. Ct. App. 2004) (affirming class certification and holding that "an appropriate measure of damages is the undisclosed profit").

Rule 23(b)(3) also asks whether the class action device is "superior to other available methods for fairly and efficiently adjudicating the controversy." For purposes of an opt-out class settlement, the Court concludes that the class action device is superior to other methods of resolving the issues in this Action given there is no negative value to each Plaintiff's claims, given the ability of Settlement Class Members to opt out, "given the large number of claims, the relatively small amount of damages available to each individual, and given the desirability of consistently adjudicating the claims…." *Roundtree v. Bush Ross, P.A.*, 304 F.R.D. 644, 663 (M.D. Fla. 2015). Accordingly, for purposes of considering, approving, and effectuating the Settlement and to fairly and adequately protect the interests of all concerned as to

all claims set forth in the Operative Complaint, the Court should certify the Settlement Class.

**VI.   THE COURT SHOULD APPROVE THE PROPOSED CLASS NOTICE**

Federal Rule of Civil Procedure 23(e)(1) provides that the "court must direct notice in a reasonable manner to all class members who would be bound by the proposal." Class notice should be "reasonably calculated, under the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950). The Parties' proposed notice plan readily meets this standard. The Settlement provides that Spartan shall distribute Class Notice via email directly to all identifiable class members no more than twenty-eight (28) days after entry of the Preliminary Approval Order. Ex. 2, section IV. The Settlement also provides for a website through which Settlement Class Members can acquire information about the Settlement and the Settlement benefits. *Id.*

**VII.   THE COURT SHOULD APPOINT THE MOSKOWITZ LAW FIRM AND BONNETT, FAIRBOURN, FRIEDMAN & BALINT, P.C. AS CLASS COUNSEL**

The Parties have defined Class Counsel to include The Moskowitz Law Firm, PLLC and Bonnett, Fairbourn, Friedman & Balint, P.C. Ex. 2, ¶ II.A.4. Plaintiff and the undersigned now move the Court to appoint these firms as Class Counsel. Undersigned counsel have significant experience litigating these cases, as well as other nationwide class actions.

**VIII.   THE COURT SHOULD PRELIMINARILY ENJOIN PARALLEL PROCEEDINGS**

Finally, the Court should enter an order preliminarily enjoining all Settlement Class Members who do not execute and timely file a Request for Exclusion from the Settlement Class from filing, prosecuting, maintaining or continuing litigation in federal or state court based on or related to the claims or facts alleged in this action. This type of injunctive relief is commonly granted in preliminary approvals of class action settlements pursuant to the All-Writs Act.

The All-Writs Act authorizes the Court to "issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651(a). The Act empowers the Court to enjoin "conduct which, left unchecked, would have had the practical effect of diminishing the court's power to bring the litigation to its natural conclusion." *In re Am. Online Spin-Off Accounts Litig.*, No. CV 03-6971-RSWL, 2005 WL 5747463, at *4 (C.D. Cal. May 9, 2005) (quoting *ITT Cmty. Dev. Corp. v. Barton*, 569 F.2d 1351, 1359 (5th Cir. 1978). All individual actions that may be brought by Settlement Class Members

who do not opt out should therefore be enjoined pending the Court's determination whether to finally approve the proposed Settlement Agreement.

## IX. NOTICE REGARDING INCENTIVE AWARD

Plaintiff hereby acknowledges that a panel of the United States Court of Appeals for the Eleventh Circuit issued a ruling in *Johnson v. NPAS Solutions*, *LLC*, No. 18-12344, 2020 WL 5553312 (11th Cir. Sept. 17, 2020). In *NPAS*, the Eleventh Circuit held that all service awards for class action representatives are impermissible.[7] Based upon this ruling, Plaintiff hereby represents and agrees that a service award cannot be approved for Plaintiff, unless the ruling in *NPAS* prohibiting service awards is reversed, vacated, or overruled. Should that not occur prior to Plaintiff's deadline specified in the Stipulation for requesting a service award, Plaintiff respectfully submits that this Court could still approve the Settlement Agreement and all of its terms, but also deny approval of specifically a service award and retain "jurisdiction for the limited purpose of revisiting the denial of service awards if the Eleventh Circuit holds a rehearing *en banc* in *Johnson v. NPAS Sols., LLC* and reverses its decision," or another Eleventh Circuit decision overrules *NPAS. See Metzler, et al. v. Medical Management International, Inc., et al.*, 2020 WL 5994537 (M.D. Fla. October 9, 2020) (reserving jurisdiction to award service awards if *NPAS* is reversed). Class Counsel could then "move for reconsideration upon such a reversal" up to and including the date the Fund payment (as defined in the Settlement Agreement) is due to be paid.[8] *Id.*

## X. THE COURT SHOULD SCHEDULE A FINAL APPROVAL HEARING

Should the Court grant this Motion, Plaintiff will file his motion for final approval of the settlement on a date set by the Court. Plaintiff requests that the Court schedule the Final Approval Hearing no less than 90 days after entry of the order preliminarily approving the settlement.

## CONCLUSION

Plaintiff respectfully requests the Court grant preliminary approval of the Settlement.

---

[7] ***NPAS will not become binding precedent*** until issuance of the mandate (appellees' petition for rehearing en banc is pending in *NPAS* and the Eleventh Circuit stayed issuance of the mandate). *See Janicijevic v. Bahamas Paradise Cruise Line Vessels*, No. 20-cv-23220-BLOOM/Louis, ECF No 41 (S.D. Fla. Jan. 7, 2021); *see also Key Enters. of Del., Inc. v. Venice Hosp.*, 9 F.3d 893, 898 (11th Cir. 1993) ("[B]ecause the panel's mandate had not issued, the panel's decision was never the 'law of the case.'"); *see also* Fed R. App. P. 41(c), 1998 Adv. Comm. Note ("A court of appeals' judgment or order is not final until issuance of the mandate[.]")).

[8] Exhibit A to the Settlement Agreement, the Class Notice at ¶ 17, discloses this procedure to all Settlement Class Members.

Dated: January 28, 2021                     Respectfully Submitted,


                                            By:*/s/Adam M. Moskowitz*

                                            Adam M. Moskowitz
                                            Florida Bar No. 984280
                                            adam@moskowitz-law.com
                                            Howard M. Bushman
                                            Florida Bar No. 0364230
                                            howard@moskowitz-law.com
                                            Joseph M. Kaye
                                            Florida Bar No. 117520
                                            joseph@moskowitz-law.com
                                            **THE MOSKOWITZ LAW FIRM, PLLC**
                                            2 Alhambra Plaza
                                            Suite 601
                                            Coral Gables, FL 33134
                                            Telephone: (305) 740-1423

                                            Andrew S. Friedman
                                            (*pro hac vice*)
                                            afriedman@bffb.com
                                            Francis J. Balint, Jr.
                                            (*pro hac vice*)
                                            fbalint@bffb.com
                                            **BONNETT,  FAIRBOURN,  FRIEDMAN
                                            & BALINT, P.C.**
                                            2325 East Camelback Road, Suite 300
                                            Phoenix, Arizona 85016
                                            Tel: (602) 274-1100

                                            ***Counsel for Plaintiff and the Classes***

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was filed on January 28, 2021, with the Court via CM/ECF system, which will send notification of such filing to all attorneys of record.

                                            /s/ Adam M. Moskowitz
                                            Adam M. Moskowitz, Esq.
                                            Florida Bar No. 984280