**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

**Case No.: 1:20-CV-20836-BLOOM/Louis**

AARON FRUITSTONE, on behalf of himself
and all others similarly situated,

      Plaintiff,

v.                                                            **CLASS ACTION**

SPARTAN RACE, INC.,
a Delaware Corporation,

      Defendant.

_____

**PLAINTIFF'S MOTION FOR FINAL APPROVAL OF CLASS**
**ACTION SETTLEMENT, CLASS COUNSEL'S APPLICATION FOR ATTORNEYS'**
**FEES AND EXPENSES, NOTICE REGARDING SERVICE AWARDS, AND**
**<u>INCORPORATED MEMORANDUM OF LAW</u>**

## **INTRODUCTION**

Class Counsel are very proud to present for final approval a class action settlement (the "Settlement") that was already granted Preliminary Approval by this Court, on behalf of almost a million consumers who paid Defendant, Spartan Race, Inc. ("Spartan"), the $14 "Racer Insurance Fee" in connection with registering for a Spartan Race event during the Class Period. The Settlement provides relief valued at approximately $25.6 million to approximately 800,000 Class Members from across the country and requires important and valuable injunctive relief. As of this date, the Parties have received only 5 opt-outs and only 1 objection[1] to final approval. This response to the Settlement is overwhelmingly supportive.

The Settlement's benefits were the result of significant, rigorous arm's length negotiations by the Parties and their counsel, under the direction of a distinguished mediator, Michael Young of JAMS. Per the Court-approved notice plan, notice of this Settlement was disseminated to all Class Members via, among other things, establishment of a settlement website and direct email to those Settlement Class Members whose e-mail addresses Spartan identified in its records.

Undersigned counsel were well positioned to evaluate and negotiate this Settlement because they had been actively litigating this matter against Spartan for nearly a year. Specifically, Plaintiff's counsel investigated their claims and allegations through extensive discovery, including the review of tens of thousands of pages of documents and the depositions of key Spartan personnel, including its founder and CEO, Joe De Sena. Despite that work, Plaintiff and Class Members faced significant hurdles in litigating their claims to successful adversarial resolution. As such, and given the immediate and substantial benefits the Settlement will provide to the Class, there can be no question that the Settlement is "fair, reasonable, and adequate" and should be granted final approval.

For this accomplishment, Class Counsel are asking for the Court to award them only 8.9% of the value of just the direct benefits to the Class (not including the significant injunctive relief) or up to $2,290,000.00 in fees and expenses, negotiated only *after* all Class Members' benefits had been secured, under the direct supervision of a nationally recognized mediator, and payable by Spartan *outside* of the benefits that are provided to the Class. An award amounting to 8.9% of just

---

[1] Pursuant to the Preliminary Approval Order, the deadline to request exclusion from the Settlement Class or to object to the Settlement is **April 7, 2021,** and responses to objections are due by **April 27, 2021** [ECF No. 107 at 15, 18]. Accordingly, Class Counsel will file a response to any and all objections on or before April 27, 2021. Plaintiff does not waive any arguments regarding the validity or substance of any objection by not addressing same in this Motion because it would be premature.

the monetary value of the recovery (not including the significant injunctive relief) made available to Class Members is well within the parameters established by the Eleventh Circuit in *Poertner v. Gillette Co.*, 618 Fed. App'x 624, 629 (11th Cir. 2015).

Class Counsel respectfully request that this Court grant final approval of the Settlement and approve the application for attorneys' fees and costs. Plaintiff further requests that this Court reserve jurisdiction as to the Representative Plaintiff's service award and instead **reserve jurisdiction** for reconsideration of just that award until *Johnson v. NPAS Solutions, LLC*, 2020 WL 5553312 (11th Cir. Sept. 17, 2020), is fully resolved. *See* Argument Section II.B., *infra*. A Proposed Order is attached as **Exhibit A**.

## FACTUAL BACKGROUND

### I.   BACKGROUND OF THE LITIGATION AND MEDIATION

Plaintiff initiated this action against Spartan on February 26, 2020. On April 13, 2020, Plaintiff filed the operative Amended Complaint [ECF No. 15] alleging that Spartan's representations regarding the "Racer Insurance Fee," objectively construed, would lead a reasonable consumer to believe that this mandatory, non-refundable $14 charge is used solely to purchase insurance on behalf of the Spartan event registrant. The Amended Complaint alleges that, in reality, and unknown to consumers, Spartan uses the Racer Insurance Fees to defray administrative expenses and as a hidden profit center for Spartan. *Id.*, ¶¶ 20–21. Plaintiff alleges that Spartan's representations regarding the Racer Insurance Fee were deceptive and the class members suffered damage. The Amended Complaint asserts claims for violations of the Massachusetts Consumer Protection Law, Massachusetts General Laws, Chapter 93A, et seq., and the Florida Deceptive and Unfair Trade Practices Act, §§ 501.201, et seq., Florida Statutes.

Spartan filed a Motion to Transfer this case to Massachusetts and an alternative Motion to Dismiss. [ECF No. 24]. After extensive briefing and oral argument, the Court denied Spartan's transfer motion, as well as Spartan's Motion to Dismiss. [ECF Nos. 32, 34, 36]. The parties thereafter engaged in extensive discovery, exchanging hundreds of thousands of pages of documents and data, conducting several depositions and participating in multiple hearings on discovery disputes before Magistrate Judge Lauren Louis.

Plaintiff filed his Motion for Class Certification on September 3, 2020, [ECF No. 58], which was fully briefed as of December 23, 2020. [ECF Nos. 63–65, 72–73, 95]. In November 2020, the parties moved to stay these proceedings in deference to a private mediation before Michael D.

Young, an experienced and highly regarded mediator with the New York office of JAMS. [ECF Nos. 79, 81]. Declaration of Michael D. Young dated January 27, 2021 [ECF Nos. 102-2, 103] ("Young Decl."). In addition to counsel for the parties, outside coverage counsel for Travelers and Chubb, the two insurance carriers providing potential coverage to Spartan for the claims asserted in the action, participated actively throughout the mediation. Young Decl., ¶ 8. The mediation was hard-fought and protracted, extending over a two-month period, during which the parties participated in a full-day mediation session and multiple Zoom and telephonic follow on mediation sessions. *See, e.g.,* Young Decl. Over the course of the mediation and as the negotiations progressed, the parties sought and obtained several extensions of the stay allowing them to continue their negotiations. *See id.*; *see also* [ECF Nos. 83–85, 87–88].

At several points during the mediation, the parties reached a near impasse as counsel for Plaintiff pressed for enhanced settlement benefits to maximize the recovery for the putative class members. Spartan, for its part, emphasized that its insurers were asserting coverage defenses and that Spartan currently lacks the financial resources necessary to satisfy the claims asserted, should Plaintiff fully prevail at trial. Young Decl., ¶ 9. Spartan therefore consistently maintained throughout the mediation process that its precarious financial condition precluded it from making any meaningful monetary contribution to any class settlement. *Id.*

Despite their best efforts, the parties informed the Court on December 22, 2020 that they had been unable to reach a mutually satisfactory settlement and the Court lifted the stay and reset the class certification hearing. [ECF Nos. 89–90]. On December 29, 2020, the Court heard oral argument on Plaintiff's Motion for Class Certification, [ECF No. 97] at which the Court inquired about the status of the settlement negotiations. Counsel informed the Court that although their prior efforts had not achieved a settlement agreement, the parties had left open the door for further negotiations. After the class certification hearing, the parties continued settlement negotiations in the ongoing mediation with Mr. Young. After many weekend and late-night calls and Zoom conferences, Mr. Young made a mediator's proposal, based upon all of the relevant circumstances, which the parties accepted. Young Decl., ¶ 11.

Commenting on the mediation process, mediator Young attests that "[t]he proposed Settlement is the product of hard-fought arm's length negotiations . . . conducted by extremely knowledgeable counsel having extensive experience in complex class actions, who were highly

knowledgeable concerning the claims and defenses asserted in the Action. The caliber of the representation of both sides was, in my experience, exemplary." *Id.* ¶ 5.

On January 28, 2021, Plaintiff filed an Unopposed Motion for Preliminary Approval of Class Action Settlement, [ECF No. 102]. The Court then preliminarily approved the Settlement on February 2, 2021. [ECF No. 107]. Thereafter, on February 5, 2021, in compliance with the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1715, Spartan caused fifty-three (53) CAFA Notice Packets to be mailed via Certified U.S. Mail to the U.S. Attorney General and to the Attorneys General of every state, the District of Columbia, Puerto Rico, and the Virgin Islands. (Tucci Decl., **Exhibit B**, at ¶¶ 2–3). To date, the parties have not received ***a single inquiry*** regarding the Settlement from the CAFA Notice. (*Id.* at ¶ 4.)

## II.    THE SETTLEMENT TERMS AND AGREEMENT

### A.   *The Proposed Settlement Class*

All individuals in the United States who during the Class Period, based on Spartan's records, paid a $14 "Racer Insurance Fee" or "Insurance Fee" in connection with an event organized and sponsored by Spartan. Excluded from the Class are (a) Defendant's board members and executive level officers; (b) the federal district and magistrate judges assigned to this Action and their staff, and (c) individuals who submit a valid, timely exclusion/opt-out request. [ECF No. 102-3], ¶ II.A.3.

### B.   *Settlement Relief*

This proposed Settlement substantially fulfills the main objectives of this action and affords beneficial relief to the Settlement Class Members that certainly falls "within the range of potential recovery" through successful litigation of the claims asserted in this action. Although Spartan does not admit any fault or liability in the Settlement, Spartan has agreed to provide substantial relief to be distributed according to the Settlement Agreement. As described more fully below, each Class Member will be entitled to elect to receive either: (a) one four-month free membership to the "Spartan+ Membership Program," or (b) one $5 electronic Voucher per each paid registration during the Class Period, up to a maximum of four (4) total electronic Vouchers per Class Member.

Plaintiff and his counsel estimate that the value of the Settlement relief made available to Settlement Class Members, exclusive of the valuable injunctive relief, is similar (if not more) to relief that Class Members might receive, if they were able to certify this case nationwide over

Spartan's objections and obtain a favorable jury verdict.[2] Moreover, attached as **Exhibit C** is the Expert Declaration of forensic accountant Soneet Kapila ("Kapila Decl."), which analyzes the specific value of the Settlement benefits. In addition, the Settlement Class Members stand to benefit from the important injunctive relief described below. The Court should find such relief to be fair, adequate, and reasonable, especially given the risks of success on the merits of Plaintiff's claims.

1.   **The Spartan+ Membership Program (the "Program")**

Each Class member will be provided with a free four-month subscription to the Spartan+ Program, unless they select the alternative relief. [ECF No. 102-3], ¶ III.A. While the pandemic adversely impacted the operating revenues for Spartan and other companies operating mass participation events for which social distancing was not feasible, online or remote fitness memberships available through computer or personal device applications or websites have flourished and remain a growing industry. (Kapila Decl. ¶ 25). According to an industry analysis published in January 2021, the global fitness app market size was valued at "$4.4 billion in 2020 and is expected to expand at a compound annual growth rate (CAGR) of 21.6% from 2021 to 2028." *Id.* Further, the protracted spread of the COVID-19 pandemic resulting in nationwide lockdowns and social distancing norms has precipitated a transition to virtual fitness from traditional studios and gyms. *Id.* The growing awareness regarding health and wellness is also driving the market. *Id*. This, in turn, has vastly increased the downloads and usage of fitness apps. *Id.*

According to a poll conducted in mid-2020, 74% of Americans used at least one fitness app or site during quarantine (41% for the first time), and "64% of Americans are now more interested in at-home fitness options," and over half of those now plan on canceling their gym memberships for good. *Id.*, ¶ 26. The average American used two fitness apps and took four online fitness classes during the lockdown. *Id*. Further, the global downloads of fitness and health apps since 2020 increased by 46%. *Id.*, ¶ 27. This increased usage rate of fitness apps due to a growing trend of online fitness training is driving the market globally. Therefore, memberships in a virtual fitness program have enjoyed a boost and provide a real and tangible benefit to the Class. *Id.*, ¶ 28.

This new Spartan+ Program subscription, recently launched in March 2021, provides significant value to each Settlement Class Member in that it includes: (1) subscription to an

---

[2] This estimate is based on the retail value of the free four-month membership in the Spartan + Membership Program, which is available at the election of the Settlement Class Members and as the default benefit if a Settlement Class Member does not affirmatively elect the Electronic Voucher(s).

enhanced Spartan Fit App (formerly $14.99/month),[3] including online workouts, training programs, activity tracking and more from world class coaches; (2) free shipping and handling for merchandise ordered from Spartan's website; (3) a 20% discount applicable to online merchandise purchases; (4) exclusive discounts on select Spartan merchandise available to Spartan+ members[4]; (5) free, downloadable, high-resolution photo downloads (without watermarks) after events; (6) access to other "members only" premium content on Spartan's website; (7) express race day registration; (8) a Club Area for post-race recovery; (9) guaranteed start time choice for races; and (10) advanced race analysis to help participants with their fitness goals and to complete races. (Kapila Decl. ¶ 30). *__The retail cost of this membership program to the public is $7.99 per month, so the four-month free membership has a value to each Settlement Class Member of $32__*. *Id*., ¶ 31. Settlement Class Members are not required to provide any credit card to initiate the Program subscription and subscriptions will automatically terminate at the end of four months unless the Class Member affirmatively chooses to extend it. [ECF No. 102-3], ¶ III.A.

Plaintiff's expert, Mr. Kapila, opines that this pricing is a "reasonable market-based retail value for the Spartan+ Membership," which includes benefits that "compare favorably to other digital fitness memberships, such as Peloton and Apple+," and therefore "the value of the free Spartan+ Program afforded by the proposed Settlement approximates its retail value of $7.99 per month or $32 for the four-month free membership period allowed under the Settlement Agreement." (Kapila Decl. ¶¶ 32–39). Thus, "the aggregate market-based retail value made available to Class Members for the Spartan+ Program component of the proposed Settlement totals $25.6 million." *Id*., ¶ 39.

### 2.  <u>Electronic Vouchers for Free Purchase of Spartan Merchandise</u>

As an alternative to the four-month free subscription to the Program, each Class Member may elect to receive one $5.00 electronic Voucher per each event for which they paid a full registration fee during the Class Period, up to a total of four (4) electronic Vouchers (for a combined value of $20.00). [ECF No. 102-3], ¶ III.B. Each electronic Voucher shall entitle the class member to a $5.00 credit towards the purchase of any non-discounted merchandise on Spartan's website. *Id*.

---

[3] The Spartan Fit app previously launched by Spartan has been enhanced for inclusion in the Spartan+ Program.
[4] Currently there is a jacket available to Spartan + Program members for $99, with a retail value of $250.

There are currently many non-discounted merchandise items available for sale on the Spartan website for $5.00 or less, and Spartan has no intention of removing said items as a result of this Settlement. *Id.*; *see also* Kapila Decl. ¶¶ 41–44. Electronic Vouchers are fully transferable to friends and family and each Voucher will be valid for ***two (2) years*** from the date of issuance. [ECF No. 102-3], ¶ III.B. Spartan currently sells Spartan Gift Cards in various dollar amounts that are utilized in a similar manner as the electronic Vouchers. Thus, "the value of the Electronic Voucher afforded by the proposed Settlement approximates its retail value of $5 per Electronic Voucher or $20 for the 4 Electronic Vouchers allowed under the Settlement Agreement," for an estimated aggregate value of $10 million. Kapila Decl. ¶¶ 43–44.

### 3. Election of Benefits

The Class Notice further informed each Class Member that they had sixty (60) days from the date the Class Notice email is sent to make their selection, otherwise the default relief will be the free four-month subscription to the Program. [ECF No. 102-3], ¶ III.B. Due to the fact that Spartan's records contain all information sufficient to identify and directly contact the members of the Settlement Class and that ***there is no Claim Form or Claims Process,*** to save the substantial costs of administration by a third party, Spartan will primarily administer the Settlement in good faith and will absorb that cost and with the participation and oversight of Class Counsel. If Spartan's records conflict with information submitted by a claimant, counsel for both Parties shall in good faith attempt to resolve the conflict as they have done throughout the pendency of this matter.

### 4. Injunctive Relief to the Settlement Class

Plaintiff's main reason for bringing this litigation was so Spartan provides full and adequate disclosures regarding the $14 "Racer Insurance Fee." In addition to providing all Class Members with the relief described above, Spartan also agrees to the following injunctive relief, starting on the Effective Date, that will directly benefit all current and future Spartan consumers:

- Spartan will not describe in writing or abbreviate the at-issue fee as a "Racer Insurance Fee," "Racer Insur. Fee," "Insurance Fee," "Insur. Fee," or similar nomenclature. Spartan specifically retains the right to describe the at-issue fee as an "Administrative, Insurance, and Management Fee," "AIM Fee," or "Admin Fee" during the online event registration process or elsewhere.

- Spartan will add the following language to current and future marketing and sales materials, FAQs, relevant website screens in the registration process, and screen

indicators or selectors that describe or are adjacent to the at-issue fee: "The Administrative, Insurance, and Management Fee covers a number of different costs involved in Spartan events, including administrative and management costs, insurance costs and expenses for related risk management and safety measures. This fee is not a direct pass-through of third-party costs to the racer and may include revenues to Spartan."

- Spartan agrees that it will not represent, directly or indirectly, that 100% (or all) of the "Administrative, Insurance, and Management Fee" is paid to an insurance provider or other third-party.

[ECF No. 102-3], ¶ III.C

Accordingly, there is no question that with the full value of all Settlement relief, including injunctive relief, the Settlement is fair, adequate, and reasonable and warrants final approval, especially in light of the risks attendant to continued litigation of these claims.

### C. *Class Counsel's Fees and Expenses and Named Plaintiff's Case Contribution Award*

The Court has already designated the law firms of The Moskowitz Law Firm, PLLC and Bonnett, Fairbourn, Friedman & Balint, P.C. to serve as Class Counsel for the Settlement Class. [ECF No. 107]. Collectively, Class Counsel's application for attorneys' fees and expenses for all of the law firms involved, including Brown, Readdick, Bumgartner, Carter, Strickland & Watkins, LLP, as well as a service award for the named Plaintiff of up to $10,000.00 (subject to Court approval), shall not exceed $2,300,000.[5] [ECF No. 102-3 at section VIII]. The Court may consider whether to approve these awards separate and apart from its analysis of the fairness, reasonableness, and adequacy of the Settlement.

### III.   PRELIMINARY APPROVAL AND SETTLEMENT ADMINISTRATION

After the Court preliminarily approved the Settlement and certified the proposed Settlement Class, it ordered the parties to implement the Notice plan. [ECF No. 107 at 16–18]. On March 2, 2021, Spartan disseminated the notice via direct email to the Settlement Class Members as required by the Preliminary Approval Order and in substantially the form of the notice attached as Exhibit A to the Settlement Agreement. (Sheridan Decl., **Exhibit D**, at ¶¶ 2–4). In all, Spartan sent 789,239 emails to Settlement Class Members. *Id.*, ¶ 4. On March 3, 2021, Class Counsel established an

---

[5] Any award of attorneys' fees and costs will be paid by Spartan's insurance carriers as part of the Settlement.

internet website, https://moskowitz-law.com/results/spartan-race, to inform Settlement Class Members of the terms of the Agreement, their rights, dates and deadlines, and related information, as required by the Preliminary Approval Order.[6] Since notice was disseminated and the settlement website established, Class Counsel has fielded calls and inquiries from dozens of Class Members who voiced their support for the Settlement and Class Counsel answered any questions regarding the Settlement administration process. Joint Decl. ¶ 29.

The deadline for opt-outs or objections is April 7, 2021. As of the date of this filing, the parties have received only 5 opt-out requests, representing only .00076% of the Settlement Class, and counsel has received one objection. (Sheridan Decl., at ¶¶ 6–7).

## **LEGAL ARGUMENT**

## I.  **THIS COURT SHOULD GRANT FINAL APPROVAL OF THE SETTLEMENT.**

Settlement "has special importance in class actions with their notable uncertainty, difficulties of proof, and length. Settlements of complex cases contribute greatly to the efficient utilization of scarce judicial resources, and achieve the speedy resolution of justice[.]" *Turner v. Gen. Elec. Co.*, No. 2:05-cv-186, 2006 WL 2620275, at *2 (M.D. Fla. Sept. 13, 2006) (citation omitted). For these reasons, "there exists an overriding public interest in favor of settlement, particularly in class actions that have the well-deserved reputation as being most complex." *Lipuma v. Am. Express Co.*, 406 F. Supp. 2d 1298, 1314 (S.D. Fla. 2005) (citation omitted).

Courts in this circuit consider the following factors: (1) the existence of fraud or collusion behind the settlement; (2) complexity, expense and duration of litigation; (3) the stage of proceedings at which the settlement was achieved; (4) the likelihood of the plaintiffs' success on the merits; (5) the range of possible recovery; and (6) the opinions of class counsel, class representatives, and the substance and amount of opposition received. *See Leverso v. SouthTrust Bank of Ala., N.A.*, 18 F.3d 1527, 1530 n.6 (11th Cir. 1994); *Saccoccio v. JP Morgan Chase Bank, N.A.,* 297 F.R.D. 683, 691–94 (S.D. Fla. 2014). "In assessing these factors, the Court 'should be hesitant to substitute . . . her own judgment for that of counsel.'" *Lipuma*, 406 F. Supp. 2d at 1315

---

[6] *See* Joint Declaration of Adam Moskowitz and Andrew Friedman in Support of Plaintiff's Motion for Final Approval of Class Action Settlement, Class Counsel's Application for Attorneys' Fees and Expenses, Notice Regarding Service Awards and Incorporated Memorandum of Law at ¶ 28. ("Joint Decl.") (attached as **Exhibit E**).

(quoting *In re Smith,* 926 F.2d 1027, 1028 (11th Cir. 1991)). Analysis of these factors compels the conclusion that this Court should approve the Settlement.

**A. The Settlement is the Product of Good Faith, Informed, and Arm's-Length Negotiations among Experienced Counsel.**

The first factor for final approval requires this Court to consider whether the Settlement was obtained by fraud or collusion among the parties and their counsel. Courts begin with a presumption of good faith in the negotiating process. *See Saccoccio,* 297 F.R.D. at 692 ("Where the parties have negotiated at arm's length, the Court should find that the settlement is not the product of collusion")*; Hemphill v. San Diego Ass'n of Realtors, Inc.*, 225 F.R.D. 616, 621 (S.D. Cal. 2004) ("the courts respect the integrity of counsel and presume the absence of fraud or collusion in negotiating the settlement"). The Settlement terms in this case are the product of significant give and take by the settling parties, and were negotiated at arm's length. The parties participated in an intensive mediation with Michael Young, a well-respected mediator with significant experience resolving complex cases. Mr. Young conducted multiple mediation sessions throughout December 2020. (Joint Decl., ¶¶ 10–14, 33).

The parties, through regular telephonic and zoom sessions, as well as email communications, and with the assistance of Mr. Young, negotiated first the terms of an initial memorandum of understanding and then a final Settlement Agreement. *Id*. Mr. Young has significant experience mediating complex commercial suits to resolution, and was involved in every step of the process. *Id*. ¶¶ 10, 33. The very fact of his involvement weighs in favor of approval. *See, e.g., Lobatz v. U.S. In re Educ. Testing Serv. Praxis Principles of Learning & Teaching, Grades 7-12 Litig.*, 447 F. Supp. 2d 612, 619-20 (E.D. La. 2006) (use of special master to oversee mediation evidenced procedural fairness of negotiating process); *In re WorldCom, Inc. ERISA Litig.*, 2004 WL 2338151, at *6 (S.D.N.Y. Oct. 18, 2004) (fact that "[a] respected and dedicated judicial officer presided over the lengthy discussions from which this settlement emerged" belied any suggestion of collusion). The parties' negotiations were also informed by considerable discovery obtained by Class Counsel in litigating these claims.

**B. The Issues Presented Were Highly Complex and Settlement Approval Will Save the Class Years of Extremely Costly Litigation in this Court and on Appeal.**

This case involves complex legal claims and defenses brought on behalf of 800,000 Settlement Class Members, and includes claims for complex deceptive trade practices claims and common law unjust enrichment. [ECF No. 15.] Litigating these claims would have undoubtedly

proven difficult and consumed significant time, money, and judicial resources. Even if Plaintiff were ultimately to have prevailed on class certification and on the merits in this litigation (which Spartan contests), that success would likely have borne fruit for the Class only after years of trial and appellate proceedings and the expenditure of millions of dollars by both sides. (Joint Decl. ¶ 35); s*ee, e.g., In re Oil Spill by Oil Rig Deepwater Horizon in Gulf of Mex., on Apr. 20, 2010*, 910 F. Supp. 2d 891, 932 (E.D. La. 2012), *aff'd,* 2014 WL 103836 (5th Cir. Jan. 10, 2014) ("Even assuming litigation could obtain the results that this Settlement provides, years of litigation would stand between the class and any such recovery. Hence, this second factor weighs strongly in favor of granting final approval to the Settlement Agreement.").

By contrast, the Settlement provides immediate and substantial relief to the Settlement Class, with benefits approximating approximately *a hundred percent* of Settlement Class Members' actual damages. (Joint Decl. ¶¶ 41–49.) This recovery is extremely favorable, and constitutes an excellent result. *See, e.g., Beber et al. v. Branch Banking & Trust Co. et al.*, No. 15-cv-23294 (S.D. Fla.) (ECF No. 109) (approving similar settlement with payment percentages of 10%, 8%, and 5%); *Saccoccio,* 297 F.R.D. at 693 (return of 12.5% of premiums charged for FPI with prospective relief "very likely exceeds what Plaintiffs could have won at trial"); *In re Checking Account Overdraft Litig.*, 830 F. Supp. 2d 1330, 1346 (S.D. Fla. 2011) (range of 9% to 45% of damages was an "exemplary" result). These benefits come without the expense, uncertainty, and delay of litigation. In light of the costs, uncertainties, and delays of litigating through trial—possibly an appeal—"the benefits to the class of the present settlement become all the more apparent." *See Ressler v. Jacobson*, 822 F. Supp. 1551, 1555 (M.D. Fla. 1992).

**C.  The Factual Record Was Sufficiently Developed to Enable Class Counsel to Make a Reasoned Judgment Regarding the Settlement.**

Courts consider "the degree of case development that class counsel have accomplished prior to settlement" to ensure that "counsel had an adequate appreciation of the merits of the case before negotiating." *In re Gen. Motors Pick-up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 813 (3d Cir. 1995). At the same time, "[t]he law is clear that early settlements are to be encouraged, and accordingly, only some reasonable amount of discovery should be required to make these determinations." *Ressler*, 822 F. Supp. at 1555.

Prior to Settlement, Class Counsel had been investigating and litigating these claims related to Spartan's Racer Insurance Fee for over a year, and familiarized themselves thoroughly with the facts of this matter. (Joint Decl. ¶¶ 36.) This knowledge led the parties to enter into Settlement

discussions. Further, before, during, and after mediation, Class Counsel confirmed details regarding Spartan's marketing and representations regarding the Racer Insurance Fee, the Class members affected, and the amount at stake to ensure the Settlement was fair and complete, and to confirm the value of the relief provided to the Settlement Class. *Id.* ¶¶ 30–33, 41–49.

### D. Plaintiff Faced Significant Obstacles to Obtaining Relief.

"[T]he likelihood and extent of any recovery from the defendants absent … settlement" must be considered in assessing the reasonableness of a settlement. *See In re Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. 297, 314 (N.D. Ga. 1993); *see also Ressler*, 822 F. Supp. at 1555 ("a court is to consider the likelihood of the plaintiffs' success on the merits of his claims against the amount and form of relief offered in the settlement before judging the fairness of the compromise"). Class Counsel and Plaintiff believe they have a compelling case, but also recognize that Spartan would have raised significant defenses to all claims. *See, e.g.*, ECF Nos. 44, 63, 95. Although Plaintiff and Class Counsel maintain that these defenses lack merit, had litigation continued, Plaintiff and Settlement Class Members would have risked not prevailing on their claims. (Joint Decl. ¶¶ 3–4, 37–40). Had the parties continued to litigate, Plaintiff could have stood to recover nothing on behalf of a nationwide Class.

### E. The Benefits Provided by the Settlement Are Fair, Reasonable, and Adequate When Considered Against the Possible Range of Recovery.

As explained above, the Settlement Agreement provides significant benefits. All Settlement Class Members are eligible for either the default option of a free, four-month subscription to the Program or the Vouchers for up to four races they registered for. This represents a significant recovery for Class Members, making available approximately 100% of claimants' actual potential damages (not factoring in potential multiple damages), which meets and likely exceeds the standards established by this and other courts. (Joint Decl. ¶¶ 47–49). Moreover, the agreed-to injunctive relief ensures that the alleged violations will be cured going forward. Federal courts hold that settlements providing the class with a percentage of the recovery sought in litigation are reasonable in light of the attendant risks of litigation. *See, e.g., Johnson v. Brennan*, No. 10-cv-4712, 2011 WL 4357376 (S.D.N.Y. Sept. 16, 2011) ("[T]here is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery."); *see also Behrens v. Wometco Enters., Inc.*, 118 F.R.D. 534, 542–43 (S.D. Fla. 1988) (approving recovery of \$.20 per share where desired recovery was \$3.50 a share because "the fact that a proposed settlement amounts to only a fraction of the possible recovery does not mean the

settlement is inadequate or unfair"); *Fisher Bros., Inc. v. Mueller Brass Co.*, 630 F. Supp. 493, 499 (E.D. Pa. 1985) (approving settlement providing recovery of 0.2% of sales). "Moreover, when settlement assures immediate payment of substantial amounts to class members, even if it means sacrificing speculative payment of a hypothetically larger amount years down the road, settlement is reasonable[.]" *Johnson*, 2011 WL 4357376, at *12; *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998) ("the very essence of settlement is . . . a yielding of absolutes and an abandoning of highest hopes").

Highlighting the value of the Settlement's benefits to the Settlement Class is Judge Gold's opinion finally approving a class settlement in *David v. Am. Suzuki Motor Corp.*, No. 08-cv-22278, 2010 WL 1628362 (S.D. Fla. Apr. 15, 2010), a case involving Suzuki motorcycles allegedly prone to catastrophic frame failure. In that settlement, Suzuki agreed to provide class members (1) either a $500 credit towards a new motorcycle purchase or a $40 credit towards parts, accessories, or service for existing motorcycle, (2) an extension of the frame warranty to 10 years, and (3) an agreement to arbitrate with class members for potential monetary awards for alleged damages to frames. *Id.*, *2. Judge Gold rejected objections to the settlement finding that automatic enrollment in a warranty extension would be valued on the retail price of the relief in the open market and was not premised on a class member's future purchase from defendant. *Id.*, *7.

Courts around the country have approved class action settlements with similar non-cash directly paid settlement benefits, correctly concluding that they are not "coupon settlements." *See In re Equifax Inc. Customer Data Sec. Breach Litig.*, 1:17-MD-2800-TWT, 2020 WL 256132 (N.D. Ga. Mar. 17, 2020) (finally approving settlement with relief including an option to select free credit monitoring and identity protection services, granting a requested fee of $77.5 million, finding that it constituted "less than 1% [of the value of the other non-monetary benefits available to the class] when the retail value of the credit monitoring services already claimed by class members is included"); *see also In re Online DVD-Rental Antitrust Litigation*, 779 F.3d 934 (9th Cir. 2015) (affirming final approval of a settlement providing $12 gift cards to 1.2 million claimants and concluding the settlement was not a "coupon settlement" within the meaning of CAFA); *Johnson v. Ashley Furniture Industries, Inc.*, No. 13cv2445 BTM(DHB), 2016 WL 866957 (S.D. Cal. Mar. 7, 2016) (finally approving a class action settlement where defendant would automatically distribute $25 merchandise vouchers to all known class members and to all unknown class members who submitted claim forms, concluding the settlement was not a "coupon" settlement under CAFA

because, "class members have choices as to what they may purchase with the voucher and may purchase an entire product as opposed to just reducing the purchase price"); *Glaberson v. Comcast Corp.*, No. 03-6604, 2015 WL 5582251 (E.D. Pa. 2015) (finally approving a settlement where current subscribers could choose either (1) a onetime credit of $15 off their bill or (2) credits from a selection of Comcast services, which were valued at their retail value); *Dupler v. Costco Wholesale Corp.,* 705 F. Supp. 2d 231 (E.D. N.Y. 2010) (finally approving class action settlement providing class members benefits of 1 to 2 free months of Costco membership in exchange for settling claims that Costco improperly calculated renewed memberships, valuing the free memberships as a "$38.8 million direct economic benefit to the class" and approving as reasonable the requested fee award of $5,380,000, which amounted to 14% of the value of the settlement and which would be paid separately from the settlement benefits); *Browning v. Yahoo! Inc.*, No. C04-01463 HRL, 2007 WL 4105971 (N.D. Cal. Nov. 16, 2007) (finally approving a settlement including relief of either a free credit report worth $5 or two months of free credit monitoring worth $9.95 a month, concluding it was not a coupon settlement "because it does not require class members to spend money in order to realize the settlement benefit," even though the relief was not transferable).

Plaintiff and the Settlement Class faced significant hurdles in litigating their claims to resolution, including overcoming Defendants' defenses, including the potential denial of class certification of these claims and potential defeat at trial. Despite these challenges, as a result of the Settlement, each Settlement Class Member stands to recover benefits estimated to be worth twice the amount of each Racer Insurance Fee paid, or approximately a hundred percent of the amount they would be entitled to at trial (without factoring in potential multiple damages). These results are clearly reasonable.

**F.   The Opinions of Class Counsel, the Class Representatives, and Absent Class Members Strongly Favor Settlement Approval.**

A court should give "great weight to the recommendations of counsel for the parties, given their considerable experience in this type of litigation." *Warren v. Tampa*, 693 F. Supp. 1051, 1060 (M.D. Fla. 1988). This Court has already found that Class Counsel and Plaintiff will adequately represent the Class in this action, and its conclusion was warranted. *See* Preliminary Approval Order.

Class Counsel litigated this matter aggressively and competently, reviewed tens of thousands of documents, prevailed over Spartan's Motion to Transfer or Alternatively to Dismiss, and fully support the Settlement. Based on this specific experience, and decades of experience in litigating

consumer class action lawsuits, it is Class Counsel's informed opinion that the Settlement is fair, reasonable, adequate, and in the best interests of the Settlement Class. (Joint Decl. ¶ 50.)

As of March 23, 2021, of the approximate 800,000 Settlement Class members, the parties have received only five opt out requests and one objection. (Sheridan Decl. ¶¶ 6–7). This overwhelming support is evidence of the Settlement's fairness. *See, e.g., Saccoccio*, 297 F.R.D. at 694 (opposition amounting to .018% of the class was termed as "low resistance to the settlement" and weighed "in favor of approving the settlement."); *Churchill Village LLC v. Gen. Elec.*, 361 F.3d 566, 577 (9th Cir. 2004) (affirming settlement with 45 objections out of 90,000 notices). Viewed either independently or taken together, the above factors confirm that the Settlement is fair, reasonable, and adequate and in the best interests of the Settlement Class.

## II.    THE COURT SHOULD AWARD REASONABLE FEES AND COSTS AND RESERVE JURISDICTION ON THE REQUESTED SERVICE AWARD.

For their extensive work prior to the filing of the complaint and throughout the pre-trial and settlement phases of this litigation, Class Counsel seek less than 8.9% of the settlement value made available to the Settlement Class (excluding the valuable and important prospective relief), or two million two hundred ninety thousand dollars ($2,290,000.00) in attorneys' fees and expenses.

### A.    The Court Should Award the Requested Attorneys' Fees and Expenses.

Class Counsel is entitled to attorneys' fees for the benefit obtained in the Settlement. *See Saccoccio*, 297 F.R.D. at 695 ("The attorneys' fees in a class action can be determined based upon the total fund, not just the actual payout to the class."); *Casey*, No. 12-cv-00820 (N.D.N.Y.) (D.E. 223); *Boeing Co. v. Van Gemert,* 444 U.S. 472, 478, 676 (1980); *David v. Am. Suzuki Motor Corp*., No. 08–CV–22278, 2010 WL 1628362 (S.D. Fla. Apr. 15, 2010) (settlement with ascertainable benefits may be treated as a common fund to which a percentage fee may be awarded, even if the fee is separately paid by the defendant). In the Eleventh Circuit, "attorneys' fees awarded from a common fund shall be based upon a reasonable percentage of the fund established for the benefit of the class." *Camden I Condo. Ass'n v. Dunkle*, 946 F.2d 768, 774 (11th Cir. 1991); *see also Pinto v. Princess Cruise Lines, Ltd.*, 513 F. Supp. 2d 1334, 1339 (S.D. Fla. 2007); *In re Sunbeam Sec. Litig.,* 176 F. Supp. 2d 1323, 1333 (S.D. Fla. 2001).

A settlement with ascertainable benefits may be treated as a "common fund" from which a percentage fee may be awarded. *See Poertner v. Gillette Co.*, 618 F. App'x 624, 628-29 (11th Cir. 2015) (per curiam) (finding value of nonmonetary relief and cy pres award to be part of the "settlement pie" from which percentage of fund for fee award was calculated); *see also Dupler,* 705

F. Supp. 2d 231 (valuing free Costco membership settlement benefits as a "$38.8 million direct economic benefit to the class" and approving as reasonable the requested fee award of 14% that value or $5,380,000, which would be paid separately from the settlement benefits); *In re Equifax Inc. Customer Data Sec. Breach Litig.*, 2020 WL 256132 (granting requested fee of $77.5 million, finding that it constituted "less than 1% [of the value of the other non-monetary benefits available to the class] when the retail value of the credit monitoring services already claimed by class members is included"); *Jones v. United Healthcare Services, Inc.*, No. 15-cv-61144-RLR, ECF No. 153 (S.D. Fla. Feb. 2, 2017) (Rosenberg, J.) (finally approving class action settlement and attorneys' fee award of $2.75 million, conducting a common-fund analysis and finding that the award was a "small percentage" of overall benefit obtained for 4,410 class members to receive coverage for Hepatitis C treatment); *Batista v. Nissan North America, Inc.*, No. 14-cv-24728-RNS, ECF No. 191 (S.D. Fla. June 29, 2017) (Scola, J.) (approving a $3.75 million attorney fee award, representing between 3.8%–10.1% of the $37 to $99 million value of extended warranties afforded in class action settlement).

"[F]ederal district courts across the country have, in the class action settlement context, *routinely* awarded class counsel fees in excess of the 25 percent 'benchmark,' even in so-called 'mega-fund' cases." *Allapattah Servs., Inc. v. Exxon Corp.*, 454 F. Supp. 2d 1185, 1210 (S.D. Fla. 2006) (emphasis added; awarding fees of 31½% of settlement fund). Here, the requested percentage falls well below the range provided by the Eleventh Circuit. *See Camden I,* 946 F. 2d at 774 (20%–50% of the value provided); *David*, 2010 WL 1628362 at *8 n.15 (20%-50% of common fund is "the customary fee in class actions that result in substantial benefits").

The Eleventh Circuit's factors for evaluating the reasonable percentage to award class action counsel are (1) the time and labor required; (2) the novelty and difficulty of the questions involved; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and the length of the professional relationship with the client; and (12) awards in similar cases. *See Camden I,* 946 F.2d at 772 n.3. This Court may also consider the time required to reach settlement, the existence of substantial objections and non-

monetary benefits, and the economics of prosecuting a class action. *Id.* at 775. As explained below, the factors set forth in *Camden I* support the full award requested.

### 1. The Contingent Nature of the Fee, the Financial Burden Carried by Counsel, and the Economics of Prosecuting a Class Action Support the 8.9% Award.

A determination of a fair fee for Class Counsel must include consideration of the contingent nature of the fee, the outlay of out-of-pocket expenses by Class Counsel, and the fact that the risks of failure and nonpayment in a class action are extremely high. *See Pinto*, 513 F. Supp. 2d at 1339. These factors weigh in favor of awarding Class Counsel approximately 8.9% of the monetary value of the benefits obtained. Class Counsel received no compensation during the course of this litigation and incurred expenses on behalf of the Class, which they risked losing had Spartan prevailed. (Joint Decl. ¶¶ 75–80.) From the time Class Counsel filed suit, there was a real possibility Class Counsel would receive no compensation, whatsoever.

### 2. The Fee Request Reflects the Market Rate in Complex, Contingent, Litigation.

A fee of approximately 8.9% of the cash value is below the market for class actions. *See Saccoccio*, 297 F.R.D. at 695 ("20–30% fee that is customary in common fund cases."). "The percentage method of awarding fees in class actions is consistent with, and is intended to mirror, practice in the private marketplace where attorneys typically negotiate percentage fee arrangements with their clients." *Pinto*, 513 F. Supp. 2d at 1340. In private litigation, attorneys regularly contract directly with their clients for contingent fees between 25% and 33%. These percentages are the prevailing market rates throughout the United States for contingent representation. *See id.* at 1341 (citing, *inter alia*, *Kirchoff v. Flynn*, 786 F.2d 320, 323 (7th Cir. 1986)). In making a determination of what constitutes a fair fee, this Court should be guided by such awards.[7] A fee of approximately 8.9% of the total monetary benefits is well below the range of the customary fee awarded in common fund cases. *See, e.g., Hamilton v. SunTrust Mortgage, Inc.*, No. 13-cv-60749 at (D.E. 178) (awarding 16% of the total monetary benefits).

---

[7] *See also, e.g., Sawyer v. Intermex Wire Transfer, LLC*, 2020 WL 5259094, at *1 (S.D. Fla. Sept. 3, 2020) (awarding one-third of the common fund); *Hanley v. Tampa Bay Sports & Entm't LLC*, No. 8:19-cv-00550-CEH-CPT, 2020 WL 2517766, at *6 (M.D. Fla. Apr. 23, 2020) ("Indeed, district courts in the Eleventh Circuit routinely approve fee awards of one-third of the common settlement fund."); *Wolff v. Cash 4 Titles*, No. 03-cv-22778, 2012 WL 5290155, at *6 (S.D. Fla. Sept. 26, 2012) (collecting cases and concluding that 33% is consistent with the market rate in class actions); *Waters,* 190 F.3d 1291 (affirming 33-1/3%).

### 3.  The Novelty and Difficulty of the Questions at Issue

As previously mentioned, this case presents novel questions of law and issues of fact. Class action matters are generally complex. Spartan's defenses regarding differences in representations, the purpose of the Racer Insurance Fee, the different state laws at issue, and its various affirmative defenses led to significant briefing on class certification and would have led to further briefing on the merits, at trial, post-trial, and on appeal. (Joint Decl. at ¶¶ 3, 35–40, 60–62, 69–74). Thus, even though Class Counsel successfully reached a settlement with Spartan, the difficulty and associated risk of mastering and litigating these issues amply supports the full award requested. *Id*.

### 4.  The Skill, Experience, and Reputation of Class Counsel

This litigation required a high degree of skill and experience. Class Counsel have established their skill, experience, and reputation in the record, and in repeated cases before this court. (Joint Decl. at ¶ 65–67); Firm Resumes at [ECF No. 102-4]. Class Counsel have many years of experience successfully litigating nationally recognized class actions. Beyond that, Class Counsel's reputation, diligence, expertise, and skill are reflected in the results they have achieved. They resolved this dispute efficiently despite the potential hurdles presented them and the arguments raised by Spartan detailed above. The quality of Class Counsel and their achievement in this case is equally shown by the strength of their opponents, Cole, Scott, and Kissane, P.A., and Mintz, Levin, Cohn, Ferris, Glovsky and Popeo, P.C., which are excellent defense firms. (Joint Decl. at ¶ 79). This factor thus also favors awarding the requested fee.

### 5.  The Result Achieved for the Class

The result achieved is a major factor to consider in making a fee award and here, it is significant and perhaps best establishes the propriety of the requested fee award. *See Hensley v. Eckerhart,* 461 U.S. 424, 436, (1983) ("critical factor is the degree of success obtained"); *Pinto*, 513 F. Supp. 2d at 1342; *Behrens,* 118 F.R.D. at 547–48 ("The quality of work performed in a case that settles before trial is best measured by the benefit obtained."). In considering the results, courts examine the value of *both* monetary and prospective relief. *See Poertner*, 618 Fed. App'x at 629; *Perez v. Asurion Corp.*, 501 F. Supp. 2d 1360 (S.D. Fla. 2007); *LiPuma,* 406 F. Supp. 2d at 1323. The results here, with Class benefits worth more than $25.6 million in value and the prospective relief, are excellent. Spartan is required to provide meaningful disclosures regarding the fee they charged (now called the "Administrative, Insurance, and Management Fee" or "AIM Fee") and other injunctive changes. These results are powerful evidence supporting the fee award.

### 6. The Time and Labor of Class Counsel

Investigating, prosecuting, and settling the claims here demanded time and labor. (Joint Decl. ¶¶ 60–65). The complexity of this case required organization by Class Counsel, including assignment of work and regular meetings and calls to ensure coordinated, productive work efforts to maximize efficiency and minimize duplication of effort. Class Counsel spent over 1,200 hours investigating the claims of many potential plaintiffs and in litigating Plaintiff's and the Class's claims against Defendant in this action. *Id*. Plaintiff's counsel investigated their claims and allegations through extensive discovery, including the review of thousands of pages of documents and the depositions of key Spartan personnel. *Id*. Further, this Court held an over two-and-a-half-hour hearing on Plaintiff's motion for class certification. [ECF No. 97]. This work required a significant amount of resources.

### 7. The Reaction of the Class to the Settlement.

To date, the parties have received one objection and only five opt-out requests, which supports the fee request. *See Pinto*, 513 F. Supp. 2d at 1343; (Sheridan Decl. ¶¶ 6–7.)

### B. Notice Regarding Service Awards.

Plaintiff and Class Counsel hereby acknowledge that a panel of the United States Court of Appeals for the Eleventh Circuit issued a ruling in *Johnson v. NPAS Solutions, LLC*, 2020 WL 5553312 (11th Cir. Sept. 17, 2020), holding that service awards for class action representatives are impermissible.[8] Although the Settlement Agreement makes clear that the settlement is in no way conditioned upon the granting of any service awards [ECF No. 102-3 at ¶ VIII.], Plaintiff and Class Counsel hereby submit that this Court should reserve jurisdiction regarding awarding the service award for Plaintiff, unless and until the ruling in *NPAS* prohibiting service awards is reversed *en banc*, vacated, or overruled on or before the Final Fairness Hearing. Class Counsel will advise this Court of the status of *NPAS* prior to the Final Fairness Hearing.

---

[8] *NPAS* will not become binding precedent until issuance of the mandate (which has been stayed pending a petition for rehearing *en banc*, which has not yet been ruled on). *See, e.g., Nat. Res. Def. Council, Inc. v. County of Los Angeles*, 725 F.3d 1194, 1203–04 (9th Cir. 2013), *certiorari denied*, 572 U.S. 1100 (2014) (explaining that "[n]o opinion of this circuit becomes final until the mandate issues"); *see also* Fed R.App. P. 41(c), 1998 Adv. Comm. Note ("A court of appeals' judgment or order is not final until issuance of the mandate[.]")); *Key Enters. of Del., Inc. v. Venice Hosp.,* 9 F.3d 893, 898 (11th Cir. 1993) ("[B]ecause the panel's mandate had not issued, the panel's decision was never the 'law of the case.'").

To the extent it is still binding on this Court at the time of final approval, the Parties respectfully submit that this Court still approve the Settlement and all of its terms, but not approve the service award and retain "jurisdiction for the limited purpose of revisiting the denial of service awards if the Eleventh Circuit holds a rehearing *en banc* in *Johnson v. NPAS Sols., LLC* and reverses its decision," or another Eleventh Circuit decision overrules *NPAS. See Metzler, et al. v. Medical Mgmt. Int'l Inc., et al.*, 2020 WL 5994537 (M.D. Fla. Oct. 9, 2020) (reserving jurisdiction to award service awards if *NPAS* is reversed). Class Counsel could then "move for reconsideration upon such a reversal." *Id.*

However, should *NPAS* be reversed, vacated, or overruled, this Court should approve Plaintiff's service award. The Notice advised Settlement Class Members that Plaintiff would apply for a service award not to exceed $10,000 for taking on the risks of litigation, and for Settlement of his individual claim as a Settlement Class Member in this Action.

In instituting this litigation, the Plaintiff acted as a private attorney general seeking a remedy for what appeared to be a public wrong. *See Pinto,* 513 F. Supp. 2d at 1344. Plaintiff aided in the investigation of these claims and settlement. (Joint Decl. ¶¶ 51–57). Private class action suits are a primary weapon in the enforcement of laws designed for the protection of the public. *See Pinto,* 513 F. Supp. 2d at 1344. Approval of this award is warranted as a matter of policy and is appropriate under applicable precedents. *See Gevaerts v. TD Bank*, No. 2015 WL 6751061, at *9 (S.D. Fla. Nov. 5, 2015) (approving the requested service awards of $10,000); *Dorado v. Bank of Am., N.A.*, 2017 WL 5241042, at *7 (S.D. Fla. Mar. 24, 2017) (same); *Feller v. Transamerica Life Ins. Co.*, 2019 WL 6605886, at *14 (C.D. Cal. Feb. 6, 2019) (awarding $10,000 service awards to both class representatives and named plaintiffs).

<u>**CONCLUSION**</u>

Plaintiff and Class Counsel respectfully request that the Court grant final approval of the Settlement, as well as the application for Class Counsel's fees and expenses. Further, Plaintiff and Class Counsel request that the Court grant the request for a service award should *NPAS* be reversed, vacated, or overruled by the time this Court enters its final order approving the settlement, or alternatively deny the request and reserve jurisdiction for Plaintiff and Class Counsel to move for reconsideration if *NPAS* is thereafter reversed, vacated, or overruled.

Dated: March 24, 2021                        Respectfully submitted,

                                    By: */s/ Adam Moskowitz*
                                        Adam Moskowitz, Esq.
                                        Florida Bar No. 984280
                                        adam@moskowitz-law.com
                                        Howard M. Bushman, Esq.
                                        Florida Bar No. 0364230
                                        howard@moskowitz-law.com
                                        Joseph M. Kaye, Esq.
                                        Florida Bar No. 117520
                                        joseph@moskowitz-law.com
                                        **THE MOSKOWITZ LAW FIRM, PLLC**
                                        2 Alhambra Plaza
                                        Suite 601
                                        Coral Gables, FL 33134
                                        Telephone: (305) 740-1423

                                        Andrew S. Friedman
                                        (*pro hac vice*)
                                        afriedman@bffb.com
                                        Francis J. Balint, Jr.
                                        (*pro hac vice*)
                                        fbalint@bffb.com
                                        **BONNETT, FAIRBOURN, FRIEDMAN &**
                                        **BALINT, P.C.**
                                        2325 East Camelback Road, Suite 300
                                        Phoenix, Arizona 85016
                                        Tel: (602) 274-1100

                                        *Counsel for Plaintiff and the Class*

### CERTIFICATE OF SERVICE

       I HEREBY CERTIFY that on March 24, 2021, I electronically filed the foregoing with the

Clerk of the Court for the United States District Court, Southern District of Florida, by using the

CM/ECF system, which will serve a copy of same on all counsel of record.

                              By: */s/ Adam M. Moskowitz*
                                     Adam M. Moskowitz

21