# Exhibit E

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

Case No.: 1:20-CV-20836-BLOOM/Louis

AARON FRUITSTONE, on behalf of himself
and all others similarly situated,

    Plaintiff,

v.                                                                                         CLASS ACTION

SPARTAN RACE, INC.,
a Delaware Corporation,

    Defendant.

_____

**DECLARATION OF ADAM MOSKOWITZ AND ANDREW FRIEDMAN IN SUPPORT OF PLAINTIFF'S MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT, CLASS COUNSEL'S APPLICATION FOR ATTORNEYS' FEES AND EXPENSES, NOTICE REGARDING SERVICE AWARDS AND <u>INCORPRATED MEMORANDUM OF LAW</u>**

We, ADAM MOSKOWITZ and ANDREW FRIEDMAN declare as follows:

    1.    We are Co-Lead Settlement Class Counsel, and counsel of record for Plaintiff and the proposed Settlement Class in this action ("Class Counsel"), and we respectfully submit this Declaration in support of Plaintiff's Motion for Final Approval of Settlement, Class Counsel's Application for Attorneys' Fees, Notice Regarding Service Awards, and incorporated Memorandum of Law. Except as otherwise noted, we have personal knowledge of the facts set forth in this declaration, and could testify competently to them if called upon to do so.

    2.    In January 2021, after months of hard-fought, arm's-length negotiations, Plaintiff and Defendant executed the Settlement Agreement and Release ("Agreement") under which Defendant has agreed to make available and automatically provide more than $25.6 million in economic benefits to Class Members without the need to submit a claim form (unless Class

Members wish to opt for alternative economic benefits), as well as significant injunctive relief.[1] We are proud to seek final approval and the reaction from the Class to date has been outstanding.

3. Plaintiff maintains that the claims asserted in this matter are meritorious, Defendant's attempt to transfer or dismiss this action was unsuccessful, a motion for class certification would be successful (and would be upheld on appeal), Defendant's attempt to win summary judgement would be unsuccessful, and Plaintiff would prevail if this matter proceeded to trial. This case involved sharply opposed positions on several fundamental and dispositive legal and factual issues. The ultimate success of the litigation required Plaintiff to prevail, in whole or in part, on *all* of these issues. Conversely, Defendant's success on any one of these issues could have spelled defeat for Plaintiff and the Settlement Class. Therefore, continued litigation would have presented significant risks to attaining a successful judgment, as well as the time and expense associated with proceeding to trial, the time and expense associated with appellate review, and the countless uncertainties of litigation, particularly in the context of a large and complex litigation.

4. In light of the risks presented by continued litigation, and taking into account the substantial benefits extended to Settlement Class Members under the terms of the Settlement Agreement, the Settlement not only provides fair and adequate compensation to Settlement Class Members, it also represents a significant achievement benefitting the Settlement Class.

**I.      Background of the Litigation and Mediation**

5. Plaintiff initiated this action against Spartan on February 26, 2020. On April 13, 2020, Plaintiff filed the operative Amended Complaint [ECF No. 15] alleging that Spartan's representations regarding the "Racer Insurance Fee," objectively construed, would lead a reasonable consumer to believe that this mandatory, non-refundable $14 charge is used solely to purchase insurance on behalf of the Spartan event registrant.

6. The Amended Complaint alleges that, in reality, and unknown to consumers, Spartan uses the Racer Insurance Fees to defray administrative expenses and as a hidden profit center for Spartan. *Id.*, ¶¶ 20–21.

---

[1] All capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Agreement, [ECF No. 102-3], and in the February 2, 2021 Order Granting Motion for Preliminary Approval of Class Action Settlement, Conditionally Certifying a Class for Settlement Purposes, Directing the Issuance of Class Notice, and Scheduling a Final Approval Hearing, [ECF No. 107] ("Preliminary Approval Order").

7. Plaintiff alleges that Spartan's representations regarding the Racer Insurance Fee were deceptive and the class members suffered damage. The Amended Complaint asserts claims for violations of the Massachusetts Consumer Protection Law, Massachusetts General Laws, Chapter 93A, et seq., and the Florida Deceptive and Unfair Trade Practices Act, §§ 501.201, et seq., Florida Statutes.

8. Spartan filed a Motion to Transfer this case to Massachusetts and an alternative Motion to Dismiss. [ECF No. 24]. After extensive briefing and oral argument, the Court denied Spartan's transfer motion, as well as Spartan's Motion to Dismiss. [ECF Nos. 32, 34, 36]. The parties thereafter engaged in extensive discovery, exchanging hundreds of thousands of pages of documents and data, conducting several depositions and participating in multiple hearings on discovery disputes before Magistrate Judge Lauren Louis.

9. Plaintiff filed his Motion for Class Certification on September 3, 2020, [ECF No. 58], which was fully briefed as of December 23, 2020. [ECF Nos. 63–65, 72–73, 95].

10. In November 2020, the parties moved to stay these proceedings in deference to a private mediation before Michael D. Young, an experienced and highly regarded mediator with the New York office of JAMS. [ECF Nos. 79, 81]. Declaration of Michael D. Young dated January 27, 2021 [ECF Nos. 102-2, 103] ("Young Decl.").

11. In addition to counsel for the parties, outside coverage counsel for Travelers and Chubb, the two insurance carriers providing potential coverage to Spartan for the claims asserted in the action, participated actively throughout the mediation. Young Decl., ¶ 8. The mediation was hard-fought and protracted, extending over a two-month period during which the parties participated in a full-day mediation session and multiple Zoom and telephonic follow on mediation sessions. *See, e.g.,* Young Decl. Over the course of the mediation, the parties held numerous telephone and Zoom calls with Mr. Young and, as the negotiations progressed, the parties sought and obtained several extensions of the stay allowing them to continue their negotiations. *See id.*; *see also* [ECF Nos. 83–85, 87–88].

12. At several points during the mediation, the parties reached a near impasse as counsel for Plaintiff pressed for enhanced settlement benefits to maximize the recovery for the putative class members. Spartan, for its part, emphasized that its insurers were asserting coverage defenses and that Spartan currently lacks the financial resources necessary to satisfy the claims asserted should Plaintiff fully prevail at trial. Young Decl., ¶ 9. Spartan therefore consistently

3

maintained throughout the mediation process that its precarious financial condition precluded it from making any meaningful monetary contribution to any class settlement. *Id.*

13. Despite their best efforts, the parties informed the Court on December 22, 2020 that they had been unable to reach a mutually satisfactory settlement and the Court lifted the stay and reset the class certification hearing. [ECF Nos. 89–90]. On December 29, 2020, the Court heard oral argument on Plaintiff's Motion for Class Certification, [ECF No. 97], at which the Court inquired about the status of the settlement negotiations. Counsel informed the Court that although their prior efforts had not achieved a settlement agreement, the parties had left open the door for further negotiations. After the class certification hearing, the parties continued settlement negotiations in the ongoing mediation with Mr. Young. After many weekend and late-night calls and Zoom conferences, Mr. Young made a mediator's proposal, based upon all of the relevant circumstances, which the parties accepted. Young Decl., ¶ 11.

14. Commenting on the mediation process, mediator Young attests that "[t]he proposed Settlement is the product of hard-fought arm's length negotiations … conducted by extremely knowledgeable counsel having extensive experience in complex class actions, who were highly knowledgeable concerning the claims and defenses asserted in the Action. The caliber of the representation of both sides was, in my experience, exemplary." *Id.* ¶ 5.

15. On January 28, 2021, Plaintiff filed an Unopposed Motion for Preliminary Approval of Class Action Settlement, [ECF No. 102]. The Court then preliminarily approved the Settlement on February 2, 2021. [ECF No. 107]. Thereafter, on February 5, 2021, in compliance with the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1715, Spartan caused fifty-three (53) CAFA Notice Packets to be mailed via Certified U.S. Mail to the U.S. Attorney General, the Attorneys General of every state, the District of Columbia, Puerto Rico, and the Virgin Islands. (Tucci Decl., attached to the Motion for Preliminary Approval as **Exhibit B**, at ¶¶ 2–3. To date, the parties have not received ***a single inquiry*** regarding the Settlement from the CAFA Notice. (*Id.* at ¶ 4.)

## II.   The Settlement Terms and Agreement
### A.   *The Proposed Settlement Class*

16. All individuals in the United States who during the Class Period, based on Spartan's records, paid a $14 "Racer Insurance Fee" or "Insurance Fee" in connection with an event organized and sponsored by Spartan. Excluded from the Class are (a) Defendant's board members

and executive level officers; (b) the federal district and magistrate judges assigned to this Action and their staff, and (c) individuals who submit a valid, timely exclusion/opt-out request. [ECF No. 102-3], ¶ II.A.3.

### B. *Settlement Relief*

17. This proposed Settlement substantially fulfills the main objectives of this action and affords beneficial relief to the Settlement Class Members that certainly falls "within the range of potential recovery" through successful litigation of the claims asserted in this action. Although Spartan does not admit any fault or liability in the Settlement, Spartan has agreed to provide substantial relief to be distributed according to the Settlement Agreement. As described more fully below, each Class Member will be entitled to elect to receive either: (a) one four-month free membership to the "Spartan+ Membership Program," or (b) one $5 electronic Voucher per each paid registration during the Class Period, up to a maximum of four (4) total electronic Vouchers per Class Member.

18. Plaintiff and his counsel estimate that the value of the Settlement relief made available to Settlement Class Members, exclusive of the valuable injunctive relief, is similar (if not more) to relief that Class Members might receive, if they were able to certify this case nationwide over Spartan's objections and obtain a favorable jury verdict.[2] Moreover, attached to the Motion for Final Approval as **Exhibit C** is the Expert Declaration of forensic accountant Soneet Kapila ("Kapila Decl."), which analyzes the specific value of the Settlement benefits. In addition, the Settlement Class Members stand to benefit from the important injunctive relief described below. The Court should find such relief to be fair, adequate, and reasonable, especially given the risks of success on the merits of Plaintiff's claims.

### 1. The Spartan+ Membership Program (the "Program")

19. Each Class member will be provided with a free four-month subscription to the Spartan+ Program, unless they select the alternative relief. [ECF No. 102-3], ¶ III.A. While the pandemic adversely impacted the operating revenues for Spartan and other companies operating mass participation events for which social distancing was not feasible, online or remote fitness

---

[2] This estimate is based on the retail value of the free four-month membership in the Spartan + Membership Program, which is available at the election of the Settlement Class Members and as the default benefit if a Settlement Class Member does not affirmatively elect the Electronic Voucher(s).

5

memberships available through computer or personal device applications or websites have flourished and remain a growing industry. (Kapila Decl. ¶ 25). According to an industry analysis published in January 2021, the global fitness app market size was valued at "$4.4 billion in 2020 and is expected to expand at a compound annual growth rate (CAGR) of 21.6% from 2021 to 2028." *Id.* Further, the protracted spread of the COVID-19 pandemic resulting in nationwide lockdowns and social distancing norms has precipitated a transition to virtual fitness from traditional studios and gyms. *Id.* The growing awareness regarding health and wellness is also driving the market. *Id*. This, in turn, has vastly increased the downloads and usage of fitness apps. *Id.*

20.     According to a poll conducted in mid-2020, 74% of Americans used at least one fitness app or site during quarantine (41% for the first time), and "64% of Americans are now more interested in at-home fitness options," and over half of those now plan on canceling their gym memberships for good. *Id.*, ¶ 26. The average American used two fitness apps and took four online fitness classes during the lockdown. *Id*. Further, the global downloads of fitness and health apps since 2020 increased by 46%. *Id.*, ¶ 27. This increased usage rate of fitness apps due to a growing trend of online fitness training is driving the market globally. Therefore, memberships in a virtual fitness program have enjoyed a boost and provide a real and tangible benefit to the Class. *Id.*, ¶ 28.

21.     This new Spartan+ Program subscription, recently launched in March 2021, provides significant value to each Settlement Class Member in that it includes: (1) subscription to an enhanced Spartan Fit App (formerly $14.99/month),[3] including online workouts, training programs, activity tracking and more from world class coaches; (2) free shipping and handling for merchandise ordered from Spartan's website; (3) a 20% discount applicable to online merchandise purchases; (4) exclusive discounts on select Spartan merchandise available to Spartan+ members[4]; (5) free, downloadable, high-resolution photo downloads (without watermarks) after events; (6) access to other "members only" premium content on Spartan's website; (7) express race day registration; (8) a Club Area for post-race recovery; (9) guaranteed start time choice for races; and (10) advanced race analysis to help participants with their fitness goals and to complete races.

---

[3] The Spartan Fit app previously launched by Spartan has been enhanced for inclusion in the Spartan+ Program.
[4] Currently there is a jacket available to Spartan + Program members for $99, with a retail value of $250.

(Kapila Decl. ¶ 30). ***The retail cost of this membership program to the public is $7.99 per month, so the four-month free membership has a value to each Settlement Class Member of $32***. *Id*., ¶ 29. Settlement Class Members are not required to provide any credit card to initiate the Program subscription and subscriptions will automatically terminate at the end of four months unless the Class Member affirmatively chooses to extend it. [ECF No. 102-3], ¶ III.A.

22. Plaintiff's expert, Mr. Kapila, opines that this pricing is a "reasonable market-based retail value for the Spartan+ Membership," which includes benefits that "compare favorably to other digital fitness memberships, such as Peloton and Apple+," and therefore "the value of the free Spartan+ Program afforded by the proposed Settlement approximates its retail value of $7.99 per month or $32 for the four-month free membership period allowed under the Settlement Agreement." (Kapila Decl. ¶¶ 32–39). Thus, "the aggregate market-based retail value made available to Class Members for the Spartan+ Program component of the proposed Settlement totals $25.6 million." *Id*., ¶ 39.

### 2. Electronic Vouchers for Free Purchase of Spartan Merchandise

23. As an alternative to the four-month free subscription to the Program, each Class Member may elect to receive one $5.00 electronic Voucher per each event for which they paid a full registration fee during the Class Period, up to a total of four (4) electronic Vouchers (for a combined value of $20.00). [ECF No. 102-3], ¶ III.B. Each electronic Voucher shall entitle the class member to a $5.00 credit towards the purchase of any non-discounted merchandise on Spartan's website. *Id*. There are currently many non-discounted merchandise items available for sale on the Spartan website for $5.00 or less, and Spartan has no intention of removing said items as a result of this Settlement. *Id*.; *see also* Kapila Decl. ¶¶ 41–44. Electronic Vouchers are fully transferable to friends and family and each Voucher will be valid for ***two (2) years*** from the date of issuance. [ECF No. 102-3], ¶ III.B. Spartan currently sells Spartan Gift Cards in various dollar amounts that are utilized in a similar manner as the electronic Vouchers. Thus, "the value of the Electronic Voucher afforded by the proposed Settlement approximates its retail value of $5 per Electronic Voucher or $20 for the 4 Electronic Vouchers allowed under the Settlement Agreement," for an estimated aggregate value of $10 million. Kapila Decl. ¶¶ 43–44.

### 3. Election of Benefits

24. The Class Notice further informed each Class Member that they had sixty (60) days from the date the Class Notice email is sent to make their selection, otherwise the default relief

7

will be the free four-month subscription to the Program. [ECF No. 102-3], ¶ III.B. Due to the fact that Spartan's records contain all information sufficient to identify and directly contact the members of the Settlement Class and that ***there is no Claim Form or Claims Process,*** to save the substantial costs of administration by a third party, Spartan will primarily administer the Settlement in good faith and will absorb that cost and with the participation and oversight of Class Counsel. If Spartan's records conflict with information submitted by a claimant, counsel for both Parties shall in good faith attempt to resolve the conflict as they have done throughout the pendency of this matter.

### 4. Injunctive Relief to the Settlement Class

25. Plaintiff's main reason for bringing this litigation was so Spartan provides full and adequate disclosures regarding the $14 "Racer Insurance Fee." In addition to providing all Class Members with the relief described above, Spartan also agrees to the following injunctive relief, starting on the Effective Date, that will directly benefit all current and future Spartan consumers:

- Spartan will not describe in writing or abbreviate the at-issue fee as a "Racer Insurance Fee," "Racer Insur. Fee," "Insurance Fee," "Insur. Fee," or similar nomenclature. Spartan specifically retains the right to describe the at-issue fee an "Administrative, Insurance, and Management Fee," "AIM Fee," or "Admin Fee" during the online event registration process or elsewhere.

- Spartan will add the following language to current and future marketing and sales materials, FAQs, relevant website screens in the registration process, and screen indicators or selectors that describe or are adjacent to the at-issue fee: "The Administrative, Insurance, and Management Fee covers a number of different costs involved in Spartan events, including administrative and management costs, insurance costs and expenses for related risk management and safety measures. This fee is not a direct pass-through of third-party costs to the racer and may include revenues to Spartan."

- Spartan agrees that it will not represent, directly or indirectly, that 100% (or all) of the "Administrative, Insurance, and Management Fee" is paid to an insurance provider or other third-party.

[ECF No. 102-3], ¶ III.C

### C. *Class Counsel's Fees and Expenses and Named Plaintiff's Case Contribution Award*

26.     The Court has already designated the law firms of The Moskowitz Law Firm, PLLC and Bonnett, Fairbourn, Friedman & Balint, P.C. to serve as Class Counsel for the Settlement Class. [ECF No. 107]. Collectively, Class Counsel's application for attorneys' fees and expenses for all of the law firms involved, including Brown, Readdick, Bumgartner, Carter, Strickland & Watkins, LLP, as well as a service award for the named Plaintiff of up to $10,000.00 (subject to Court approval), shall not exceed $2,300,000.[5] [ECF No. 102-3 at section VIII]. The Court may consider whether to approve these awards separate and apart from its analysis of the fairness, reasonableness, and adequacy of the Settlement.

### III. Preliminary Approval and Settlement Administration

27.     After the Court preliminarily approved the Settlement and certified the proposed Settlement Class, it ordered the parties to implement the Notice plan. [ECF No. 107 at 16–18]. On March 2, 2021, Spartan disseminated the notice via direct email to the Settlement Class Members as required by the Preliminary Approval Order and in substantially the form of the notice attached as Exhibit A to the Settlement Agreement. (Sheridan Decl., attached to the Motion for Final Approval as **Exhibit D**, at ¶¶ 2–4). In all, Spartan sent 789,239 emails to Settlement Class Members.

28.     On March 3, 2021, Class Counsel established an internet website, https://moskowitz-law.com/results/spartan-race, to inform Settlement Class Members of the terms of the Agreement, their rights, dates and deadlines, and related information, as required by the Preliminary Approval Order.

29.     Since notice was disseminated and the settlement website established, Class Counsel has fielded calls and inquiries from dozens of Class Members who voiced their support for the Settlement and Class Counsel answered any questions regarding the Settlement administration process.

### IV. Considerations Supporting Settlement

### A. *There Was No Fraud or Collusion.*

30.     Class Counsel negotiated the Settlement vigorously and at arm's-length. Plaintiff was represented by experienced counsel at these arm's-length negotiations. Settlement

---

[5] Any award of attorneys' fees and costs will be paid by Spartan's insurance carriers as part of the Settlement.

9

negotiations were informed by the experience of counsel for both sides in the litigation, certification, trial, and settlement of nationwide class action cases.

33. Specifically, Class Counsel investigated their claims and allegations through extensive discovery, including the review of thousands of pages of documents and the depositions of key Spartan personnel.

32. Class Counsel's investigation and review of the information provided by Defendant enabled Class Counsel to gain an understanding of the evidence related to central questions in the case and prepared them for well-informed settlement negotiations.

33. Thus, Class Counsel were well-positioned to evaluate the strengths and weaknesses of Plaintiff's claims, as well as the appropriate basis upon which to settle them.

34. Moreover, the mediation was overseen by Michael Young of JAMS, a highly experienced and prominent mediator. Mr. Young has significant experience mediating complex commercial suits to resolution and was involved in every step of the process. The settlement negotiations and mediation sessions were, at all times, adversarial, and conducted at arm's length. The mediation process and subsequent negotiations spanned many weeks.

### B. *The Settlement Will Avert Years of Highly Complex and Expensive Litigation.*

35. This case involves approximately 800,000 Settlement Class Members who paid a $14 Racer Insurance Fee to Spartan. The claims and potential defenses are complex; litigating them to resolution would have been difficult and time consuming. Although Plaintiff's claims have been pending for over a year, recovery by any means other than settlement would require additional years of litigation in this Court and appellate courts. By contrast, the Settlement provides immediate and substantial benefits to the Settlement Class.

### C. *The Factual Record Is Sufficiently Developed to Enable Plaintiff and Class Counsel to Make a Reasoned Judgment Concerning the Settlement.*

36. As discussed above, Class Counsel were well-versed in Defendant's operations through considerable discovery in this action prior to Settlement. This afforded Class Counsel important insight into the strengths and weaknesses of their claims against Defendants. Before settling, Class Counsel had already developed ample information and performed extensive analyses from which to assess the probability of success on the merits, the possible range of recovery, and the likely expense and duration of the litigation.

### D. *Plaintiff Would Have Faced Significant Obstacles to Obtaining Relief.*

37. Plaintiff and Class Counsel are confident in the strengths of their case, but are also pragmatic in their awareness of the various defenses available to Defendant and the risks inherent to litigation. Indeed, at the time of settlement Plaintiff's Motion for Class Certification was pending.

38. While Plaintiff and Class Counsel believe they have a compelling case against Defendants, Class Counsel is mindful of the fact that Defendant would have advanced significant defenses that they would be required to overcome at class certification, summary judgment, trial, and eventually on appeal on any merits and class certification. *See, e.g.,* ECF Nos. 44, 63, 95. Class Counsel and Plaintiff thus appreciate that, absent a settlement, it would have taken years of additional litigation – and overcoming vigorous legal and factual defenses – to bring the action to finality. Even then, the outcome would be uncertain. Given the myriad risks attending these claims, the Settlement cannot be seen as anything other than a fair compromise.

39. Protracted litigation carries inherent risks and inevitable delay.

40. Plaintiff and Class Counsel determined that the benefits of the Settlement reached with Defendant clearly outweigh the risks of continued litigation.

41. The Settlement provides substantial value to the Settlement Class. Such value is well within the range of reasonableness.

42. According to Defendant's records and Plaintiff's calculations, the total value of the monetary benefits provided by the Settlement is more than $25.6 million.

43. Here, the Settlement Agreement provides that each Class member who elects to receive the Program (or simply does not indicate any selection after receiving the email notice) will be provided with a free four-month subscription to the Spartan+ Program. [ECF No. 102-3], ¶ III.A.

44. Alternatively, each Class Member may elect to receive one $5.00 electronic Voucher per each event for which they paid a full registration fee during the Class Period, up to a total of four (4) electronic Vouchers (for a combined value of $20.00). [ECF No. 102-3], ¶ III.B.

45. The potential Class recovery of approximately $25.6 million represents a significant portion of the Class Members' anticipated total recovery, making available approximately 100% of claimants' actual potential damages (not factoring in potential multiple

11

damages), depending on the final damages calculations had the claims proceeded to trial. The return here is eminently fair.

46. Finally, Defendants are mandated to provide meaningful disclaimers on their products and other injunctive changes which will provide real value to the Class and the consuming public.

### E. *The Settlement Amount Is Reasonable Given the Range of Possible Recovery.*

47. The Settlement provides substantial value to the Settlement Class. Such value is well within the range of reasonableness. Under the Settlement, Plaintiff and the Settlement Class have recovered economic benefits valued at over $25.6 million, which represents approximately 100% of claimants' actual potential damages (not factoring in potential multiple damages), depending on the final damages calculations had the claims proceeded to trial.

48. While it is certainly possible that the maximum recoverable damages at trial for all claims could exceed the amount of the Settlement, this assumes complete acceptance of Plaintiff's liability and damage evidence on a class-wide basis. Given the obstacles and uncertainties of continued litigation, Class Counsel believe the proposed settlement represents an outstanding recovery for the Class who otherwise may have not recovered anything.

49. The Settlement also helps Class Members by providing for significant and real injunctive relief.

### F. *The Opinions of Class Counsel, Class Representatives, and Absent Class Members Strongly Favor Approval of the Settlement.*

50. Class Counsel believe that this Settlement is extraordinary and clearly deserving of final approval. Moreover, opposition to the Settlement has been *de minimis*. As of March 23, 2021, the parties received 1 objection and 5 exclusion requests. (Sheridan Decl. ¶¶ 6–7).

## IV. Service Awards

51. Defendant also agreed to not oppose an application for a case contribution award not to exceed $10,000 to Class Representative Aaron Fruitstone for taking on the risks of litigation, and for Settlement of his individual claims as a Settlement Class Member in this Action. If the Court approves the award, it will be paid over and above the settlement amounts available for Class Members, and in addition to the relief the Class Representative will be entitled to under the terms of the Settlement.

52. Service awards compensate named plaintiffs for the services they provided and the risks they incurred during the course of the class action litigation. Courts have consistently found service awards to be an efficient and productive way to encourage members of a class to become class representatives.

53. The factors for determining a service award include: (1) the actions the class representatives took to protect the interests of the class; (2) the degree to which the class benefited from those actions; and (3) the amount of time and effort the class representatives expended in pursuing the litigation.

54. The above factors, as applied to the Action, demonstrate the reasonableness of a service award to the Class Representative. Among other things, the Class Representative took numerous actions and provided substantial assistance to Class Counsel by locating and forwarding documents and information, sitting for deposition, and engaging in conferences with Class Counsel.

55. The Class Representative not only devoted time and effort to this litigation, but the end result of his efforts (and those of counsel) was a substantial benefit to the Class. The Class Representative should be compensated for their service.

56. Class Counsel hereby acknowledge that last year a panel of the United States Court of Appeals for the Eleventh Circuit issued a ruling in *Johnson v. NPAS Solutions*, *LLC*, No. 18-12344, 2020 WL 5553312 (11th Cir. Sept. 17, 2020). In *NPAS*, the Eleventh Circuit held that service awards for class action representatives are impermissible.

57. Although the Settlement Agreement makes clear that the settlement is in no way conditioned upon the granting of any service awards [ECF No. 102-3 at ¶ VIII.], Class Counsel does not intend to seek a service award for Plaintiff unless the ruling in *NPAS* prohibiting service awards is reversed, vacated, or overruled on or before the final approval hearing. Class Counsel will advise this Court of the status of *NPAS* prior to the Final Fairness Hearing. To the extent *NPAS* is still binding on this Court at the time of final approval, Class Counsel respectfully requests that this Court could still approve the settlement and all of its terms, but also deny approval of specifically a service award and retain "jurisdiction for the limited purpose of revisiting the denial of service awards if the Eleventh Circuit holds a rehearing en banc in *Johnson v. NPAS Sols., LLC* and reverses its decision," or another Eleventh Circuit decision overrules *NPAS*. See *Metzler, et al. v. Medical Management International, Inc., et al.*, Case No 19-02289-VMC-CPT, 2020 WL

5994537 (M.D. Fla. October 9, 2020) (reserving jurisdiction to award service awards if NPAS is reversed). Class Counsel could then "move for reconsideration upon such a reversal." *Id*. However, should *NPAS* be reversed, vacated, or overruled, the Court should approve the service award for Plaintiff. The detailed notice advised Class Members that Plaintiff would apply for a service award not to exceed $10,000 for taking on the risks of litigation, and for Settlement of his individual claims as a Settlement Class Member in this Action. To date, no class member has filed an objection to this reasonable request.

## V.     Class Counsel's Attorneys' Fees

58.     Pursuant to the Settlement, Class Counsel are entitled to request that the Court award attorneys' fees up $2,290,000.00 which is roughly 8.9% of the monetary value of the Settlement's benefits. If the value of the injunctive relief is included, the percentage is even lower.[6] Defendant has agreed not to oppose Class Counsel's request for attorneys' fees and expenses. *Id*. The Parties negotiated and reached this agreement regarding attorneys' fees and expenses only after reaching agreement on all other material terms of this Settlement.

59.     As indicated in the Court-approved Notice disseminated to the Settlement Class, and consistent with standard class action practice and procedure, Class Counsel request a fee amounting to $2,290,000.00, inclusive of all litigation costs and expenses.

### A.     *The Claims against Defendants Required Substantial Time and Labor.*

60.     Investigating, prosecuting, and settling the claims here demanded considerable time and labor. The complexity of this case required organization by Class Counsel, including assignment of work and regular meetings and conference calls to ensure coordinated, productive work efforts to maximize efficiency and minimize duplication of effort. Class Counsel spent over

---

[6] *See Poertner v. Gillette Co.*, 618 Fed. App'x 624 (11th Cir. 2015) (class counsel fees properly awarded based on percentage of total "settlement pie," including injunctive relief and *cy pres* award); *Staton v. Boeing Co.,* 327 F.3d 938, 974 (9th Cir. 2003) ("[C]ourts should consider the value of the injunctive relief obtained as a relevant circumstance in determining what percentage of the common fund class counsel should receive as attorneys' fees.") (internal quotation and citation omitted); *Perez v. Asurion Corp.*, 501 F. Supp. 2d 1360 (S.D. Fla. 2007); *Sheppard v. Consol. Edison Co. of N.Y., Inc.,* 2002 WL 2003206, at *7 (E.D.N.Y. Aug. 1, 2002) (in valuing total settlement for percentage-based attorneys' fee award, court included $6.745 million in monetary relief and "an estimated $5 million in non-monetary, injunctive relief"); *Steiner v. Williams,* 2001 WL 604035, at *4 (S.D.N.Y. May 31, 2001) ("Although the settlement in this action did not involve the payment of money by the defendants, counsel may nonetheless recover a fee if the settlement conferred a substantial non-monetary benefit.").

1,200 hours investigating the claims of many potential plaintiffs and in litigating Plaintiff's and the Class's claims against Defendant in this action.

61.     Class Counsel litigated this action tenaciously, including defeating Spartan's motion to transfer this action to Massachusetts, or alternatively to dismiss this action with prejudice. [ECF Nos. 24, 32, 34, 36].

62.     Class Counsel expended significant resources researching and developing the legal claims at issue.

63.     Class Counsel prepared for and participated in many meetings and conference calls in an attempt to settle the action. After the Parties executed a term sheet, Class Counsel engaged in protracted discussions and drafting over the terms of the Settlement Agreement, Notice, and claim forms. In addition, Class Counsel had continued communications with Defendants, pending final approval of the Settlement.

64.     Further, the Settlement requires a continuing role for Class Counsel after final approval, in reviewing the payments made to Class Members, as well as any denied claims and reasons for denial. Class Counsel have negotiated a procedure to resolve any disagreements with Defendants regarding denied claims and will not involve the Court unless those procedures fail to result in a mutually agreeable solution. Class Counsel have responded to many Class Member calls and written inquiries concerning the Settlement and will continue to do so. Finally, Class Counsel will be responsible for responding to any appeals that may be filed and for handling all other post-approval proceedings. These substantial efforts justify awarding Class Counsel the requested fee.

65.     All told, Class Counsel's steadfast and coordinated work paid great dividends for the Settlement Class. Each of the above-described efforts was essential to achieving the Settlement currently before the Court. Taken together, the time and resources Class Counsel devoted to prosecuting and settling this action of nationwide importance justify the fee we are now seeking.

    **B.**     ***The Issues Involved Were Novel and Difficult and Required the Exceptional Skill of a Highly Talented Group of Attorneys.***

66.     The Court has witnessed the high quality of Class Counsel's legal work, which has conferred a significant benefit on the Settlement Class in the face of daunting litigation obstacles. As the Court is aware, it is extremely challenging to establish liability based upon the facts at issue in this litigation. This complex action requires the acquisition and analysis of specific science and economic data – and the efforts of highly skilled lawyers.

67. Indeed, litigation of a case like this requires counsel highly trained in class action law and procedure as well as the specialized issues these cases present. All of the lawyers representing Plaintiff possess these attributes, and their participation as Class Counsel added significant value to the representation of this Settlement Class consisting of millions of individuals. The record before the Court establishes that the Action involved a wide array of complex challenges, which Class Counsel met at every juncture based on their extensive experience in complex litigation and class action litigation.

68. In assessing the quality of representation by Class Counsel, the Court also should consider the quality of their opposing counsel. Throughout this litigation, Defendant has been represented by extremely able and diligent attorneys. These were worthy, highly competent adversaries.

### C. *The Claims against Defendants Entailed Considerable Risk.*

69. There have been vigorous defenses to similar claims in other actions denying any and all liability and similar defenses have been raised in this Action. The time and expense demands required to prepare to work on this for Class Counsel were daunting, to say the least, and obviated their ability to work on numerous other matters. Class Counsel's success under these circumstances thus represents a genuine milestone.

70. Prosecuting the Action was risky from the outset. While several risks existed, Class Counsel limit the discussion to the most serious risks.

71. First, the possibility that this Court would dismiss this action in its entirety based upon arguments that would be raised by Defendants in their motions to dismiss.

72. Second, the Court could have denied class certification on a variety of issues raised by Defendant and by the Court at the hearing on Plaintiff's Motion for Class Certification.

73. Each of these risks, standing alone, could have impeded Plaintiff's successful prosecution of these claims at trial (and in any appeal).

74. Together, they overwhelmingly demonstrate that Plaintiff's claims against Defendant were far from a "slam dunk" and that, in light of all the circumstances, the Settlement achieves an excellent class-wide result.

      **D.**    *Class Counsel Assumed Substantial Risk to Pursue the Action on a Pure Contingency Basis, and Were Precluded From Other Employment as a Result.*

75. Class Counsel prosecuted the Action entirely on a contingent fee basis. In undertaking to prosecute this complex action on that basis, Class Counsel assumed a significant risk of nonpayment or underpayment. That risk warrants the requested fee.

76. Public policy concerns – especially ensuring the continued availability of experienced and capable counsel to represent classes of injured plaintiffs whose individual claims would defy vindication – further justify the requested fee award.

77. Because of the nature of a contingent practice where cases are predominantly "big cases" lasting for years, not only do contingent firms have to pay regular overhead, but they also have to advance the substantial expenses of litigation of this kind. The financial burden on counsel bringing contingent fee cases is far greater than on a firm that is paid on an ongoing basis.

78. The above does not take into consideration the possibility of no recovery. It is not unusual to spend tens of thousands of hours on losing efforts. Prosecutions without recovery are exceedingly expensive. While the Court must focus on the reasonableness of the fees to be paid in this case, the fees and expenses that go unpaid when the cases are dismissed should not be ignored.

79. The progress of the Action to date readily demonstrates the inherent risk that Class Counsel faced in taking these cases on a contingency fee basis. Despite Class Counsel's ongoing effort in litigating before this Court, Class Counsel remain completely uncompensated for the time and expenses they have invested. Uncompensated expenditures of this magnitude can severely damage or even destroy law firms. There can be no reasonable dispute that the Action entailed substantial risk of nonpayment and resulting financial harm for our practices.

80. Furthermore, the time Class Counsel spent on the Action was time that they could not spend on other matters. This factor thus strongly militates in favor of Class Counsel's requested fee.

      **E.**    *Class Counsel Have Achieved an Excellent Result.*

81. The result Class Counsel achieved is outstanding. Instead of facing additional years of costly and uncertain litigation, Settlement Class Members will receive an immediate and automatic benefit from the potential economic settlement benefits of over $25.6 million, which represents approximately 100% of claimants' actual potential damages (not factoring in potential multiple damages), depending on the final damages calculations had the claims proceeded to trial.

17

The number is much higher when one considers the injunctive relief obtained. The Settlement represents an exceptional achievement by any measure.

### F.   *The Requested Fee Comports with Customary Fees Awarded in Similar Cases.*

82. The fee requested here matches the fee typically awarded in similar cases. As legions of decisions have recognized, a fee award of 30% or more of a common benefit is well within the range of a customary fee. The fee requested is only just under 8.9% (without any consideration of the injunctive relief). Moreover, the requested fee falls squarely below the range of awards made in numerous cases brought in this Circuit and District.

### G.   *Other Factors Also Favor Approving Class Counsel's Fee Request.*

83. Other factors likewise support granting Class Counsel's fee request. As noted, the burdens of this litigation have precluded Class Counsel's pursuit of other cases. The relatively small size of the firms representing Plaintiff, and the major commitment involved in accepting this representation, precluded Class Counsel's firms from working on other matters and accepting other representations. In addition, Class Counsel's fee request is firmly rooted in the economics of prosecuting a class action. *Camden I Condo. Ass'n v. Dunkle,* 946 F.2d 768, 775 (11th Cir. 1991). Without adequate compensation and financial reward, cases such as this simply could not be pursued.

## VI.   Conclusion

84. Class Counsel are well aware of the strengths and weaknesses of their case, the principles of law applicable to the disputed issues, and the relative risks of continuing to prosecute the litigation and believe the Settlement obtained is an excellent result. For the reasons set forth above and in the accompanying memoranda, Class Counsel respectfully submit that the Settlement is fair, reasonable, and adequate and should be approved. In addition, the amount of attorney's fees expenses and service award agreed upon by the Parties is fair and reasonable and should be approved by the Court.

I declare under penalty of perjury of the laws of Florida and the United States that the foregoing is true and correct, and that this declaration was executed in Miami-Dade County, Florida on March 24, 2021.

By: /s/ *Adam M. Moskowitz*
      Adam M. Moskowitz

I declare under penalty of perjury of the laws of Arizona and the United States that the foregoing is true and correct, and that this declaration was executed in Maricopa County, Arizona on March 24, 2021.

By: /s/ *Andrew Friedman*
      Andrew Friedman