**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

**Case No.: 1:20-CV-20836-BLOOM/Louis**

AARON FRUITSTONE, on behalf of himself
and all others similarly situated,

Plaintiff,

v.

SPARTAN RACE, INC.,
a Delaware Corporation

Defendant.

Jed Nolan,

Objector.

---

**OBJECTION OF JED NOLAN**

---

## TABLE OF CONTENTS

TABLE OF CONTENTS ...................................................................................................................i

TABLE OF AUTHORITIES..........................................................................................................ii

INTRODUCTION .........................................................................................................................1

ARGUMENT..................................................................................................................................1

I.      Objector Nolan is a member of the settlement class. ...........................................................1

II.     The Court has a fiduciary duty to the absent class members. ..............................................2

III.    The coupon settlement is unfair, as the class is not the foremost beneficiary. ..................3

        A.      Coupon settlements are disfavored and subject to heightened scrutiny.......................5

                1.      The $5 vouchers are coupons. ...............................................................6

                2.      The Spartan+ Membership is a coupon...........................................10

        B.      In economic reality, the settlement impermissibly benefits class counsel at the expense of the class...........................................................................................11

                1.      Class counsel asks for a disproportionate distribution of fees...........12

                2.      The settlement agreement contains a disfavored clear-sailing clause...........................................................................................17

                3.      The segregated fee fund acts as a disfavored kicker............................18

        C.      If awarded, the settlement improperly favors the named representative over absent class members through its "Plaintiff's Service Awards." .................19

IV.    Alternatively, if the Court approves the settlement, it should defer the fee award until after the coupon redemption period............................................................................19

       CONCLUSION ...................................................................................................................20

# TABLE OF AUTHORITIES

## Cases

*Camden I Condo. Ass'n v. Dunkle,*
    946 F.2d 768 (11th Cir. 1991) ............................................................................................... 1, 12, 14

*Chambers v. Whirlpool Corp.,*
    980 F.3d 645 (9th Cir. 2020) ................................................................................................... 10, 20

*Cline v. TouchTones Music Corp.,*
    765 Fed. Appx. 488 (2d Cir. 2019) .................................................................................................11

*Dardarian v. Officemax N. Am., Inc.,*
    No. 11-cv-00947, 2013 U.S. Dist. LEXIS 98653 (N.D. Cal. July 12, 2013) ...............................7, 10

*Davis v. Cole Haan, Inc.,*
    2015 WL 7015328, 2015 U.S. Dist. LEXIS 153434 (N.D. Cal. Nov. 12, 2015)............................14

*Dennis v. Kellogg Co.,*
    697 F.3d 858 (9th Cir. 2012) ........................................................................................................4

*Figueroa v. Sharper Image Corp.,*
    517 F. Supp. 2d 1292 (S.D. Fla. 2007) ............................................................................... 2, 5, 9, 10

*Galloway v. Kan. City Landsmen, LLC,*
    833 F.3d 969 (8th Cir. 2016) ......................................................................................................13

*Hadley v. Kellogg Sales Co.,*
    2020 WL 836673, 2020 U.S. Dist. LEXIS 30193 (N.D. Cal. Feb. 20, 2020) ...................................9

*Hendricks v. Ference,*
    754 Fed. Appx. 510 (9th Cir. 2018) ...............................................................................................7

*Hensley v. Eckerhart,*
    461 U.S. 424 (1983) ....................................................................................................................20

*Hertz Corp. v. Alamo Rent-A-Car,*
    16 F.3d 1126 (11th Cir. 1994) ......................................................................................................6

*Holmes v. Cont'l Can Co.,*
    706 F.2d 1144 (11th Cir. 1983) .......................................................................................... passim

*In re Anthem Inc. Data Breach Litig.,*
    327 F.R.D. 299 (N.D. Cal. 2018)................................................................................................16

*In re Baby Prods. Antitrust Litigation,*
    708 F.3d 163 (3d Cir. 2013) ..........................................................................................................5

*In re Cmty. Bank of N. Va. & Guar. Nat'l Bank of Tallahassee Second Mortg. Litig.*,
    418 F.3d 277 (3d Cir. 2005) ...................................................................................18

*In re Dry Max Pampers Litig.*,
    724 F.3d 713 (6th Cir. 2013) ....................................................................................2

*In re EasySaver Rewards Litig.*,
    906 F.3d 747 (9th Cir. 2018) ........................................................................... passim

*In re GMC Pick-Up Trucks Fuel-Tank Prods. Liab. Litig.*,
    55 F.3d 768 (3d Cir. 1995) ....................................................................... 4, 12, 17

*In re Home Depot Inc., Customer Data Sec. Breach Litig.*,
    931 F.3d 1065 (11th Cir. 2019) ..........................................................................4, 13

*In re HP Inkjet Printer Litig.*,
    716 F.3d 1173 (9th Cir. 2013) ........................................................................ passim

*In re Lumber Liquidators Chinese-Manufactured Flooring Prods. Mktg, Sales Prac. & Prods.*
*Liab. Litig.*,
    952 F.3d 471 (4th Cir. 2020) ........................................................... 6, 9, 10, 11

*In re Mexico Money Transfer Litig.*,
    267 F.3d 743 (7th Cir. 2001) ....................................................................................5

*In re Online DVD-Rental Antitrust Litig.*,
    779 F.3d 934 (9th Cir. 2015) ................................................................................7, 8

*In re Southwest Airlines Voucher Litig.*,
    799 F.3d 701 (7th Cir. 2015) ..................................................................................11

*In re Yahoo! Inc. Customer Data Sec. Breach Litig.*,
    2020 WL 4212811, 2020 U.S. Dist. LEXIS 129939 (N.D. Cal. July 22, 2020) ..............................15

*Jane Roes 1-2 v. SFBSC Mgmt., LLC*,
    944 F.3d 1035 (9th Cir. 2019) ........................................................................ passim

*Johnson v. Comerica*,
    83 F.3d 241 (8th Cir. 1996) ......................................................................................4

*Johnson v. NPAS Sols., LLC*,
    975 F.3d 1244 (11th Cir. 2020) ................................................................... 3, 16, 19

*Kleiman v. Wright*,
    2020 WL 1849407, 2020 U.S. Dist. LEXIS 65651 (S.D. Fla. Apr. 13, 2020) ................................16

*Kouichi Taniguchi v. Kan Pac. Saipan, Ltd.*,
    566 U.S. 560 (2012) ..................................................................................................6

*Linneman v. Vita-Mix Corp.*,
   394 F. Supp. 3d 771 (S.D. Ohio 2019) ................................................................10

*Linneman v. Vita-Mix Corp.*,
   970 F.3d 621 (6th Cir. 2020) ............................................................... 10, 19, 20

*Mahoney v. TT of Pine Ridge, Inc.*,
   No. 17-80029-CIV, 2017 WL 9472860 (S.D. Fla. Nov. 20, 2017) ....................9

*Manner v. Gucci Am., Inc.*,
   2016 WL 6025850, 2016 U.S. Dist. LEXIS 142770 (S.D. Cal. Oct. 13, 2016) ...........................14

*McKnight v. Uber Techs., Inc.*,
   2019 U.S. Dist. LEXIS 136706, 2019 WL 3804676 (N.D. Cal. Aug. 13, 2019) ............................6

*Murray v. GMAC Mortg. Corp.*,
   434 F.3d 948 (7th Cir. 2006) ............................................................................19

*Norman v. Housing Auth. of Montgomery*,
   836 F.2d 1292 (11th Cir. 1988) ........................................................................20

*Piambino v. Bailey II*,
   757 F.2d 1112 (11th Cir. 1985) .......................................................................2, 3

*Radcliffe v. Experian Info. Solutions*,
   715 F.3d 1157 (9th Cir. 2013) ..........................................................................19

*Redman v. Radioshack Corp.*,
   768 F.3d 622 (7th Cir. 2014) ................................................................. 7, 13, 20

*Reed v. Continental Guest Servs. Corp.*,
   No. 10 Civ. 5642, 2011 WL 1311886 (S.D.N.Y. Apr. 4, 2011) .........................6

*Richardson v. L'Oreal United States*,
   991 F. Supp. 2d 181 (D.D.C. 2013) ..................................................................18

*Rougvie v. Ascena Retail Grp., Inc.*,
    2016 WL 4111320, 2016 U.S. Dist. LEXIS 99235 (E.D. Pa. July 29, 2016)..................................6

*Smith v. United States*,
   508 U.S. 223 (1993) .........................................................................................11

*Staton v. Boeing Co.*,
   327 F.3d 938 (9th Cir. 2003) ............................................................................17

*Swinton v. Squaretrade, Inc.*,
   454 F. Supp. 3d 848 (S.D. Iowa. 2020) ................................................... 13, 15

*Synfuel Techs., Inc. v. DHL Express (USA), Inc.*,

    463 F.3d 646 (7th Cir. 2006) .................................................................................14

*Tech. Training Assocs., Inc., v. Buccaneers Ltd. P'ship*,
    874 F.3d 692 (11th Cir. 2017) .............................................................................17

*Vought v. Bank of Am.*,
    901 F. Supp. 2d 1071 (C.D. Ill. 2012) ...............................................................18

*Wilson v. DirectBuy, Inc.*,
    2011 WL 2050537, 2011 U.S. Dist. LEXIS 51874 (D. Conn. May 16, 2011)..................11

## **Statutes & Rules**

28 U.S.C. § 1711 note § 2(a)(3) ...............................................................................5

28 U.S.C. § 1712 ......................................................................................................1

28 U.S.C. § 1712(a) ............................................................................................6, 19

28 U.S.C. § 1712(c) ...............................................................................................19

Fed. R. Civ. P. 23(a)(4) ....................................................................................17, 19

Fed. R. Civ. P. 23(e)(2) ............................................................................................1

Fed. R. Civ. P. 23(e)(2)(A) ....................................................................................17

Fed. R. Civ. P. 23(e)(2)(C)(iii) ...................................................................12, 14, 17

Fed. R. Civ. P. 23(e)(2)(D) .....................................................................................19

Fed. R. Civ. P. 23(g)(4) ..........................................................................................17

## **Other Authorities**

American Law Institute,
    *Principles of the Law of Aggregate Litigation* § 3.05 (2010) ...........................12

Andrea Estes,
    *Critics hit law firms' bills after class-action lawsuits*, BOSTON GLOBE (Dec. 17, 2017).............................2

Brian T. Fitzpatrick,
    *An Empirical Study of Class Action Settlements and their Fee Awards*, 7 J. EMPIRICAL
    LEGAL STUD. 811 (2010).....................................................................................12

Charles Silver,
    *Due Process and the Lodestar Method*, 74 TUL. L. REV. 1809 (2000)...................19

Elizabeth Chamblee Burch,
    *Publicly Funded Objectors*, 19 THEORETICAL INQUIRIES IN LAW 47 (2018)...........................2

Erin L. Sheley & Theodore H. Frank,
    *Prospective Injunctive Relief and Class Settlements*, 39 HARV. J. L. & PUB. POL'Y 769
    (2016) ............................................................................................................... 17

James Tharin & Brian Blockovich,
    *Coupons and the Class Action Fairness Act*, 18 GEO. J. LEGAL ETHICS 1443 (2005) .................... 14, 15

Lester Brickman,
    LAWYER BARONS (2011) ................................................................................... 19

Ronald L. Burdge,
    UNITED STATES CONSUMER LAW ATTORNEY FEE SURVEY REPORT, 2017-2018 ........................ 20

S. Rep. 109-14 (2005) ................................................................................................ 6

Steven B. Hantler & Robert E. Norton,
    *Coupon Settlements: The Emperor's Clothes of Class Actions*, 18 GEO. J. LEGAL ETHICS
    1343 (2005) ....................................................................................................... 14

Theodore Eisenberg & Geoffrey P. Miller,
    *Attorneys Fees & Expenses in Class Action Litigation: 1993-2008*, 7 J. OF EMPIRICAL
    LEGAL STUD. 248 (2010) ................................................................................... 12

William D. Henderson, *Clear Sailing Agreements: A Special Form of Collusion in Class
    Action Settlements*, 77 TUL. L. REV. 813 (2003) ............................................................... 18

## INTRODUCTION

A coupon settlement that releases nearly 800,000 class members' claims in exchange for the continued benefit of doing business with the wrongdoer, while class counsel seeks uncontested fees in the amount $2.29 million dollars, is not fair, reasonable, or adequate under Rule 23(e)(2). The class of approximately 800,000 members will receive either a promotional four-month membership to "Spartan+" or $5 voucher(s) to the Spartan online store. Both options require class members to continue doing business with Spartan. Both are, then, coupons under section 28 U.S.C. § 1712 of the Class Action Fairness Act ("CAFA"), subjecting the settlement to heightened scrutiny and limiting the methods by which fees may be awarded to class counsel.

Under the most generous estimates, empirical data indicate that no more than 5% of the coupons will be redeemed. What class counsel characterizes as a $25.6 million benefit for the class is closer to, at most, $1.28 million. Even this $1.28 million is still a fictitious amount based on the full retail price of a Spartan+ membership—a service just launched by defendant last month. In reality, the true benefit to the class is closer to $400,000. Yet class counsel asks for ~550% of this amount, far in excess of the Eleventh Circuit's benchmark of around 25% for fee awards in common fund settlements. *See Camden I Condo. Ass'n v. Dunkle,* 946 F.2d 768, 774-75 (11th Cir. 1991) ("*Camden I*"). Additionally, class counsel seeks to insulate the award from attack by including a clear sailing agreement that prevents Spartan from challenging the fee request and allowing any unawarded fees under the clear sailing threshold to return to Spartan instead of the class.

In discharging its fiduciary duty to the class, the Court should deny final settlement approval.

## ARGUMENT

### I.   Objector Nolan is a member of the settlement class.

During the class period, Objector Jed Nolan paid the $14 "Racer Insurance Fee" in connection with a race organized and sponsored by Spartan, Inc. on two separate occasions. *See* Declaration of Jed Nolan, ¶¶ 3-4 (attached). Nolan is not within any of the classes of persons excluded from the settlement. *Id.* at ¶ 5. He therefore has standing to object. His full name is Jed Robert Nolan; his address is 113 West Broadway St, Athens, West Virginia 24712; and his telephone number is (304) 640-3780. *Id.* at ¶ 2.

Hamilton Lincoln Law Institute's Center for Class Action Fairness ("CCAF") represents

Nolan *pro bono*, and CCAF attorney Adam R. Duggan intends to appear at the fairness hearing on his behalf. *See* Notice of Appearance of Counsel (contemporaneously-filed). CCAF represents class members *pro bono* where class counsel employs unfair procedures to benefit themselves at the expense of the class. *See, e.g., In re EasySaver Rewards Litig.*, 906 F.3d 747 (9th Cir. 2018) ("*EasySaver*") (sustaining CCAF's client's objection for failing to abide by the Class Action Fairness Act's strictures on coupon settlements); *Pearson v. NBTY, Inc.*, 772 F.3d 778, 787 (7th Cir. 2014) (CCAF "flagged fatal weaknesses in the proposed settlement" and demonstrated "why objectors play an essential role in judicial review of proposed settlements of class actions"); *In re Dry Max Pampers Litig.*, 724 F.3d 713, 716-17 (6th Cir. 2013) ("*Pampers*") (CCAF's client's objections "numerous, detailed, and substantive"). Since it was founded in 2009, CCAF has "develop[ed] the expertise to spot problematic settlement provisions and attorneys' fees." Elizabeth Chamblee Burch, *Publicly Funded Objectors*, 19 THEORETICAL INQUIRIES IN LAW 47, 55-57 & n.37 (2018). Over that time CCAF has recouped more than $200 million for class members by driving settling parties to reach an improved bargain or by reducing outsized fee awards. *See* Andrea Estes, *Critics hit law firms' bills after class-action lawsuits*, BOSTON GLOBE (Dec. 17, 2017) (more than $100 million at time). Nolan brings this objection through CCAF in good faith to protect the interests of the class. Nolan Decl., ¶ 19. His objection applies to the entire class; he adopts any objections not inconsistent with this one.

## II.   The Court has a fiduciary duty to the absent class members.

"Class-action settlements are different from other settlements." *Pampers*, 724 F.3d at 715. "[T]he district court cannot rely on the adversarial process to protect the interests of the persons most affected by the litigation—namely, the class." *Id.* at 718. Instead, "[c]areful scrutiny by the court is necessary to guard against settlements that may benefit the class representatives or their attorneys at the expense of the absent class members." *Holmes v. Cont'l Can Co.*, 706 F.2d 1144, 1147 (11th Cir. 1983) (quotation omitted). "[T]he district judge has a heavy duty to ensure that any settlement is 'fair, reasonable, and adequate' and that the fee awarded plaintiffs' counsel is entirely appropriate." *Piambino v. Bailey II*, 757 F.2d 1112, 1139 (11th Cir. 1985) ("*Piambino II*") (Tjoflat, J.). This duty is "akin to the high duty of care that the law requires of fiduciaries." *Figueroa v. Sharper Image Corp.*, 517 F. Supp. 2d 1292, 1320 (S.D. Fla. 2007) (internal quotation omitted).

Defendants are "uninterested in what portion of the total [settlement] payment will go to the

class and what percentage will go to the class attorney." *Piambino II*, 757 F.2d at 1143 (internal quotation omitted). Due to this indifference, judges must look for not only actual collusion but also "subtle signs that class counsel have allowed pursuit of their own self-interest and that of certain class members to infect the negotiations." *Pampers*, 724 F.3d at 718 (internal quotation omitted). Thus, while it is *necessary* that a settlement is at "arm's length" without express collusion between the settling parties, it is not *sufficient* for settlement approval. *Jane Roes 1-2 v. SFBSC Mgmt., LLC*, 944 F.3d 1035, 1050 n.13, 1060 (9th Cir. 2019) ("*Roes*") (distinguishing "self-interest" from "purposeful collusion"). There is no presumption in favor of settlement approval; a rigorous analysis is required, not merely a surface-level one. *Johnson v. NPAS Sols., LLC*, 975 F.3d 1244, 1261-63 (11th Cir. 2020) ("*NPAS*"). The settling parties burden to demonstrate fairness is heightened because this settlement has been proposed before class certification. *Pampers*, 724 F.3d at 721; *Roes*, 944 F.3d at 1049.

In sum, the Court should always keep foremost in mind that "the class settlement process is 'more susceptible than adversarial adjudications to certain types of abuse.'" *Holmes*, 706 F.2d at 1147 (quoting *Pettway v. Am. Cast Iron Pipe Co.*, 576 F.2d 1157, 1169 (5th Cir. 1978)).

**III.   The coupon settlement is unfair, as the class is not the foremost beneficiary.**

The proposed settlement is artificially compartmentalized:

- First, class members may elect between two forms of "benefits": by default, class members will receive one four-month free membership to the Spartan+ Membership Program (the "Membership"); alternatively, they may elect to receive up to four $5 "vouchers" (or one per each event for which a class member paid the problematic insurance fee). *See* Dkt. 102-3, at 8-9.

- Second, both class and non-class members will benefit—to the extent it provides any benefit at all—from: prospective injunctive alterations to the labelling of the problematic insurance fee. *See* Dkt. 102-3, at 9-10.

- Third, named representative benefits: the right to seek an unopposed payment in the amount of $10,000. *See* Dkt. 102-3, at 21.

- Fourth, class counsel's benefit: the right to seek an unopposed fee and expense award of $2.3 million. *See* Dkt. 102-3, at 20.

Unlike a pure common fund, each of the benefits here is formally segregated and

compartmentalized. This segregation requires consideration of the "constructive common fund," which comprises the "sum" of the class's benefit and the "agreed-on fee amount." *In re Home Depot Inc., Customer Data Sec. Breach Litig.*, 931 F.3d 1065, 1080 (11th Cir. 2019) ("*Home Depot*") (Tjoflat, J.) (quoting Manual for Complex Litigation (Fourth) § 21.7(2004)); *see also Dennis v. Kellogg Co.*, 697 F.3d 858, 862-63 (9th Cir. 2012) (evaluating a similar "constructive common fund" settlement); *In re GMC Pick-Up Trucks Fuel-Tank Prods. Liab. Litig.*, 55 F.3d 768, 820 (3d Cir. 1995) ("*GM Trucks*") (A severable fee structure "is, for practical purposes, a constructive common fund."); *Johnson v. Comerica*, 83 F.3d 241 (8th Cir. 1996) ("[I]n essence the entire settlement amount comes from the same source. The award to the class and the agreement on attorney fees represent a package deal."). "[P]rivate agreements to structure artificially separate fee and settlement arrangements cannot transform what is in economic reality a common fund situation into a statutory fee shifting case." *GM Trucks*, 55 F.3d at 821. Because the settlement agreement here contains a $2.3 million cap on fees, *see* Dkt. 102-3, at 20, the payment to the class and counsel is a "package deal" that effectively reduces "the payment to the class to account for the expected payment to counsel." *Home Depot*, 931 F.3d at 1092. Class counsel apparently agrees that this is a constructive common fund: "A settlement with ascertainable benefits may be treated as a 'common fund' from which a percentage fee may be awarded." Dkt. 110, at 16.

A constructive common fund structure such as this is inferior for one principal reason: the segregation of parts means that the Court cannot remedy any allocation issues by reducing fee awards and or named representative payments. *See In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 949 (9th Cir. 2011) ("*Bluetooth*"). Because "the adversarial process" between the settling parties cannot safeguard "the manner in which that [settlement] amount is *allocated* between the class representatives, class counsel, and unnamed class members," it is no surprise that the most common settlement defects are ones of allocation. *Pampers*, 724 F.3d at 717 (emphasis in original); *see also Holmes*, 706 F.2d at 1147 (noting the importance of review of the fairness of allocation and not just the adequacy of settlement sum). Thus, a segregated fund structure prevents the Court from exercising its discretion, in furtherance of its fiduciary duty (one that is heightened as a result of the coupon component), to cure the most endemic settlement ailment: a malapportioned fund.

Objectors sometimes complain that a settlement is insufficiently large in the aggregate. But the focus of Nolan's objection is quite different: settling parties have designed the compartmentalized

settlement to benefit class counsel, the named representative, and the defendant, all at the expense of benefitting the class. It is this very concern that animated the Seventh Circuit to vacate the settlement in *Pearson*, the Sixth Circuit to vacate the settlement in *Pampers*, and the Ninth Circuit to vacate the settlement in *Roes*. In any class action settlement, it's a foundational principle that class members should be "the foremost beneficiaries" of the accord. *In re Baby Prods. Antitrust Litigation*, 708 F.3d 163, 179 (3d Cir. 2013). The parties ask the Court to invert this bedrock axiom, and approve a settlement that consigns absent class members to an afterthought.

A.      **Coupon settlements are disfavored and subject to heightened scrutiny.**

Congress passed the Class Action Fairness Act ("CAFA") to combat the incongruity that "[c]lass members often receive little or no benefit from class actions, and are sometimes harmed, such as where … class counsel are awarded large fees, while leaving class members with coupons or other awards of little or no value." 28 U.S.C. § 1711 note §§ 2(a)(3), (a)(3)(A); *see also EasySaver*, 906 F.3d at 754-55. Such unfairness was prevalent because the use of coupons "masks the relative payment of class counsel as compared to the amount of money actually received by the class members." *In re HP Inkjet Printer Litig.*, 716 F.3d 1173, 1179 (9th Cir. 2013) ("*Inkjet*") (quoting Christopher R. Leslie, *A Market-Based Approach to Coupon Settlements in Antitrust and Consumer Class Action Litigation*, 49 UCLA L. REV. 991, 1049 (2002)). Coupon settlements suffer from additional flaws, including that "they often do not provide meaningful compensation to class members; they often fail to disgorge ill-gotten gains from the defendant; and they often require class members to do future business with the defendant in order to receive compensation." *Figueroa*, 517 F. Supp. 2d at 1302. Coupons also can "serve as a form of advertising for the defendants, and their effect can be offset (in whole or in part) by raising prices during the period before the coupons expire." *In re Mexico Money Transfer Litig.*, 267 F.3d 743, 748 (7th Cir. 2001). When a settlement contemplates unused coupon value reverting to the defendant, the dangers are "even more grave." *Roes*, 944 F.3d at 1053. "Unchecked, such reversions would allow defendants to create a larger coupon pool than they know will be claimed or used, just to inflate the value of the settlement and the resulting attorneys' fees." *Id.* at 1054.

It is because of "the[se] well-documented problems associated with such settlements [that] Congress voiced its concern over coupon settlements when it amended [CAFA] to call for judicial scrutiny of attorneys' fee awards in coupon cases." *Reed v. Continental Guest Servs. Corp.*, No. 10 Civ.

5642, 2011 WL 1311886, at *3 (S.D.N.Y. Apr. 4, 2011). Because of the inherent dangers of coupon settlements, CAFA requires a district court to apply "heightened judicial scrutiny" and to value the settlement, at least for fee purposes, based "on the value to class members of the coupons that are redeemed," 28 U.S.C. § 1712(a). *See also Inkjet*, 716 F.3d at 1181-86; *EasySaver*, 906 F.3d at 755. The Senate Committee's Report on CAFA confirms these legislative aims:

> [W]here [coupon] settlements are used, the fairness of the settlement should be seriously questioned by the reviewing court where the attorneys' fee demand is disproportionate to the level of tangible, non-speculative benefit to the class members. In adopting [Section 1712(e)'s requirement of a written determination that the settlement is fair, reasonable, and adequate], it is the intent of the Committee to incorporate that line of recent federal court precedents in which proposed settlements have been wholly or partially rejected because the compensation proposed to be paid to the class counsel was disproportionate to the real benefits to be provided to class members.

S. Rep. 109-14, at 31 (2005), as reprinted in 2005 U.S.C.C.A.N. 3, 32.

While plaintiff claims that the settlement is not a coupon settlement, Dkt. 102 at 19-20, this contention is belied by the text of CAFA and the cases interpreting it. The parties cannot rely on their characterizations to evade the effects of CAFA; the legal effect of the relief "is governed by functions rather than labels." *Hertz Corp. v. Alamo Rent-A-Car*, 16 F.3d 1126, 1131 (11th Cir. 1994). Countless courts have rejected similar semantic efforts to avoid the legal conclusion that certain relief constitutes a coupon, and they demonstrate that both the Membership and $5 voucher are coupons.[1]

### 1. The $5 vouchers are coupons.

Coupon is not defined in CAFA and must be given its ordinary meaning. *See Kouichi Tanigushi v. Kan Pac. Saipan, Ltd.*, 566 U.S. 560, 566 (2012). "A coupon may be defined as a certificate or form 'to obtain a discount on merchandise or services,'" and "Webster's also defines coupons as 'a form surrendered in order to obtain an article, service or accommodation.' Coupons are commonly given

---

[1] Even if the Court holds that only one of these is a coupon, Section 1712 of CAFA still applies. *In re Lumber Liquidators Chinese-Manufactured Flooring Prods. Mktg, Sales Prac. & Prods. Liab. Litig.*, 952 F.3d 471, 491 (4th Cir. 2020) ("*Lumber Liquidators*") (finding argument to the contrary "unconvinc[ing]"); *Rougvie v. Ascena Retail Grp., Inc.*, 2016 WL 4111320, 2016 U.S. Dist. LEXIS 99235, at *84 (E.D. Pa. July 29, 2016) (applying CAFA to settlement where class could choose between cash or store merchandise vouchers as "the only consistent reading of the Act"); *McKnight v. Uber Techs., Inc.*, 2019 U.S. Dist. LEXIS 136706, 2019 WL 3804676 (N.D. Cal. Aug. 13, 2019) (applying CAFA notwithstanding cash option).

for merchandise for which no cash payment is expected in exchange." *Dardarian v. Officemax N. Am., Inc.*, No. 11-cv-00947, 2013 U.S. Dist. LEXIS 98653, at *6-7 (N.D. Cal. July 12, 2013) (quoting WEBSTER'S NINTH NEW COLLEGIATE DICTIONARY (1988)). Not only does this ordinary meaning of "coupon" comport with the ordinary meaning of "voucher," *id.*, but Congress evinced an intent for the terms to be used interchangeably. *Redman v. Radioshack Corp.*, 768 F.3d 622, 636 (7th Cir. 2014). Simply put, "any type of discount, credit, gift card, or voucher" is "a coupon under CAFA." *Hendricks v. Ference*, 754 Fed. Appx. 510, 514 (9th Cir. 2018) (Friedland, J., dissenting).

The $5 vouchers here are nothing more than certificates "to obtain a discount on merchandise or services." *Dardarian*, 2013 U.S. Dist. LEXIS 98653, at *6-7. That the parties used the euphemism "voucher" in place of "coupon" does not change the underlying substance of the relief. *See, e.g.*, *Inkjet*, 716 F.3d at 1176 ("e-credits" are a "euphemism" for coupons); *EasySaver*, 906 F.3d 747 ("credits"); *Figueroa*, 517 F. Supp. 2d at 1320 ("merchandise credits" are coupons); *see also In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 952 (9th Cir. 2015) ("*Online DVD*") (courts should "ferret[] out the deceitful coupon settlement that merely co-opts the term 'gift card' [or here, voucher] to avoid CAFA's requirements").

Even if the Court is inclined to disregard the ordinary meaning of coupon and apply the test outlined in *Online DVD*, which itself departed from the language of the statute, the $5 "vouchers" are still coupons. *Online DVD* identified several features that distinguished the gift cards provided under the settlement at issue there from coupons subject to CAFA: they "can be used for any products on walmart.com, are freely transferrable … and do not expire, and do not require consumers to spend their own money." 779 F.3d at 951. The court emphasized that the gift cards allowed class members to purchase, without spending any of their own cash, their "choice of a large number of products from a large retailer" (walmart.com). *Id.* at 952 (expressly confining its holding to walmart.com gift cards "without making a broader pronouncement about every type of gift card that might appear"). What "separates a Walmart gift card from a coupon is not merely the ability to purchase an entire product as opposed to simply reducing the purchase price, but also the ability to purchase one of many different types of products." *Id.* Non-expiring gift cards, as a "fundamentally distinct concept in American life from coupons," operate essentially as cash. *Id.* Moreover, *Online DVD* class members were not forced to do further business with the defendant to realize the benefit because the settlement

allowed them to choose cash instead of a gift card. *Id.* As such, the settlement was not similar to those that motivated Congress to enact CAFA by leaving class members with "little or no value." *Id.* at 950.

The $5 vouchers provided under the settlement here differ sharply from the gift cards of *Online DVD*; they are cut from the same CAFA cloth as the credits in *EasySaver*. As in *EasySaver*, Spartan is "decidedly not [a] giant retailer[]" and "class members can only use the credits to purchase items from a limited universe of products." *Compare* 906 F.3d at 757, *with* Duggan Decl., ¶¶ 4, 11. As in *EasySaver*, class members cannot elect cash instead of a coupon. *Compare* 906 F.3d at 757, *with* Dkt. 102-3 at 8-10. As in *EasySaver*, the vouchers contain an expiration date. *Compare* 906 F.3d at 757, *with* Dkt. 102-3 at 9. And, as in *EasySaver*, the vouchers are not gift cards under applicable law, and thus unlike gift cards, cannot be redeemed for cash. The following chart illuminates where the $5 vouchers to Spartan fall along the *Online DVD/EasySaver* continuum:

|  | *Online DVD* | *EasySaver* | *Spartan* ($5 voucher) |
|---|---|---|---|
| Face Value | $12 | $20 | $5 |
| Expiration Date | No | One year after distribution | Two years after distribution |
| Transferable | Yes | Yes | Yes |
| Usable in conjunction with other outside coupons | Yes | No | No |
| Outside offers available that eliminate marginal utility | No | Yes | Yes |
| Crackable (*i.e.*, can value be retained over multiple purchases) | Yes | No | No |
| Redeemable for cash | No | No | No |
| Elected by class members in lieu of cash | Yes | No | No |
| Number of items that can be purchased at least in part | 5-8 million[2] | Undisclosed | Undisclosed |

---

[2] Declaration of Theodore H. Frank in Support of Opposition of Brian Perryman to Motion for Final Approval, *In re EasySaver Rewards Litigation*, No. 3:09-cv-2094-BAS (WVG), Dkt. 310-1 at 5 (S.D. Cal. Jul. 2, 2015).

  
|  | *Online DVD* | *EasySaver* | *Spartan* ($5 voucher) |
|---|---|---|---|
| Number of items ("SKUs") that can be purchased in whole (excluding service charges and taxes) | Over 700,000[3] | 15-25 | ~15 |

While the Eleventh Circuit has yet to weigh in on what constitutes a coupon, the court in *Figueroa* characterized $19 Sharper Image merchandise credits as coupons under CAFA. 517 F. Supp. 2d at 1320. In criticizing the settlement process generally, and the coupons specifically, the court noted "deficiencies" on "key points," including product selection (limited to Sharper Image branded products) and duration of the redemption period (two years). *Id.* at 1323. Likewise, the Court's characterization of the vouchers in *Mahoney v. TT of Pine Ridge, Inc.* as bearing the "hallmarks of the coupon settlements that Congress sought to more closely scrutinize" is apposite. No. 17-80029-CIV, 2017 WL 9472860, at *6 (S.D. Fla. Nov. 20, 2017). The court in *Mahoney* flagged several issues: "the voucher[s] can only be used [with the defendant], the entity that allegedly harmed the class," they "expire within one year of issuance," and "they are not redeemable for cash." *Id.* While the court found CAFA inapplicable because there was a lesser cash option available, there is no similar option here.[4] Instead, for a limited period of two years, product selection is limited to offerings of Spartan, who allegedly harmed the class, and the $5 voucher is not redeemable for cash.

Similarly, the products available for purchase on Spartan's online store do not resemble the household cash-fungible inventory that a giant retailer like Walmart.com provides. *See* Duggan Decl., ¶¶ 4, 11, 13; *Lumber Liquidators*, 952 F.3d at 490 (determining that Lumber Liquidators (which offers flooring and items such as table and tile saws, thermostats, countertops, staircase materials, tools, butcher blocks, cleaning supplies and thermostats) was unlike a "giant retailer").[5] Likewise, the

---

[3] Declaration of Theodore H. Frank in Support of Opposition of Brian Perryman to Motion for Final Approval, *In re EasySaver Rewards Litigation*, No. 3:09-cv-2094-BAS (WVG), Dkt. 310-1 at 5-6 (S.D. Cal. Jul. 2, 2015).

[4] The existence of a lesser cash option should not affect the coupon analysis, and the conclusion in *Mahoney* is contrary to the weight of authority. *See supra* at 6 n.1; *see also Hadley v. Kellogg Sales Co.,* 2020 WL 836673, 2020 U.S. Dist. LEXIS 30193, at *26 (N.D. Cal. Feb. 20, 2020).

[5] Indeed, the vouchers here are comparable to the e-credits, determined to be CAFA coupons, in *Inkjet*. 716 F.3d at 1181-86. The *Inkjet* products fell into a narrow range of categories (printers and printer supplies)—just like the spa and massage-related products available here. *Id.*

vouchers cannot be redeemed through third-party retailers, and all class members with a single voucher will have to spend money to utilize the vouchers. *See Chambers v. Whirlpool Corp.*, 980 F.3d 645, 660 (9th Cir. 2020) (10-20% dishwasher "rebate" was a CAFA coupon as it required out-of-pocket expenditure, was limited to certain brands of dishwashers, and contained an expiration that would likely result in a low redemption rate); *Linneman v. Vita-Mix Corp.*, 394 F. Supp. 3d 771, 780 (S.D. Ohio 2019) ($70 gift card to purchase Vita-Mix blenders or containers that were more expensive than the gift card and could only be used through Vita-Mix website, among other restrictions, was a CAFA coupon), *rev'd on other grounds, Linneman v. Vita-Mix Corp.*, 970 F.3d 621, 624 (6th Cir. 2020). *A fortiori*, the $5 vouchers here constitute CAFA coupons.

### 2. The Spartan+ Membership is a coupon.

The parties tout several Membership benefits: (1) access to Spartan Fit App, (2) merchandise discounts for purchases from Spartan's online store and free shipping and handling, and (3) other free perks, if a class member pays approximately $200 to enter a Spartan event. Dkt. 110, at 6-7. In other words, class members who do not opt-out will surrender their claims against Spartan "in order to obtain an article, service or accommodation." *Dardarian*, 2013 U.S. Dist. LEXIS 98653, at *6-7 (quoting WEBSTER'S NINTH NEW COLLEGIATE DICTIONARY (1988)).

The Membership bears many of the same coupon hallmarks as the $5 voucher. The locus of the Membership is Spartan, as all of the alleged benefits of the Membership require continued use of either the Spartan website or a Spartan event. *See* Dkt. 110, at 6-7. The discount requires class members to spend additional money with Spartan, as does the free event photo downloads and other event perks that require a class member to pay hundreds of dollars for entry into another event. *See* Dkt. 110, at 6-7. *Ipso facto*, class members will be limited to purchasing from a small universe of items, Spartan-branded exercise-related products. *See* Dkt. 110, at 6-7; *see also Lumber Liquidators*, 952 F.3d at 490 (Lumber Liquidators was unlike a "giant retailer"); *EasySaver*, 906 F.3d at 757 ("class members can only use the credits to purchase items from a limited universe of products"); *Figueroa*, 517 F. Supp. 2d at 1320 ($19 Sharper Image merchandise credit was coupon under CAFA; limited to Sharper Image branded products). Likewise, the Membership is set to expire after four months, does not appear to be transferrable, and is not redeemable for cash. *See* Dkt. 110, at 6-7; *see also EasySaver*, 906 F.3d at 757.

The fact that one component of the Membership provides a full service without additional

payment—access to the Spartan Fit App—does not transform this part of the settlement into a non-coupon settlement. A coupon "entitles its holder to a free or discounted product," "a service or product for free or at a lower price." *Lumber Liquidators*, 952 F.3d at 489 (quoting contemporary dictionaries); *see also In re Southwest Airlines Voucher Litig..*, 799 F.3d 701, 706 (7th Cir. 2015) (continuing to reject the distinction between coupons good for an entire product and coupons good for price discount, and holding voucher for free drink on a Southwest flight is a CAFA coupon); *see also Cline v. TouchTones Music Corp.*, 765 Fed. Appx. 488, 492 (2d Cir. 2019) (affirming decision to apply CAFA and award fees based on the number of settlement song credits redeemed and remarking that CAFA "directives on 'coupon settlements' are certainly informative here, if not controlling).

Citing many of these same concerns, the court in *Wilson v. DirectBuy, Inc.*, likened "continued or renewed membership" to CAFA coupons. 2011 WL 2050537, 2011 U.S. Dist. LEXIS 51874, at *24 (D. Conn. May 16, 2011). The defendant "receives a clear benefit by maintaining its members for as long as possible" and could increase the defendant's membership base, as the members may be convinced to sign up for additional terms. *Id.* at *24-25. Members may also purchase additional items from the defendant, resulting in further gains for the defendant. *Id.* at *25.

Here too, even in that tiny corner of the settlement relief that does not require an additional purchase, class members are still forced to interact with Spartan, and Spartan still obtains free advertising. The effect of the Membership is nearly identical to the effect of the $5 voucher—*i.e.*, the forced relationship between a class member and Spartan when using the membership or voucher. Where two non-exclusive definitions "fall within the plain language" of a non-defined statutory term, and "both create the very dangers and risks that Congress meant … to address," the term should be interpreted to encompass both readings. *See Smith v. United States*, 508 U.S. 223, 240-241 (1993). It would elevate form over substance to hold other than that the Membership is a CAFA coupon.

*      *      *

In short, the Membership and vouchers expire, can be used only for a narrow range of Spartan-branded exercise-related items, and fall squarely within any meaning of "coupon" under CAFA.

**B.     In economic reality, the settlement impermissibly benefits class counsel at the expense of the class.**

Regardless of whether the Court determines that the settlement relief qualifies as "coupons"

under CAFA, the settlement still unfairly affords class counsel "preferential treatment"[6] at the expense of the class. *See Roes*, 944 F.3d at 1052 (vacating settlement approval without reaching the CAFA question). Preferential treatment to the representative makes a settlement unfair because neither class counsel nor the named representative are entitled to disregard their "fiduciary responsibilities" and enrich themselves while leaving the class behind. *Pampers*, 724 F.3d at 718.

*Roes* reiterates three subtle signs of a class action settlement that is inequitable between class counsel and the class in violation of Rule 23(e)(2)(C)(iii): (1) A disproportionate distribution of fees to counsel; (2) A clear sailing agreement; and (3) A reversion of unclaimed funds or unawarded fees to the defendant. 944 F.3d at 1049.

### 1.    Class counsel asks for a disproportionate distribution of fees.

The first sign of preferential treatment is "when counsel receive a disproportionate distribution of the settlement, or when the class receives no monetary distribution but class counsel are amply rewarded." *Bluetooth*, 654 F.3d at 947; *accord GM Trucks*, 55 F.3d at 803 ("[N]on-cash relief…is recognized as a prime indicator of suspect settlements."); *see also* American Law Institute, *Principles of the Law of Aggregate Litigation* § 3.05, *comment b* at 208 (2010) ("a proposed settlement in which the class receives an insubstantial payment while the fees requested by counsel are substantial could raise fairness concerns"). This is an example of the latter scenario; the class receives coupons and prospective injunctive relief while the agreement permits the representatives to seek, unopposed, an award of $2.29 million in fees, and $10,000 in incentive awards.

A proportionate attorney award is roughly 25% of the settlement value.[7] "In mathematical terms, the equation for the percentage method in constructive common-fund cases effectively works

---

[6] *Pampers*, 724 F.3d at 718 (quoting *Vassalle v. Midland Funding LLC*, 708 F.3d 747, 755 (6th Cir. 2013))

[7] *See Camden I,* 946 F.2d at 774-75 (establishing benchmark of "20 to 30% range"); Theodore Eisenberg & Geoffrey P. Miller, *Attorneys Fees & Expenses in Class Action Litigation: 1993-2008*, 7 J. OF EMPIRICAL LEGAL STUD. 248, 262 (2010) (surveying cases and finding a mean fee in consumer cases of 25%); Brian T. Fitzpatrick, *An Empirical Study of Class Action Settlements and their Fee Awards*, 7 J. EMPIRICAL LEGAL STUD. 811, 833 (2010) (analyzing 688 class action settlements in 2006 and 2007 and finding a mean of 25% and a median of 25.4% for the award of attorneys' fees "with almost no awards more than 35 percent").

like this: the actual payment to counsel is the product of (1) the percentage the court decides to award, and (2) the payment to the class plus the expected payment to counsel (together, the class benefit)." *Home Depot*, 931 F.3d at 1092. Conversely, an award that vastly exceeds the 25% benchmark is disproportionate and renders the settlement unfair. *See, e.g., Pampers*, 724 F.3d 713 (vacating settlement where fees cannibalized $2.7 million of the $3.1 million constructive common fund value); *Roes*, 944 F.3d at 1056 (vacating approval where fees amounted to 45% of the cash settlement component). To reach the appropriate ratio here, the class benefit would have to be valued at approximately $6.87 million.[8] This $6.87 million cannot consist of the face value of the coupon relief, as "the portion of any attorney's fee award to class counsel that is attributable to the award of the coupons shall be based on the value to class members of the coupons that are redeemed." 28 U.S.C. § 1712(a); *see also Inkjet*, 716 F.3d at 1186 n.18. The burden of proving that quantum of benefit lies with the proponents of the settlement. *Pampers*, 724 F.3d at 719; *accord Holmes*, 706 F.2d at 1147. Class counsel cannot meet this burden: (1) the actual redemption rate of coupons is typically in the low single digits, (2) setting aside the redemption rate, class counsel's valuation of the relief is inflated, and (3) class counsel fails to attempt any valuation of the prospective injunctive relief.

*First*, evaluating whether a coupon settlement is unfairly skewed toward class counsel will require a court to make estimates from redemption rates in analogous cases,[9] which shows the redemption rate will almost certainly be in the low single digits. *See, e.g., Galloway v. Kan. City Landsmen, LLC*, 833 F.3d 969, 971 (8th Cir. 2016) (0.045% of distributed certificates were redeemed); *Swinton v. Squaretrade, Inc.*, 454 F. Supp. 3d 848, 866 (S.D. Iowa 2020) ("a redemption rate of 3% would be largely in line with typical redemption rates in email coupon campaigns") (citing surveys); Declaration of David Tjen, *Knapp*, No. 3:16-cv-00768-WHO, Dkt. 84-7 (N.D. Cal. Aug. 29, 2018) (declaring that $142,940 worth of vouchers were redeemed; that amounts to only 0.71% of the $20 million face value

---

[8] 2.29 / (2.29 + 6.87) = 25%

[9] CAFA may allow such *ex ante* predictive judgments when approving a coupon settlement as fair, though it requires deferring any fee award until after the coupons have been redeemed. *Compare Redman*, 768 F.3d at 634 (allowing estimation of redemption rate based upon considered economic judgment at settlement approval stage), *with Inkjet*, 716 F.3d at 1181-83 & 1187 n.19 (requiring actual accounting of coupons redeemed before an attorneys' fee attributable to them may be awarded; further suggesting bifurcating or staggering the fee award).

distributed); *Davis v. Cole Haan, Inc.*, 2015 WL 7015328, 2015 U.S. Dist. LEXIS 153434, at *5 (N.D. Cal. Nov. 12, 2015) (2.3% of distributed vouchers were redeemed); James Tharin & Brian Blockovich, *Coupons and the Class Action Fairness Act*, 18 GEO. J. LEGAL ETHICS 1443, 1445, 1448 (2005) (typically "redemption rates are tiny," "mirror[ing] the annual corporate issued promotional coupon redemption rates of 1-3%"); Steven B. Hantler & Robert E. Norton, *Coupon Settlements: The Emperor's Clothes of Class Actions*, 18 GEO. J. LEGAL ETHICS 1343, 1347 (2005) (noting one settlement where only 2 of more than 96,000 coupons were redeemed). To redeem the Membership, a class member would at least need to avail itself of some element of the membership benefits, whether by purchasing merchandise on the Spartan website, or by using perks in conjunction with another race event, or by downloading and using the fitness app. Even if the redemption rate is an unusually robust 5%—or $1.28 million of the retail value—class counsel will have allocated over 64% of settlement benefit to themselves. Under Eleventh Circuit precedent and Rule 23(e)(2)(C)(iii), the settlement should be rejected. *See, e.g.*, *Camden I*, 946 F.2d at 774-75.

      *Second*, even if the Court finds that the relief is not a coupon, class counsel cannot meet their burden of showing that the value of the benefit is $6.87 million. If not a coupon, the Membership[10] is an in-kind benefit, which class counsel values using the retail price, but "[t]he problem with using this method to award attorneys' fees is that it may vastly overinflate the value of the settlement to the class." *Manner v. Gucci Am., Inc.*, 2016 WL 6025850, 2016 U.S. Dist. LEXIS 142770, at *10 (S.D. Cal. Oct. 13, 2016) (rejecting percentage of fund award where fund was calculated based on value of in-kind benefit; "likelihood of every class member claiming this gift is low"). "Compensation in kind is worth less than cash of the same nominal value." *Synfuel Techs., Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646, 654 (7th Cir. 2006).

      It is the burden of the proponents of the settlement to overcome these hurdles and prove that the Membership "has actual value for consumers." *Pampers*, 724 F.3d at 719 (citing *Ault v. Walt Disney World Co.*, 692 F.3d 1212, 1216 (11th Cir. 2012)) (internal quotations and other citations omitted). The

---

      [10] If all of the class members elected the $5 vouchers, the maximum amount of the value of the $5 vouchers is $10 million. Dkt. 110-3, ¶ 44. This assumes a 100% redemption rate. Dkt. 110-3, ¶¶ 43-44. It also incorrectly assumes that all 2 million race registrations would allow a voucher, even though the settlement limits each class member to four vouchers.

parties do not submit any affirmative evidence about Spartan Fit usage rates, the number of current subscriptions, how many customers have purchased items using the included discount, and whether any members have utilized the so-called "premium" content, all of which is presumably in the possession of Spartan. Instead, the parties rely on the declaration of class counsel's retained expert, Soneet Kapila, but Kapila cannot overcome the parties' shortcomings, as his declaration only contains statistics about the fitness app industry generally and inapt comparisons to fitness apps that are significantly more popular. *See* Dkt. 110-3, ¶¶ 29-39; Duggan Decl., ¶¶ 16-20. The parties have failed to prove the Membership has actual value. *See Pampers*, 724 F.3d at 719 (parties failed to prove that a "rerun" refund program had actual value and did not even proffer "data as to the numbers of consumers who obtained refunds" in the earlier refund offer).

Turning to the only affirmative valuation evidence submitted, Kapila's declaration, the value of the Membership to the class is still inflated. Kapila assumes that 100% of class members would purchase the Membership at the retail price point and will take advantage of it, Dkt. 110-3, ¶¶ 31-39, but even a 5% redemption rate (~40,000 members) is an improbably high estimate. *See* James Tharin & Brian Blockovich, *Coupons and the Class Action Fairness Act*, 18 GEO. J. LEGAL ETHICS 1443, 1445, 1448 (2005) (typically "redemption rates are tiny," "mirror[ing] the annual corporate issued promotional coupon redemption rates of 1-3%"); *Swinton*, 454 F. Supp. 3d at 866 (citing white paper showing "coupons delivered via email accessed through a mobile device…were redeemed at a rate of 2% to 4%). In fact, Kapila's factual finding that there is significant demand for fitness apps demonstrates that there will likely be low demand for the Spartan Fit app. The demand for Peloton Digital Membership has ballooned over the past year, Dkt. 110-3, ¶ 27, as indicated by the 496,000 ratings for the Peloton app on the Apple Store. Duggan Decl., ¶ 16. Despite being on the market for nearly a year, as of March 27, 2021, the Spartan Fit app has 9 ratings. Duggan Decl., ¶ 17. *Cf. In re Yahoo! Inc. Customer Data Sec. Breach Litig.*, 2020 WL 4212811, 2020 U.S. Dist. LEXIS 129939, at *128 (N.D. Cal. July 22, 2020) ("If Settlement Class Members actually valued the Credit Services, the low response rate would make no sense."). Class members may also take advantage of free fitness apps— *e.g.,* Nike Training Club (all trainer-led workouts and programs free for anyone who signs up for a free membership), which has 238,000 ratings on the Apple Store. Duggan Decl., ¶ 20. There is little to no incremental benefit to giving class members a second fitness app if they are already satisfied with

another service. *See In re Anthem Inc. Data Breach Litig.*, 327 F.R.D. 299, 310 (N.D. Cal. 2018) ("[T]he Settlement's main form of relief…would not be of much value to Settlement Class Members who already have such services."). Kapila argues that the retail value is reasonable in comparison to the slightly more expensive Peloton Digital Membership and Apple Fitness+ Membership, yet he does not account for the free membership that Apple offers with the purchase of equipment or that both offer anyone interested in trying their programs. Duggan Decl., ¶¶ 18-19.

Nor is there any demonstrated interest in the Membership beyond the app. Indeed the membership is a new offering as of last month. Dkt. 110-3, ¶ 30. Spartan cannot control the valuation of this settlement by arbitrarily setting the retail price of a new service at a particular level. Nor can plaintiffs create out of thin air $3.2 million more of class value by using the monthly retail price instead of "one-third of the planned annual subscription rate." *Compare* Dkt. 110 at 5 (claiming value of $32/class member), *with* Dkt. 102-3 at 20 (claiming value of $28/class member).

The question then is what is the true class benefit to those class members who redeem their Membership. The answer for some class members is that the Membership provides no value. Duggan Decl., ¶¶ 21-22. More generally, assuming a generous 5% of class members utilize the Membership (~40,000), the class benefit could only be valued at $200,000 (using a $5 valuation), and the segregated $2.29 million fee fund would amount to 92% of the constructive common fund (even using full retail value, class counsel would only be fairly entitled to fees of slightly over $400,000). Anything more than $100,000 in fees is a disproportionate windfall to class counsel at the expense of the class.

*Third*, class counsel do not meet their burden to quantify any degree of class benefit from the cosmetic injunctive relief in order for it to be considered in the Court's fairness analysis. *See* Dkt. 110, at 8-9. Class counsel's forfeiture[11] of the issue makes good sense given the applicable law on valuing such injunctive relief and the "substantively empty" injunction itself requiring Spartan to designate its fee as an "Administrative, Insurance and Management" fee rather than as an "Insurance" fee. *Pearson*,

---

11 *See Kleiman v. Wright,* 2020 WL 1849407, 2020 U.S. Dist. LEXIS 65651, at *29 n.5 (S.D. Fla. Apr. 13, 2020) ("Issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.") (Bloom, J.) (internal citation omitted). Moreover, if class counsel later tries to value the injunctive relief after the deadline for objecting, it will be too late. *NPAS*, 975 F.3d at 1252 (Rule 23(h) requires fee motion to be filed prior to objection deadline so that "class members have full information when considering" and "objecting to … a fee request").

772 F.3d at 785. More generally, "[t]he fairness of the settlement must be evaluated primarily based on how it *compensates class members*—not on whether it provides relief to other people, much less on whether it interferes with the defendant's marketing plans." *Pampers*, 724 F.3d at 720 (internal quotation omitted; emphasis in original). "Future purchasers are not members of the class, defined as it is as consumers who have purchased [the product]." *Pearson*, 772 F.3d at 786. These are proper recognitions of the principle that the class is composed of people who interacted with defendant *in the past*; while the prospective injunctive relief can only benefit those who interact with defendant *in the future*.[12] Even in the scenario when prospective injunctive relief provides value, it is "easily manipulable by overreaching lawyers" and so may not typically be included as part of the value of the common fund. *Staton v. Boeing Co.*, 327 F.3d 938, 974 (9th Cir. 2003).

Whether the Court views this settlement as a coupon or in-kind settlement, both of which are indicators of suspicious settlements, class counsel seeks a windfall at the expense of class members. Such disproportionality makes the settlement unfair under Rules 23(e)(2)(A), (e)(2)(C)(iii), and it also makes class certification improper under Rules 23(a)(4), (g)(4) because an "extremely expedited settlement of questionable value accompanied by an enormous legal fee" casts doubt on the adequacy of counsel's representation. *GM Trucks*, 55 F.3d at 801-803. "If, as it appears, [class counsel] was indeed motivated by a desire to grab attorney's fees instead of a desire to secure the best settlement possible for the class, it violated its ethical duty to the class." *Tech. Training Assocs., Inc., v. Buccaneers Ltd. P'ship*, 874 F.3d 692, 694 (11th Cir. 2017).

## 2.   The settlement agreement contains a disfavored clear-sailing clause.

A second indication of preferential treatment for counsel is the presence of a "clear-sailing" clause—*i.e.*, where defendant consents not to challenge the award of fees to plaintiff's counsel. *Roes*, 944 F.3d at 1050-51. This is also present here. Dkt. 102-3, at 20. "Provisions for clear sailing clauses 'decouple class counsel's financial incentives from those of the class, increasing the risk that the actual

---

[12] Commentators also recognize the problem of fictive injunctive relief settlements that remit no benefit to class members. *See e.g.*, Erin L. Sheley & Theodore H. Frank, *Prospective Injunctive Relief and Class Settlements*, 39 HARV. J. L. & PUB. POL'Y 769, 832 (2016) ("[T]here should be a presumption against approval of such settlements or awarding fees for such relief outside of the actions against public institutions originally contemplated by Rule 23(b)(2).").

distribution will be misallocated between attorney's fees and the plaintiffs' recovery.'" *Vought v. Bank of Am.*, 901 F. Supp. 2d 1071, 1100 (C.D. Ill. 2012) (quoting *Int'l Precious Metals Corp. v. Waters*, 530 U.S. 1223, 1224 (2000) (O'Connor, J., respecting the denial of certiorari)). It indicates that the class attorneys have negotiated "red-carpet treatment" to protect their fee award while urging class settlement "at a low figure or less than optimal basis." *Pampers*, 724 F.3d at 718 (internal quotation omitted).[13] The "red carpet treatment" is especially pronounced in coupon cases, where class counsel have had little success in the face of defendants invoking section 1712's restriction on fees. *See Chambers*, 980 F.3d 645; *Linneman v. Vita-Mix Corp.*, 970 F.3d 621 (6th Cir. 2020). As such, a clear-sailing clause is a "questionable feature" that, "at least in a case…involving a non-cash settlement award to the class[,]…should be subjected to intense critical scrutiny." *Redman*, 768 F.3d at 637; *accord Guoliang Ma v. Harmless Harvest, Inc.*, 2018 WL 1702740, 2018 U.S. Dist. LEXIS 123322, at *12 (E.D.N.Y. Mar. 31, 2018); *see also* William D. Henderson, *Clear Sailing Agreements: A Special Form of Collusion in Class Action Settlements*, 77 TUL. L. REV. 813, 816 (2003) (courts should "adopt a per se rule that rejects all settlements that include clear sailing provisions.").

### 3.    The segregated fee fund acts as a disfavored kicker.

A third indication of preferential treatment is the presence of a "kicker" clause whereby class counsel's fee fund is segregated from the class benefit such that any unawarded fees revert to the defendant rather than going to benefit the class. *Bluetooth*, 654 F.3d at 948-49. In this case, the unawarded fees never leave Spartan's pocket. Dkt. 102-3, at 20. A segregated fee structure is an inferior settlement structure for one principal reason: the segregation of parts means that the Court cannot remedy any allocation issues by reducing fee awards and/or named representative payments. *See Pearson*, 772 F.3d at 786. There is "no apparent reason the class should not benefit from the excess allotted." *Roes*, 944 F.3d at 1059-60. Fee segregation thus has the self-serving effect of protecting class counsel by deterring scrutiny of the fee request. *See Pearson*, 772 F.3d at 786 (calling it a "gimmick for

---

[13] Negotiating class benefit and fees separately does not allay the inherent conflict when representatives negotiate their own compensation unless "fee negotiations [are] postponed until the settlement was judicially approved." *In re Cmty. Bank of N. Va. & Guar. Nat'l Bank of Tallahassee Second Mortg. Litig.*, 418 F.3d 277, 308 (3d Cir. 2005); *accord Pearson*, 772 F.3d at 786-87 (finding implausible that separate negotiation could benefit the class); *Richardson v. L'Oreal United States*, 991 F. Supp. 2d 181, 204 (D.D.C. 2013) (separate negotiation cannot cure unfair allocation between class and counsel).

defeating objectors"). A court and potential objectors have less incentive to scrutinize a request because the kicker combined with the clear-sailing agreement means that any reversion benefits only the defendant that had already agreed to pay that initial amount. Charles Silver, *Due Process and the Lodestar Method*, 74 TUL. L. REV. 1809, 1839 (2000) (such a fee arrangement is "a strategic effort to insulate a fee award from attack"); Lester Brickman, LAWYER BARONS 522-25 (2011) (arguing that reversionary kicker is *per se* unethical). For these reasons, a "kicker" clause should be subject to a "strong presumption of…invalidity." *Pearson*, 772 F.3d at 787.

      **C.**    **If awarded, the settlement improperly favors the named representative over absent class members through its "Plaintiff's Service Awards."**

The Court's Preliminary Approval Order notes that case contribution awards for class representatives are impermissible. *See* Dkt. 107, at 14. Accordingly, the Court preliminarily approved a $10,000 "incentive award for purposes of the issuance of the Class Notice" but held that it would consider whether to ultimately approve at the final approval hearing. Dkt. 107, at 14. As the Court notes, the Eleventh Circuit prohibits incentive awards that "compensates a class representative for his time and rewards him for bringing a lawsuit." *NPAS*, 975 F.3d at 1260. Even apart from *NPAS*, it is likely that a five-digit incentive award in a settlement that recovers no cash for absent class members renders the class representative inadequate under Rule 23(a)(4) and the settlement unfair under Rule 23(e)(2)(D). *See Holmes*, 706 F.2d at 1148; *Pampers*, 724 F.3d at 722; *Radcliffe v. Experian Info. Solutions*, 715 F.3d 1157, 1161 (9th Cir. 2013); *Murray v. GMAC Mortg. Corp.*, 434 F.3d 948, 952 (7th Cir. 2006).

**IV.**    **Alternatively, if the Court approves the settlement, it should defer the fee award until after the coupon redemption period.**

CAFA requires that attorneys' fees founded on coupon relief must be based on the actual redemption of the coupon. 28 U.S.C. §§ 1712(a), (c). While the Ninth Circuit interprets CAFA to mandate a percentage-based fee award in coupon settlements, other circuits interpret it merely to limit how the percentage-based method can be applied, with an option to use the lodestar method instead. *See Linneman*, 970 F.3d at 627-28 (detailing the split). The Eleventh Circuit has not weighed in, and Nolan submits that the Ninth Circuit's reasoning provides the best reading of the statute.

That said, the conflict doesn't matter for purposes of this case because the percentage-based award plaintiff seeks here would violate every circuit's reading of the statute by "using the face of coupons in determining the value of a settlement." *Id.* at 928. And plaintiff neither requests, nor

submits sufficient information, for the Court to award fees on a lodestar basis. All we are told is that in gross "Class Counsel spent over 1,200 hours" on the investigation and litigation. Dkt. 110-5 at 15-16. This fails to meet the bare minimum of "identify[ing] the general subject matter of [their] time expenditures." *Hensley v. Eckerhart*, 461 U.S. 424, 437 n.12 (1983). "Generalized statements that the time spent was reasonable or unreasonable of course are not particularly helpful and not entitled to much weight… [T]he district court must be reasonably precise in excluding hours thought to be unreasonable or unnecessary…" *Norman v. Housing Auth. of Montgomery*, 836 F.2d 1292, 1301 (11th Cir. 1988) (abrogated on other grounds by *Perdue v. Kenny A.*, 559 U.S. 542, 130 S. Ct. 1662 (2010)). Would class counsel have submitted such deficient records were defendants afforded the opportunity to challenge the fees? Doubtful. Where there is clear-sailing, however, plaintiffs have a tendency to "handicap[]" objectors by not submitting "the details of class counsel's hours and expenses." *Redman*, 768 F.3d at 638 (holding that such a procedure violated Rule 23(h)).

Moreover even if all 1200 claimed hours were reasonably expended at reasonable $350 blended market rates,[14] a multiplier of more than 5 would be required to reach the requested $2.29 million amount. Yet in a CAFA coupon settlement of this type, no upward multiplier at all would be warranted. *See, e.g., Linneman*, 970 F.3d at 632-33; *Chambers*, 980 F.3d at 665. Ultimately, the consequence is that only the percentage method could potentially justify class counsel's fee request. If the Court approves the settlement, it should defer the fee request pending a report on redemptions after the 4 month membership period and after the 2 year voucher expiration period.

## CONCLUSION

The proposed coupon settlement disproportionately benefits class counsel at the expense of class members. The proposed settlement also contains other problematic provisions—clear sailing and a kicker. Given the Court's fiduciary duty to the class, one that is heightened under CAFA, the proposed settlement should not be approved. Alternatively, if the Court approves the settlement, it should not award fees until after the coupon redemption period.

---

[14] Ronald L. Burdge, UNITED STATES CONSUMER LAW ATTORNEY FEE SURVEY REPORT, 2017-2018 ("Survey Report"), at 258, *available at* https://burdgelaw.com/wp-content/uploads/2019/10/US-Consumer-Law-Attorney-Fee-Survey-Report-2017-2018.pdf (declaring median rate of $350/hr for class action practitioners in Miami).

Date: April 6, 2021                    Respectfully submitted,

/s/ Joseph S. Van de Bogart
Joseph S. Van de Bogart, Esq.
Florida Bar No: 084764
VAN DE BOGART LAW, P.A.
2850 North Andrews Avenue
Fort Lauderdale, FL 33311
Telephone: (954) 567-6032
Facsimile: (954) 568-2152
Email Joseph@vandebogartlaw.com

Adam R. Duggan (*pro hac vice* admission pending)
TN Bar # 035121
adam.duggan@hlli.org
HAMILTON LINCOLN LAW INSTITUTE
CENTER FOR CLASS ACTION FAIRNESS
1439 Ramsay St.
Alcoa, TN 37701
Phone: (865) 696-5033

*Attorneys for Objector Jed Nolan*

Pursuant to § V.D(a) of the Stipulation of Settlement, I declare under penalty of perjury that I am a member of the Class and that all matters referenced herein of which I have personal knowledge are true and correct.

Date: 4/3/21

_____
Jed Nolan

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing was filed with the Court via the CM/ECF system, which will send notification of such filing to all attorneys of record.

/s/ Joseph S. Van de Bogart
Joseph S. Van de Bogart, Esq.
Florida Bar No: 084764