**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**Case No. 20-cv-20836-BLOOM/Louis**

AARON FRUITSTONE, on behalf of
himself and others similarly situated,

      Plaintiff,

v.

SPARTAN RACE, INC.,

      Defendant.

_____/

**ORDER GRANTING FINAL APPROVAL TO**
**CLASS ACTION SETTLEMENT AND ENTERING FINAL JUDGMENT**

**THIS CAUSE** is before the Court upon Plaintiff's Motion for Final Approval of Class
Action Settlement, Class Counsel's Application for Attorneys' Fees and Expenses, Notice
Regarding Service Awards, and Incorporated Memorandum of Law, ECF No. [110] ("Motion").
Two objections were timely filed. ECF Nos. [113] & [117]. The Court has carefully reviewed the
Motion, all supporting and opposing submissions, the record in this case, the arguments of the
parties made at the May 7, 2021 Fairness Hearing, the applicable law, and is otherwise fully
advised. For the reasons that follow, the Motion is granted, and the objections are overruled.

**I.      BACKGROUND**

On February 26, 2020, Plaintiff Aaron Fruitstone ("Settling Plaintiff"), on behalf of himself
and others similarly situated, initiated this action against Defendant Spartan Race, Inc.
("Defendant" or "Spartan"). ECF No. [1]. On April 13, 2020, Plaintiff filed the operative Amended
Complaint, ECF No. [15], alleging that Defendant's representations regarding the "Racer
Insurance Fee," objectively construed, would lead a reasonable consumer to believe that this
mandatory, nonrefundable $14 charge is used solely to purchase insurance on behalf of the race

registrant. The Amended Complaint alleges that, in reality and unknown to consumers, Defendant uses the Racer Insurance Fees to defray administrative expenses and as a hidden profit center for Spartan. *Id.* ¶¶ 20-21. According to Plaintiff, Defendant's representations regarding the Racer Insurance Fee were deceptive and the class members suffered damages. The Amended Complaint asserts claims for violations of the Massachusetts Consumer Protection Law, Massachusetts General Laws, Chapter 93A, *et seq.*, and the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. § 501.201 *et seq.*

On May 4, 2020, Defendant filed a Motion to Transfer this Case Under 28 U.S.C. § 1404(A) or, in the alternative, to Dismiss Plaintiff's Amended Complaint, ECF No. [24] ("Motion to Dismiss"). After extensive briefing and oral argument, the Court denied Defendant's Motion to Dismiss. ECF No. [36]. Thereafter, the parties engaged in extensive discovery, exchanging documents and data, conducting several depositions, and participating in a hearing on discovery disputes before Magistrate Judge Lauren Louis. Plaintiff filed his Motion for Class Certification on September 3, 2020, ECF No. [38], which was fully briefed as of December 23, 2020, ECF Nos. [63]-[65], [72]-[73], & [95].[1] The parties then moved to stay the proceedings pending mediation before experienced mediator Michael D. Young. ECF Nos. [79] & [81]. On December 1, 2020, the parties participated in a formal mediation, ECF No. [81]. After extensive negotiations, ECF No. [102-2], the parties entered into a class-wide settlement agreement, memorialized in a Stipulation of Settlement ("Settlement Agreement"), dated January 28, 2021, ECF No. [102-3].

The benefits of the Settlement can be summarized as follows. First, each Class Member is entitled to elect to receive either: (1) one four-month free membership to the "Spartan+

---

[1] The Court heard oral argument on the Motion for Class Certification on December 29, 2020. ECF No. [97].

Membership Program," or (2) one $5 electronic voucher per each paid registration during the Class Period, up to a maximum of four (4) total electronic vouchers per Class Member. Additionally, Defendant has agreed to provide injunctive relief, which is described in detail below, that will benefit Class Members as well as future consumers. ECF No. [102-3].

On January 28, 2021, Plaintiff filed an Unopposed Motion for Preliminary Approval of Class Action Settlement and Certification of the Settlement Class. ECF No. [102]. The Court thereafter granted preliminary approval of the proposed class action settlement set forth in the Settlement Agreement and provisionally certified the Settlement Class for settlement purposes only. ECF No. [107] ("Preliminary Approval Order"). On May 7, 2021, the Court held a duly noticed Final Approval Hearing to consider: (1) whether the terms and conditions of the Settlement Agreement are fair, reasonable and adequate; (2) whether Judgment should be entered dismissing the Settling Plaintiff's claims on the merits and with prejudice, including the claims of Settlement Class Members; and (3) whether and in what amount to award Attorneys' Fees and Expenses to Class Counsel and a Case Contribution Award to the Settling Plaintiff. ECF Nos. [107] & [131]. Objectors Jed Nolan and Frank Mari (collectively, "Objectors") were present at the hearing. ECF No. [131]. Following the Final Approval Hearing, pursuant to this Court's Order to Show Cause, ECF No. [132], Class Counsel filed a supplemental declaration regarding their expenses incurred in connection with this litigation, ECF No. [133].

## II.    DISCUSSION

During the Final Approval Hearing, the Court set forth its detailed findings as to each of the relevant considerations raised in the Motion. These findings are set forth again below.

### A.  Jurisdiction

The Court finds that it has personal jurisdiction over the Parties and the Settlement Class Members, and that it has subject-matter jurisdiction over this action and the Released Claims, as defined in the Settlement Agreement,[2]  pursuant to 28 U.S.C. § 1332(d)(2) such that it has the authority to approve the Settlement Agreement. *See* ECF No. [15] ¶¶ 12-14; *see also David v. Am. Suzuki Motor Corp.*, No. 08-cv-22278, 2010 WL 1628362, at *2 (S.D. Fla. Apr. 15, 2010) (concluding that the Court has "jurisdiction over the Settlement Class because its members were provided with proper notice of the proposed Settlement, its consequences, their right to be excluded, and their right to be heard." (citing *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 811-12 (1985); *In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 148 F.3d 283, 306 (3d Cir. 1998) ("[T]he district court obtains personal jurisdiction over the absentee class members by providing proper notice of the impending class action and providing the absentees with the opportunity to be heard or the opportunity to exclude themselves from the class.")).

### B.  Terms of the Settlement

#### 1.  The Spartan+ Membership Program ("Spartan+ Program")

Each Class Member will be provided with a free four-month subscription to the Spartan+ Program, unless they select the alternative relief. ECF No. [102-3] ¶ III.A. The Spartan+ Program, launched in March 2021, includes: (1) subscription to an enhanced Spartan Fit App (formerly $14.99/month), including online workouts, training programs, activity tracking and more from world class coaches; (2) free shipping and handling for merchandise ordered from Spartan's

---

[2] *See* ECF No. [102-3] II.A. ("Released Claims" means "any and all actions, claims, demands, rights, suits, debts, and causes of action of whatever kind or nature against the Released Parties, including damages, costs, expenses, penalties, equitable relief, injunctions, and attorneys' fees, known or unknown, suspected or unsuspected, in law or in equity that arise out of or relate to the factual allegations and claims asserted in this case individually and/or on a class wide basis.").

website; (3) a 20% discount applicable to online merchandise purchases; (4) exclusive discounts on select Spartan merchandise available to Spartan+ members; (5) free, downloadable, high-resolution photo downloads (without watermarks) after events; (6) access to other "members only" premium content on Spartan's website; (7) express race day registration; (8) a Club Area for post-race recovery; (9) guaranteed start time choice for races; and (10) advanced race analysis to help participants with their fitness goals and to complete races. ECF No. [110-3] ¶ 30. Importantly, the Settlement Class Members are not required to provide any credit card to initiate the subscription, and the subscriptions will automatically terminate at the end of four months, unless a Class Member affirmatively chooses to extend it. ECF No. [102-3] ¶ III.A.

Plaintiff's expert, Soneet R. Kapila, has opined that this pricing is a "reasonable market-based retail value for the Spartan+ Membership," which includes benefits that "compare favorably to other digital fitness memberships, such as Peloton and Apple+," and therefore "the value of the free Spartan+ Program afforded by the proposed Settlement approximates its retail value of $7.99 per month or $32 for the four-month free membership period allowed under the Settlement Agreement." ECF No. [110-3] ¶¶ 32-39. Thus, "the aggregate market-based retail value made available to Class Members for the Spartan+ Program component of the proposed Settlement totals $25.6 million." *Id*. ¶ 39.

### 2. Electronic vouchers for Spartan Merchandise

As an alternative to the four-month free subscription to the Spartan+ Program, each Class Member may elect to receive one $5 electronic voucher per each event for which they paid a full registration fee during the Class Period, up to a total of 4 electronic vouchers (for a combined value of $20). ECF No. [102-3], ¶ III.B. Each voucher provides Class Members a $5 credit toward the purchase of any non-discounted merchandise on Spartan's website. *Id*.

There are 25 non-discounted merchandise items available for sale on the Spartan website for $5 or less, and Defendant has no intention of removing said items as a result of this Settlement. *Id.*; *see also* ECF No. [110-3] ¶¶ 41-44. Additionally, there are 100 non-discounted items available for sale for $20 or less. *Id.* ¶ 41.

The electronic vouchers are fully transferable to friends and family and will be valid for two years from the date of issuance. ECF No. [102-3] ¶ III.B. Defendant currently sells Spartan gift cards in various dollar amounts that are utilized in a similar manner as the electronic voucher. ECF No. [110-5] ¶ 23. Mr. Kapila has opined that "the value of the Electronic Voucher afforded by the proposed Settlement approximates its retail value of $5 per Electronic Voucher or $20 for the 4 Electronic Vouchers allowed under the Settlement Agreement," for an estimated aggregate value of $10 million. ECF No. [110-3] ¶¶ 43-44.

### 3. Election of benefits

The Class Notice informed each Class Member that they had sixty (60) days from the date the Class Notice email was sent to make their selection, otherwise the default relief would be the free four-month subscription to the Spartan+ Program. ECF No. [102-3], ¶ III.B. Notably, no claim form or process is required, and Settlement Class Members will automatically receive the benefit of the four-month subscription to the Spartan+ Program.

### 4. Injunctive relief to the Settlement Class

In addition to providing all Class Members with the relief described above, Defendant has also agreed to the following injunctive relief, which ensures that the alleged violations of the Racer Insurance Fee will be cured for all Class Members and Spartan consumers going forward:

- Spartan will not describe in writing or abbreviate the at-issue fee as a "Racer Insurance Fee," "Racer Insur. Fee," "Insurance Fee," "Insur. Fee," or similar nomenclature. Spartan specifically retains the right to describe the at-issue fee as an "Administrative, Insurance, and Management Fee," "AIM

Fee," or "Admin Fee" during the online event registration process or elsewhere.

- Spartan will add the following language to current and future marketing and sales materials, FAQs, relevant website screens in the registration process, and screen indicators or selectors that describe or are adjacent to the at-issue fee: "The Administrative, Insurance, and Management Fee covers a number of different costs involved in Spartan events, including administrative and management costs, insurance costs and expenses for related risk management and safety measures. This fee is not a direct pass-through of third-party costs to the racer and may include revenues to Spartan."

- Spartan agrees that it will not represent, directly or indirectly, that 100% (or all) of the "Administrative, Insurance, and Management Fee" is paid to an insurance provider or other third-party.

ECF No. [102-3] ¶ III.C.

### C.  Notice to Class Members

Federal Rule of Civil Procedure 23 governs class notice requirements. Before approving a class action settlement, a district court must ensure that "notice [was given] in a reasonable manner to all class members who would be bound by the proposal[.]" Fed. R. Civ. P. 23(e)(1)(B). Specifically, class members must receive "information reasonably necessary to make a decision [whether] to remain a class member and be bound by the final judgment or opt out of the action[.]" *Faught v. Am. Home Shield Corp.*, 668 F.3d 1233, 1239 (11th Cir. 2011) (alterations in original) (quoting *In re Nissan Motor Corp. Antitrust Litig.*, 552 F.2d 1088, 1104-1105 (5th Cir. 1977)). In an action certified under Rule 23(b)(3), "class members should receive 'the best notice that is practicable under the circumstances.'" *Saccoccio v. JP Morgan Chase Bank, N.A.*, 297 F.R.D. 683, 691 (S.D. Fla. 2014) (quoting Fed. R. Civ. P. 23(c)(2)(B)).

After the Court certified the class for the purpose of settlement, on February 25, 2021, Defendant compiled a list of 809,116 unique email addresses identified as potentially belonging to Class Members. ECF No. [110-4] ¶ 3. To compile the list, Defendant searched its database for registrations that met the class definition. Any email addresses in the Defendant consumer database

that previously "hard bounced" and were labeled "dead" were removed, resulting in a total of 789,239 unique email addresses in the final list of Class Members. *Id.* On March 2, 2021, Defendant disseminated the Class Notice, *id.* at 5-17, via direct email to the 789,239 Class Members. *Id.* ¶ 4. From the 789,239 emails sent, 9,648 emails that were returned as undeliverable. *Id.* ¶ 5.

Additionally, on March 3, 2021, Class Counsel established an internet website to inform Class Members of the Agreement, their rights, dates and deadlines, and related information. ECF No. [110-5] ¶ 28. Since Class Notice was disseminated and the settlement website established, Class Counsel fielded calls and inquiries from dozens of Class Members who voiced their support for the Settlement, and Class Counsel answered any questions regarding the Settlement administration process. ECF No. [110-5] ¶ 29.

Persons who wished to be excluded from the Settlement Class were provided an opportunity to request exclusion as described in the Class Notice and on the Settlement Website. Class Members were informed that requests for exclusion from the Class must be received no later than April 7, 2021. ECF No. [110-4] ¶ 6; *id.* at 13. A total of eight (8) Class Members timely sought exclusion from the Settlement Class. ECF No. [122] ¶ 3; *id.* at 4. Additionally, two objections were filed. ECF Nos. [113] & [117] ("Objections").

In addition to providing notice to Class Members, on February 5, 2021, in compliance with the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1715, Defendant caused fifty-three (53) CAFA Notice Packets to be mailed via Certified U.S. Mail to the U.S. Attorney General and to the Attorneys General of every state, the District of Columbia, Puerto Rico, and the Virgin Islands. ECF No. [110-2] ¶¶ 2-3. The parties have not received a response or objection to the CAFA Notice Packet from any of the state or federal regulators. *Id.* ¶ 4.

### D. Objections to the Settlement

Out of approximately 800,000 Class Members, only two objections were filed in opposition to the proposed Settlement by Jed Nolan and Frank Mari (collectively, "Objectors"). Both Objectors argued that Settlement relief provides nothing more than a "coupon" under CAFA, which requires a heightened level of scrutiny by the Court and limits the method by which the attorneys' fees may be awarded to Class Counsel. *See generally* ECF Nos. [113] & [117].[3] Having considered the relevant submissions, the arguments of the parties presented at the May 7, 2021 Fairness Hearing, and the applicable law, the Court finds that the Settlement is not a "coupon settlement" and the Objections are overruled.

CAFA regulates "coupon" settlements in two ways. First, if the settlement provides class members with a coupon recovery, the court must employ specific rules in calculating attorneys' fees. *See* 28 U.S.C. § 1712(a)-(c). Second, the court may approve a "coupon" settlement only after a hearing to determine whether the settlement is fair, reasonable, and adequate for class members. *Id.* at (e). Notably, however, Congress has not defined "the ambiguous term 'coupon' within the statute," requiring courts "to look to other interpretive tools, including legislative history in order to determine the statute's best meaning." *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 950 (9th Cir. 2015) ("*Online DVD-Rental*") (internal quotation marks omitted) (citations omitted); *see also* S. REP. 109-14, at 15 (highlighting the concern regarding "coupon settlements"—most of the monetary benefits of a class action settlement go to class counsel and "class members receive nothing more than promotional coupons to purchase more products from the defendant."); *Figueroa v. Sharper Image Corp.*, 517 F. Supp. 2d 1292, 1302 (S.D. Fla. 2007) (recognizing that three primary concerns with coupon settlements: "they often do not provide meaningful

---

[3] Objector Mari incorporates by reference the legal arguments contained in the Objection of Jed Nolan. ECF No. [117] ¶ 1 (citing ECF No. [113] at 8-27).

compensation to class members; they often fail to disgorge ill-gotten gains from the defendant; and they often require class members to do future business with the defendant in order to receive compensation.").

In support of their respective positions, both Plaintiff and Objectors rely on *Online DVD-Rental*, in which the Ninth Circuit found that a Walmart $12 gift card was not a coupon under CAFA. In reaching its conclusion, the court considered the following relevant factors: (1) whether the settlement provides class members with little or no value; (2) whether the settlement requires class members to hand over their own money before they can take advantage of the coupon; (3) whether the purported coupon is only valid for select products or services; and (4) whether the purported coupon expires in a short period of time, and whether it is freely transferrable. *Online DVD-Rental*, 779 F.3d at 950-52. These factors guide the Court's analysis.

First, the Court finds that the Spartan+ Program automatically provided to Settlement Class Members is not a "coupon." Indeed, many courts across the nation have approved class action settlements with similar non-cash settlement benefits, concluding that they do not qualify as a "coupon" within the meaning of 28 U.S.C. § 1712. *See, e.g.*, *In re Equifax Inc. Customer Data Sec. Breach Litig.*, No. 1:17-MD-2800-TWT, 2020 WL 256132, at *37 (N.D. Ga. Mar. 17, 2020) (stating that the settlement, which included an option to select a free credit monitoring services, was not a coupon); *Hahn v. Massage Envy Franchising, LLC*, No. 12CV153 DMS (BGS), 2016 WL 11620608, at *13 (S.D. Cal. Mar. 30, 2016) (finding that a settlement providing class members with free massages was not a coupon settlement); *David*, 2010 WL 1628362, at *7 (finding that proposed settlement was not a coupon, the settlement "does not simply provide coupons premised on future purchases that enrich the [d]efendant" and highlighting that "[r]edemption of the award does not require any purchase on the part of class members."); *Browning v. Yahoo! Inc.*, No. C04-

01463 HRL, 2007 WL 4105971, at *5 (N.D. Cal. Nov. 16, 2007) (concluding that the settlement relief of either a free credit report with $5 or two months of free credit monitoring worth $9.95 per month was not a coupon settlement "because it does not require class members to spend money in order to realize the settlement benefit.").

Here, the Spartan+ Program does not provide a discount to a Spartan product, but instead provides each Settlement Class Member with an automatic non-cash benefit with a monetary value of $32—aggregate market-based retail value of $25.6 million. ECF No. [110-3] ¶ 39.[4] Settlement Class Members are not required to spend any money to realize the benefit of the four-month Spartan+ Program, are not required to provide any financial information to initiate the subscription, and the subscription will automatically terminate at the end of the four-month period. ECF No. [102-3] ¶ III.A. In other words, at no point will Settlement Class Members need to pay any out of pocket costs, nor continue transacting business with Defendant.

Similarly, the electronic $5 voucher, which is available to Settlement Class Members as an alternative to the automatically provided four-months subscription to the Spartan+ Program, does not qualify as a "coupon" either.[5] Indeed, a key characteristic of a coupon under CAFA is a "discount—frequently a small one—on class members' purchases from the settling defendant." *Online DVD-Rental*, 779 F.3d at 950-51. *Compare Seebrook v. Children's Place Retail Stores, Inc.*, No. C 11-837 CW, 2013 WL 6326487, at *2 (N.D. Cal. Dec. 4, 2013) (finding that $10 merchandise credit provided by the settlement was not a coupon because the store carries

---

[4] The only evidence in the record regarding the value of the Settlement is that of expert economist Mr. Kapila. *See* ECF No. [110-3]. Objectors have not proffered any evidence to challenge or overcome his analysis as to the value of the proposed relief.

[5] According to Mr. Kapila, based on the approximately two million registrants during the Class Period, the aggregate value of the $5 voucher approximates $10 million dollars. ECF No. [110-3] ¶ 44. This has not been disputed by Objectors.

merchandise priced at $10 or less, and "class members do not need to spend money in order to realize the settlement benefit."), *with Linneman v. Vita-Mix Corp.*, 394 F. Supp. 3d 771, 780 (S.D. Ohio 2019), *rev'd on other grounds*, 970 F.3d 621 (6th Cir. 2020) (finding that a $70 gift card was a coupon where, among other factors, the gift card could only be used to purchase a blender or container from defendant's store, which exceeded the value of the gift card).

Here, Settlement Class Members will not need to hand over more of their own money to Defendant before taking advantage of the $5 voucher, which can be stacked up to four races (total value of $20). Indeed, there are 25 products available on Spartan's website priced at $5 or less (including bracelets, magnets, keychains, hydration packets, Spartan magazine, and vinyl stickers), and nearly 100 products available that an individual may purchase with the stacking of the $20 voucher. ECF No. [110-3] ¶¶ 40-44. While shipping charges are not included for these items, that alone does not transform the voucher to a purportedly worthless coupon.[6] Settlement Class Members who elected to receive this alternative relief are still receiving the free value of the merchandise. Additionally, the vouchers are fully transferrable to friends and family, will remain valid for two years from the date of issuance, and class members can stack up to four electronic vouchers amounting to a total of $20.[7] *See Johnson v. Ashley Furniture Indus., Inc.*, No. 13CV2445 BTM(DHB), 2016 WL 866957, at *3 (S.D. Cal. Mar. 7, 2016) (finding that that $25 merchandise voucher was not a coupon because "class members have choices as to what they may purchase with the voucher and may purchase an entire product as opposed to just reducing the purchase price."); *see also Online DVD-Rental*, 779 F.3d at 951 (finding that $12 gift card was not a coupon

---

[6] The Court highlights, again, that the $5 voucher is an alternative relief. Thus, to the extent a Settlement Class Member was deterred by the cost of shipping, he or she was given the opportunity to automatically receive the Spartan+ Program, which requires zero expense to utilize its benefits.

[7] There are nearly 100 merchandise items available on Spartans website for $20 or less (including T-shirts, hoodies, jackets, and towels). ECF No. [110-3] ¶ 41.

where it could be used to purchase any products on walmart.com, was freely transferrable, did not

expire, and did not require consumers to spend their own money).

    For the reasons set forth herein, the Court is not persuaded that the Settlement is a "coupon

settlement" requiring the application of 28 U.S.C. § 1712. Thus, the Objections are overruled on

this basis.

### E.  The Settlement is Fair, Adequate, and Reasonable

    "Before approving a settlement, the district court must find that it 'is fair, adequate and

reasonable and is not the product of collusion between the parties.'" *Nelson v. Mead Johnson &*

*Johnson Co.*, 484 F. App'x 429, 434 (11th Cir. 2012) (quoting *Bennett v. Behring Corp.*, 737 F.2d

982, 986 (11th Cir. 1984)). The Court's "judgment is informed by the strong judicial policy

favoring settlement as well as by the realization that compromise is the essence of settlement." *Id.*

    Courts in the Eleventh Circuit evaluate six factors in determining whether to approve a

class action settlement: (1) the existence of fraud or collusion among the parties in reaching the

settlement; (2) the complexity, expense, and duration of the litigation; (3) the stage of proceedings

at which the settlement was achieved and the amount of discovery completed; (4) the probability

of the plaintiffs' success on the merits; (5) the range of possible recovery; and (6) the opinions of

class counsel, the class representatives, and the substance and amount of opposition to the

settlement. *See Leverso v. S. Trust Bank of Ala., N.A.*, 18 F.3d 1527, 1530 n.6 (11th Cir. 1994).[8]

Taken together, review of these considerations compels the conclusion that the Settlement warrants

final approval.

---

[8] In assessing these factors, the Court "should be hesitant to substitute . . . her own judgment for that of
counsel." *Lipuma v. Am. Express Co.*, 406 F. Supp. 2d 1298, 1315 (S.D. Fla. 2005) (quoting *In re Smith*, 926
F.2d 1027, 1028 (11th Cir. 1991)).

### 1.   There is no evidence of fraud or collusion among the parties

"Where the parties have negotiated at arm's length, the Court should find that the settlement is not the product of collusion." *Saccoccio*, 297 F.R.D. at 692 (citing *Ass'n for Disabled Ams., Inc. v. Amoco Oil Co.*, 211 F.R.D. 457, 470 (S.D. Fla. 2002)). "There is a presumption of good faith in the negotiation process." *Id.*

The Settlement was negotiated at arm's length. The parties participated in an intensive mediation with Michael D. Young, a well-respected mediator with significant experience resolving complex cases. ECF No. [103] ¶¶ 2-4. Settlement negotiations between the parties took place over the course of two months with the supervision of Mr. Young, during which the parties participated in a full-day mediation session on December 1, 2020 and multiple Zoom and telephonic follow-up sessions. *Id.* ¶¶ 5-7; ECF No. [110-5] ¶¶ 10-14. In addition to counsel for the parties, outside coverage counsel for Travelers and Chubb, the two insurance carriers providing potential coverage to Defendant for the claims asserted in the action, participated throughout the mediation. ECF No. [103] ¶ 8. The insurers raised several coverage defenses, including that Defendant lacks the financial resources necessary to satisfy the claims asserted should Plaintiff prevail at trial. *Id.* ¶ 8; *see also* ECF No. [110-5] ¶ 12. Spartan, therefore, maintained throughout the mediation process that its financial condition precluded it from making any meaningful monetary contribution to any class settlement, but agreed to provide other substantial benefits. ECF No. [103] ¶ 9. The parties spent several weeks investigating those alternative potential settlement benefits. *Id.*

The parties were unable to reach a settlement agreement, and the Court lifted the stay on December 21, 2020. ECF Nos. [89] & [90]. On December 29, 2020, the Court heard oral argument on Plaintiff's Motion for Class Certification, ECF No. [97], where the Court raised several concerns regarding the certifiability of the class. Following the class certification hearing, the parties continued settlement negotiations with Mr. Young, and ultimately accepted Mr. Young's

proposal, based on the relevant circumstances. ECF No. [103] ¶ 11.

Mr. Young has submitted a sworn declaration to the Court providing details of the parties' mediation efforts. ECF No. [103]. Mr. Young testified that the "Settlement is the product of hard-fought arm's length negotiations which took place directly under [his] supervision, throughout November and December 2020 and into January 2021." *Id.* ¶ 5. He also observed that the "caliber of the representation of both sides was, in [his] experience, exemplary[]" and that the Settlement was "clearly the result of difficult, non-collusive negotiations that were conducted at arm's length by very skilled, well-informed lawyers." *Id.* ¶ 5, 15. The very fact of Mr. Young's involvement— let alone his sworn declaration—weighs in favor of approval. *See, e.g.*, *Poertner v. Gillette Co.*, 618 F. App'x 624, 630 (11th Cir. 2015) ("self-dealing contention" was "belied" by involvement of experienced mediator); *Lobatz v. U.S. In re Educ. Testing Serv. Praxis Principles of Learning & Teaching, Grades 7-12 Litig.*, 447 F. Supp. 2d 612, 619-20 (E.D. La. 2006) (use of special master to oversee mediation evidenced procedural fairness of negotiating process). The parties' negotiations were also informed by extensive discovery obtained by Class Counsel in litigating these claims. Based on the foregoing, there is no suggestion of fraud or collusion, explicit or subtle.

**2. The Settlement will avoid years of complex and extensive litigation**

The Settlement covers legal claims and defenses brought on behalf of approximately 800,000 Class Members, including claims for complex deceptive trade practices claims and common law unjust enrichment. ECF No. [15]. Litigating these claims to resolution would have proven difficult and consumed significant time, money, and judicial resources. Even if Plaintiff would have ultimately prevailed on class certification and on the merits, which Defendant contests, that success would likely have borne fruit for the Class only after years of trial and appellate proceedings and considerable expenditure of monies by both sides. "Complex litigation – like the

instant case – can occupy a court's docket for years on end, depleting the resources of the parties and the taxpayers while rendering meaningful relief increasingly elusive." *In re U.S. Oil & Gas Litig.*, 967 F.2d 489, 493 (11th Cir. 1992); *see also In re Oil Spill by Oil Rig Deepwater Horizon in Gulf of Mex., on Apr. 20, 2010*, 910 F. Supp. 2d 891, 932 (E.D. La. 2012) *aff'd* 2014 WL 103836 (5th Cir. Jan. 10, 2014) ("Even assuming litigation could obtain the results that this Settlement provides, years of litigation would stand between the class and any such recovery. Hence, this second . . . factor weighs strongly in favor of granting final approval to the Settlement Agreement.").

The Settlement provides immediate and substantial relief to the Settlement Class, with benefits approximating one hundred percent to the Settlement Class Members' actual damages. ECF No. [110-3] ¶ 38 (retail value of the automatic Spartan+ Program membership is $7.99 per month or $32 for the four-month membership period); *see also* ECF No. [110-5] ¶¶ 41-49. This recovery is extremely favorable, and constitutes an excellent result. *See, e.g.*, *Beber et al. v. Branch Banking & Trust Co. et al.*, No. 15-cv-23294 (S.D. Fla. Oct. 10, 2017), ECF No. [109] (approving similar settlement with payment percentages of 10%, 8%, and 5%); *Saccoccio*, 297 F.R.D. at 693 (return of 12.5% of premiums charged for FPI with prospective relief "very likely exceeds what Plaintiffs could have won at trial"); *In re Checking Account Overdraft Litig.*, 830 F. Supp. 2d 1330, 1346 (S.D. Fla. 2011) (range of 9% to 45% of damages was an "exemplary" result). These benefits come without the expense, uncertainty, and delay of litigation. In light of the costs, uncertainties, and delays of litigating through trial—possibly an appeal—"the benefits to the class of the present settlement become all the more apparent." *See Ressler v. Jacobson*, 822 F. Supp. 1551, 1555 (M.D. Fla. 1992). This factor also weighs in favor of approving the Settlement.

### 3. The parties finalized a settlement after litigating the case for over one year and engaging in extensive discovery

Courts consider "the degree of case development that class counsel have accomplished prior to settlement" to ensure that "counsel had an adequate appreciation of the merits of the case before negotiating." *In re Gen. Motors Pick-up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 813 (3d Cir. 1995). At the same time, "[t]he law is clear that early settlements are to be encouraged, and accordingly, only some reasonable amount of discovery should be required to make these determinations." *Ressler*, 822 F. Supp. at 1555.

Prior to Settlement, Class Counsel had been investigating and litigating these claims related to Spartan's Racer Insurance Fee for over a year, and familiarized themselves thoroughly with the facts of this matter. ECF No. [110-5] ¶ 36. This knowledge led the parties to enter into settlement discussions. Moreover, through the parties' settlement negotiations, Class Counsel confirmed details regarding Spartan's marketing and representations regarding the Racer Insurance Fee, the Class Members affected, and the amount at stake to ensure that the Settlement was fair and complete, and to confirm the value of the relief provided to the Settlement Class. Thus, Class Counsel were well-positioned to evaluate the strengths and weaknesses of Plaintiff's claims, and the appropriate basis upon which to settle them. *Id.* ¶¶ 30-33, 41-49.

### 4. Plaintiff and Class Members would have faced significant risks had they proceeded with litigation

"[T]he likelihood and extent of any recovery from the defendants absent . . . settlement" must be considered in assessing the reasonableness of a settlement. *See In re Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. 297, 314 (N.D. Ga. 1993); *see also Ressler*, 822 F. Supp. at 1555 ("a court is to consider the likelihood of the plaintiffs' success on the merits of his claims against the amount and form of relief offered in the settlement before judging the fairness of the compromise").

Here, Plaintiff may well have recovered nothing for himself or Settlement Class Members had he proceeded with litigation. Indeed, while Class Counsel and Plaintiff believed that their position was compelling, Defendant raised significant defenses to all of the claims, including 39 affirmative defenses. ECF No. [44]. Additionally, Defendant opposed certification of the class, raising numerous arguments that placed class recovery at risk. ECF Nos. [63] & [95]. Had litigation continued, Plaintiff and Settlement Class Members would have risked not prevailing on their claims, and Plaintiff could have stood to recover nothing on behalf of a nationwide Class. ECF No. [110-5] ¶¶ 3-4, 37-40.

### 5. The Settlement offers Class Members significant benefits, as well as valuable injunctive relief

The Settlement provides significant benefits. As outlined above, the Settlement Class Members will be automatically enrolled in the Spartan+ Program for a period of four months, unless they affirmatively elected to receive the alternative relief in the form of the $5 voucher. Plaintiff and the Settlement Class Members faced significant hurdles in litigating their claims to resolution, including the potential denial of class certification or defeat at trial.

Despite these challenges, each Settlement Class Member now stands to recover benefits estimated to be worth twice the amount of each $14 Racer Insurance Fee paid. Indeed, the Spartan+ Program has a retail value of $7.99, which totals $32 for the four-month membership period under the Settlement. ECF No. [110-3] ¶ 38. Moreover, the agreed-to injunctive relief requires Defendant to provide meaningful disclosures regarding the fee they charge, ensuring that the alleged violations will be cured going forward. ECF No. [102-3] at 8-9. *See Hamilton v. SunTrust Mortg. Inc.*, No. 13-60749-CIV, 2014 WL 5419507, at *4 (S.D. Fla. Oct. 24, 2014) ("The Court finds the injunctive changes provided in the Settlement Agreement are important and have significant value to the class members nationwide."); *Perez v. Asurion Corp.*, 501 F. Supp. 2d 1360, 1380-81 (S.D.

Fla. 2007) (describing important injunctive relief in discussing range of possible recovery); *Lipuma v. Am. Express Co.*, 406 F. Supp. 2d 1298, 1322 (S.D. Fla. 2005) (valuing injunctive relief as part of "significant benefits" made available to class and determining that settlement was fair, adequate, and reasonable). The Class Members are unique—they represent a group of health-conscious individuals who have participated in the exceedingly challenging Spartan Race. To the extent Settlement Class Members will embark on future races, the injunctive relief will certainly provide them with an additional direct value. Thus, in this Court's judgment, this Settlement offers Settlement Class Members with excellent relief, which weighs strongly in favor of final approval.

### 6. The opinions of class counsel, class representatives, and class members favor recovery

A court should give "great weight to the recommendations of counsel for the parties, given their considerable experience in this type of litigation." *Warren v. Tampa*, 693 F. Supp. 1051, 1060 (M.D. Fla. 1988). This Court has already found that Class Counsel and Plaintiff will adequately represent the Class in this action, and its conclusion was warranted. *See* ECF No. [107].

Class Counsel litigated this matter aggressively and competently, reviewed tens of thousands of documents, prevailed over Spartan's Motion to Dismiss, ECF No. [36], and fully support the Settlement. Based on this specific experience and decades of experience in litigating consumer class action lawsuits, it is Class Counsel's opinion that the Settlement is fair, reasonable, adequate, and in the best interests of the Settlement Class. ECF No. [110-5] ¶ 50. Indeed, of the approximate 800,000 Class Members, the parties have received only eight (8) timely exclusion requests and two (2) objections. ECF Nos. [122] ¶ 3, [113], & [117]. This overwhelming support is evidence of the Settlement's fairness. *See, e.g.*, *Saccoccio*, 297 F.R.D. at 694 (opposition amounting to .018% of the class was termed as "low resistance to the settlement" and weighed "in favor of approving the settlement."); *Churchill Village LLC v. Gen.*

*Elec.*, 361 F.3d 566, 577 (9th Cir. 2004) (affirming settlement with 45 objections out of 90,000 notices). Viewed either independently or taken together, the above factors confirm that the Settlement is fair, reasonable, adequate, and in the best interests of the Settlement Class.

### F.   Attorneys' Fees and Costs

In the Motion, Class Counsel request a fee award not to exceed $2,290,000.00, which represents 8.9% of the value of the monetary benefits to the class. ECF No. [110] at 15; *see also* ECF No. [110-3] ¶¶ 32-39. As addressed above, the parties estimate that there are approximately 800,000 Class Members, and the total value of the monetary benefits is $25.6 million, which excludes the significant injunctive relief obtained on behalf of the Class. Notably, the parties negotiated Class Counsel's attorneys' fees and expenses only after reaching an agreement on all other material terms of the Settlement. ECF No. [110-5] ¶ 58. In determining the amount of reasonable attorneys' fees and expenses, the Court uses a common fund analysis based on the percentage of the total available benefit to the Class, and not a lodestar approach.

The United States Supreme Court, the Court of Appeals for the Eleventh Circuit, and this Court have all expressly approved calculating fees by applying the percentage-of-recovery method to the total value of the settlement. *See Boeing v. Van Gemert*, 444 U.S. 472, 478 (1980) ("[A] litigant or lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole."); *Waters v. Int'l Precious Metals Corp.*, 190 F.3d 1291, 1295-96 (11th Cir. 1999) (affirming fee award of 33-1/3% of total amount made available to class, and determining that attorney's fees may be determined based on total fund, not just actual payout to class); *see also Poertner v. Gillette Co.*, 618 F. App'x 624, 628 (11th Cir. 2015) (quoting *Camden I Condo. Ass'n v. Dunkle*, 946 F.2d 768, 774 (11th Cir. 1991) ("attorney's fees awarded from a common fund shall be based on a reasonable percentage of the

fund established for the benefit of the class")); *David*, 2010 WL 1628362, at \*8 n.14 (settlement with ascertainable benefits may be treated as a common fund to which a percentage fee may be awarded, even if the fee is separately paid by the defendant). "Under *Camden I*, courts in the Eleventh Circuit regularly award fees based on a percentage of the recovery, without discussing lodestar at all." *In re Checking Account Overdraft Litig.*, 830 F. Supp. 2d 1330, 1363 (S.D. Fla. 2011) (citing *David*, 2010 WL 1628362, at \*7-8).

"[F]ederal district courts across the country have, in the class action settlement context, *routinely* awarded class counsel fees in excess of the 25 percent 'benchmark,' even in so-called 'mega-fund' cases." *Allapattah Servs., Inc. v. Exxon Corp.*, 454 F. Supp. 2d 1185, 1210 (S.D. Fla. 2006) (emphasis added; awarding fees of 31.5% of settlement fund). Here, the requested percentage falls well below the range provided by the Eleventh Circuit. *See Camden I,* 946 F. 2d at 774 (20%-50% of the value provided); *David*, 2010 WL 1628362 at \*8 n.15 (20%-50% of common fund is "the customary fee in class actions that result in substantial benefits").

The Eleventh Circuit's factors for evaluating the reasonable percentage to award class action counsel are: (1) the time and labor required; (2) the novelty and difficulty of the questions involved; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and the length of the professional relationship with the client; and (12) awards in similar cases. *See Camden I,* 946 F.2d at 772 n.3. This Court may also consider the time required to reach a settlement, the existence of substantial

objections and non-monetary benefits, and the economics of prosecuting a class action. *Id.* at 775. The factors set forth in *Camden I* fully support the Court's determination that the fee is reasonable.

### 1. Time and labor of Class Counsel

Class Counsel spent considerable time and labor in investigating, prosecuting, and negotiating the Settlement. ECF No. [110-5] ¶¶ 60-65. Class Counsel spent over 1,200 hours investigating the claims of many potential plaintiffs and in litigating Plaintiff's and the Class's claims against Spartan, and expended a total of $70,181.32 in prosecuting this action. *Id.*; *see also* ECF No. [133-1]. Class Counsel successfully defended against Spartan's Motion to Dismiss, ECF No. [36], and investigated class claims and allegations through extensive discovery, which included a review of thousands of pages of documents and the depositions of Defendant's key personnel. ECF No. [110-5] ¶ 31. Further, the Court held a two-and-a-half-hour hearing on Plaintiff's Motion for Class Certification. ECF No. [97]. Equally important, Class Counsel will continue to deal with the thousands of Settlement Class Members in this case after final approval, and will be responsible for handling all post-approval proceedings, including responding to any appeals. ECF No. [110-5] ¶ 64. As such, the time and resources Class Counsel devoted to prosecuting and settling this action on behalf of a nationwide class justify the award in which they seek.

### 2. Novelty and difficulty of the questions at issue

As addressed in detail above, this case presents novel questions of law and issues of fact. There is no question that class action matters are generally complex, and the Court is well-informed of the various challenges Class Counsel faced in litigating this action. Spartan's defenses regarding differences in representations, the purpose of the Racer Insurance Fee, the different state laws at issue, and its various affirmative defenses led to significant briefing on class certification and would have led to further briefing on the merits at trial, post-trial, and on appeal. ECF No. [110-

5] ¶¶ 3, 35-40, 60-62, 69-74. Thus, even though Class Counsel successfully reached a settlement with Spartan, the difficulty and associated risk of mastering and litigating these issues amply support the full award requested.

### 3. The skill, experience, and reputation of Class Counsel

This litigation required a high degree of skill and experience. Class Counsel have established their skill, experience, and reputation in the record, and in repeated cases before this Court. *Id.* ¶¶ 65-67; *see also* ECF No. [102-4]. Class Counsel's reputation, diligence, expertise, and skill are reflected in the excellent results they have achieved. They resolved this dispute efficiently despite the potential hurdles presented them and the arguments raised by Defendant as detailed above. The quality of Class Counsel and their achievement in this case are equally shown by the strength of their opponents, Cole, Scott, and Kissane, P.A., and Mintz, Levin, Cohn, Ferris, Glovsky and Popeo, P.C., which are excellent defense firms. Thus, this factor also favors awarding the requested fee.

### 4. The contingent nature of the fee, financial burden on Class Counsel, and preclusion from other employment as a result

A determination of a fair fee for Class Counsel must include consideration of the contingent nature of the fee, the outlay of out-of-pocket expenses by Class Counsel, and the fact that the risks of failure and nonpayment in a class action are extremely high. *See Pinto v. Princess Cruise Lines, Ltd.*, 513 F. Supp. 2d 1334, 1339 (S.D. Fla. 2007). Class Counsel undertook significant risk in pursuing this action, and would not have recovered any fee or their expenses had the Court declined to certify a class or had they lost at trial. *Id.* ¶¶ 75-79. Additionally, the time and labor Class Counsel spent in litigating this action precluded them from working on other matters and accepting other representations. *Id.* ¶¶ 80, 83. Thus, these factors weigh in favor of awarding Class Counsel approximately 8.9% of the monetary value of the benefits obtained.

### 5.   The request comports with customary fees awarded in similar cases

The fees requested are well below the range of the customary fee awarded in common fund cases. *See Sawyer v. Intermex Wire Transfer, LLC*, 2020 WL 5259094, at *1 (S.D. Fla. Sept. 3, 2020) (awarding one-third of the common fund); *Hanley v. Tampa Bay Sports & Entm't LLC*, No. 8:19-cv-00550-CEH-CPT, 2020 WL 2517766, at *6 (M.D. Fla. Apr. 23, 2020) ("Indeed, district courts in the Eleventh Circuit routinely approve fee awards of one-third of the common settlement fund."); *Wolff v. Cash 4 Titles*, No. 03-cv-22778, 2012 WL 5290155, at *6 (S.D. Fla. Sept. 26, 2012) (collecting cases and concluding that 33% is consistent with the market rate in class actions); *Waters*, 190 F.3d at 1295-96 (affirming attorneys' fee award of 33.3% to class counsel). Here, the fee requested is approximately 8.9% of the total monetary benefits, which is well-below the range of the customary fee awarded in common fund cases. Moreover, the fee does not include the significant value of the injunctive relief obtained. ECF No. [110-5] ¶ 82. Thus, this factor also favors awarding the requested fee.

### 6.   Class Counsel achieved an excellent result

The result achieved is excellent, and perhaps best supports the propriety of Class Counsel's requested fee award. *See Hensley v. Eckerhart*, 461 U.S. 424, 436, (1983) ("critical factor is the degree of success obtained"); *Pinto*, 513 F. Supp. 2d at 1342; *Behrens*, 118 F.R.D. at 547-48 ("The quality of work performed in a case that settles before trial is best measured by the benefit obtained."). In considering the results, courts examine the value of *both* monetary and prospective relief. *See Poertner*, 618 Fed. App'x at 629; *Perez v. Asurion Corp.*, 501 F. Supp. 2d 1360 (S.D. Fla. 2007); *LiPuma,* 406 F. Supp. 2d at 1323.

The Court finds that the results, with Class benefits worth more than $25.6 million in value and the prospective relief, are excellent. Settlement Class Members will receive an immediate benefit from the potential economic settlement benefits of over $25.6 million, which represents

approximately 100% of the claimants' actual potential damages. ECF No. [110-5] ¶ 81; *see also* ECF No. [110-3] ¶ 39. Moreover, Defendant is required to provide meaningful disclosures regarding the fee they charged (now called the "Administrative, Insurance, and Management Fee" or "AIM Fee") and other injunctive changes. ECF No. [102-3] at 8-9. These results strongly support the fee award requested.

### G.  Service Award

Finally, the Motion requests that an incentive award not to exceed $10,000.00 be awarded to Plaintiff as the Class Representative. In *Johnson v. NPAS Sols., LLC*, 975 F.3d 1244 (11th Cir. 2020), a panel of the United States Court of Appeals for the Eleventh Circuit held that service awards for class action representatives are impermissible. *Id.* at 1257-60. Importantly, no mandate in *Johnson* has been issued and a ruling for rehearing *en banc* is pending.

Class Counsel requests that this Court still approve the Settlement and all of its terms, but not approve the service award and retain "jurisdiction for the limited purpose of revisiting the denial of service awards if the Eleventh Circuit holds a rehearing *en banc* in *Johnson v. NPAS Sols., LLC* and reverses its decision," or another Eleventh Circuit decision overrules *NPAS. See Metzler v. Med. Mgmt. Int'l, Inc.*, No. 8:19-CV-2289-T-33CPT, 2020 WL 5994537, at *3 (M.D. Fla. Oct. 9, 2020) (reserving jurisdiction to award service awards if *NPAS* is reversed).

The Court agrees with Class Counsel and does not approve the service award, but will reserve jurisdiction to allow Class Counsel to renew the request for a service award should *Johnson* be reversed.

### III.  CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** that the Motion, **ECF No. [110]**, is **GRANTED** as set forth below:

1.      The terms and conditions in the Settlement Agreement, ECF No. [102-3], are incorporated as though fully set forth in this Order. Unless otherwise indicated, capitalized terms in this Order shall have the meanings attributed to them in the Settlement Agreement.

2.      The Court has personal jurisdiction over Settling Plaintiff, Defendant, and Settlement Class Members, venue is proper, the Court has subject-matter jurisdiction to approve the Settlement Agreement, including all Exhibits thereto, and the Court has jurisdiction to enter this Judgment. Without in any way affecting the finality of this Judgment, this Court retains jurisdiction as to all matters relating to administration, consummation, enforcement, and interpretation of the Settlement Agreement and of this Judgment, and for any other necessary purpose, including, but not limited to, enforcement of the Releases contained in the Settlement Agreement and entry of such further orders as may be necessary or appropriate in administering and implementing the terms and provisions of the Settlement.

3.      The Settlement was negotiated at arm's length by experienced counsel who were fully informed of the facts and circumstances of this litigation and of the strengths and weaknesses of their respective positions. The Settlement was reached after the Parties had engaged in extensive litigation, mediation, and negotiations. Counsel for the Parties were therefore well-positioned to evaluate the benefits of the Settlement, taking into account the expense, risk, and uncertainty of protracted litigation with respect to numerous difficult questions of fact and law.

4.      The Court finds that the prerequisites for a class action under Fed. R. Civ. P. 23(a) and 23(b) have been satisfied for settlement purposes for the Settlement Class in that: (a) the number of Settlement Class Members is so numerous that joinder of all members thereof is impracticable; (b) there are questions of law and fact common to the Settlement Class; (c) the claims of Settling Plaintiff are typical of the claims of the Settlement Class Members he seeks to

represent; (d) Settling Plaintiff and Class Counsel have and will continue to fairly and adequately represent the interests of the Settlement Class Members for purposes of the Settlement; (e) the questions of law and fact common to Settlement Class Members predominate over any questions affecting any individual Settlement Class Member; (f) the Settlement Class is reasonably ascertainable; and (g) a class action is superior to the other available methods for the fair and efficient adjudication of the controversy. Accordingly, and pursuant to Fed. R. Civ. P. 23, the Court certifies the Settlement Class.

5.      Pursuant to Fed. R. Civ. P. 23, the Court finally certifies the Settlement Class for settlement purposes only, as identified in the Settlement Agreement, which shall consist of the following:

> All individuals in the United States who during the Class Period, based on Spartan's records, paid a $14 "Racer Insurance Fee" or "Insurance Fee" in connection with any race organized and sponsored by Spartan. Excluded from the Class are (a) Defendant's board members and executive level officers; (b) the federal district and magistrate judges assigned to this Action, along with their court staff; and (c) individuals who submit a valid, timely exclusion/opt-out request.

6.      The Court finally designates the law firms of The Moskowitz Law Firm, PLLC, and Bonnett, Fairbourn, Friedman & Balint, P.C. as Class Counsel for the Settlement Class.

7.      The Court finally designates Settling Plaintiff Aaron Fruitstone as the Settlement Class representative.

8.      The Court makes the following findings with respect to Class Notice to the Settlement Class:

8.1      The Court finds that the direct distribution of the Class Notice and the creation of the Settlement Website for Class Member information, all as provided for in the Settlement Agreement and the Preliminary Approval Order, (i) constituted the best practicable notice under the circumstances that was reasonably calculated, under the circumstances, to apprise

Noticed Class Members of the Settlement, their right to object or to exclude themselves from the Settlement, and their right to appear at the Final Approval Hearing; (ii) were reasonable and constituted due, adequate and sufficient notice to all persons entitled to be provided with notice; and (iii) complied fully with the requirements of Fed. R. Civ. P. 23, the United States Constitution, the Rules of this Court, and any other applicable law.

8.2    Class Counsel has filed with the Court a declaration from Deanna Sheridan, Vice President of Spartan Race, Inc., ECF No. [110-4], attesting that the Class Notice was emailed to Noticed Class Members on March 2, 2021, and Class Counsel attests in their Joint Declaration, ECF No. [110-5], that the Settlement Website was established on March 3, 2021. Adequate Class Notice was given to the Noticed Class Members in compliance with the Settlement Agreement and the Preliminary Approval Order.

9.    Persons who wished to be excluded from the Settlement Class were provided an opportunity to request exclusion as described in the Class Notice and on the Settlement Website. The Court finds that the individual interests of the eight persons who timely sought exclusion from the Settlement Class ("Opt-Out Class Members") are preserved and that no person was precluded from being excluded from the Settlement Class if he or she so desired. *See* ECF Nos. [110-4] & [122]. Those persons who timely and properly excluded themselves from the Settlement Class are identified in the Supplemental Declaration of Deanna Sheridan Regarding Class Notice, ECF No. [122] at 4.

10.    Defendant has complied with all notice obligations under the Class Action Fairness Act, 28 U.S.C. § 1715, *et seq.*, in connection with the proposed Settlement.

11.    The Objections, ECF Nos. [113] & [117], are overruled in their entirety.

12.    The terms and provisions of the Settlement Agreement, including all Exhibits

attached thereto, have been entered into in good faith and, pursuant to Fed. R. Civ. P. 23(e), are fully and finally approved as fair, reasonable, adequate as to, and in the best interests of, Settlement Class Members. The Court enters judgment approving and adopting the Settlement and the Settlement Agreement, fully and finally terminating all Released Claims of all Releasing Persons in this Litigation against the Released Parties, on the merits and with prejudice.

13.     Pursuant to Fed. R. Civ. P. 23(h), the Court awards Class Counsel's attorneys' fees and expenses in the amount of two-million two-hundred and ninety dollars and zero cents ($2,290,000) payable by Defendant's Insurers pursuant to the terms of the Settlement Agreement. The Court denies Plaintiff's request for a service award at this time but retains jurisdiction for the limited purpose of revisiting the denial of service awards if the Court of Appeals for the Eleventh Circuit holds a rehearing *en banc* in *Johnson v. NPAS Solutions*, *LLC*, 975 F.3d 1244 (11th Cir. 2020), and reverses its decision, or if another Eleventh Circuit decision overrules *Johnson*. Defendant shall not be responsible for, and shall not be liable with respect to the allocation among Class Counsel or any other person who may assert a claim thereto, the attorneys' fees and expenses awarded by the Court.

14.     The terms of the Settlement Agreement, including all Exhibits thereto, and of this Judgment, shall be forever binding on, and shall have *res judicata* and preclusive effect in and on, all claims and pending and future lawsuits maintained by Settling Plaintiff and each Settlement Class Member, as well as each of their respective spouses, family members, executors, representatives, administrators, guardians, wards, heirs, attorneys-in-fact, estates, bankruptcy estates, bankruptcy trustees, successors, predecessors, joint tenants, tenants in common, tenants by the entirety, co-mortgagors, co-obligors, co-debtors, attorneys, agents and assigns, and all those who claim through them or who assert claims (or could assert claims) on their behalf, and all other

Releasing Persons.

15.     The Release, which is set forth in Section VI of the Settlement Agreement, is expressly incorporated herein in all respects and is effective as of the entry of this Judgment. Each of the Released Parties is forever released, relinquished, and discharged by each Releasing Person, including all Settlement Class Members, from all Released Claims (as that term is defined below and in the Settlement Agreement).

15.1     The definitions in the Settlement Agreement are incorporated in and are part of this Judgment.

15.2     Each Releasing Party shall, by operation of this Judgment, be deemed to have released any and all actions, claims, demands, rights, suits, debts, and causes of action of whatever kind or nature against the Released Parties, including damages, costs, expenses, penalties, equitable relief, injunctions, and attorneys' fees, known or unknown, suspected or unsuspected, in law or in equity that arise out of or relate to the factual allegations and claims asserted in this case individually and/or on a class wide basis.

15.3     In agreeing to the foregoing Release, Settling Plaintiff, for himself and on behalf of Settlement Class Members, shall be deemed to have acknowledged that unknown losses or claims could possibly exist and that any present losses may have been underestimated in amount or severity. Settling Plaintiff or any Settlement Class Member may hereafter discover facts other than or different from those that he/she knows or believes to be true with respect to the subject matter of the Released Claims or the law applicable to such claims may change. Nonetheless, Settling Plaintiff and each Settlement Class Member shall be deemed to have irrevocably waived and fully, finally and forever settled and released any known or unknown, suspected or unsuspected, asserted or unasserted, liquidated or unliquidated, contingent or non-contingent,

Case No. 20-cv-20836-BLOOM/Louis

claims with respect to all Released Claims. Further, Settling Plaintiff and each Settlement Class Member shall be bound by this Agreement, including by the Releases, and all of their claims in the Action asserted against Defendants shall be dismissed with prejudice and released, without regard to subsequent discovery of different or additional facts or subsequent changes in the law, and regardless of whether unknown losses or claims exist or whether present losses may have been underestimated in amount or severity, and even if they never received the Mail Notice of the Settlement, did not otherwise have knowledge of the Settlement, or never received Claim Settlement Relief. The Settling Parties shall be deemed to have acknowledged that the foregoing Releases were bargained for and are a material element of the Settlement Agreement.

15.4    Released Claims do not apply to new claims arising after the close of the Settlement Class Period based on conduct that took place after the close of the Settlement Period. Nothing in the Order shall be deemed a release of any Settlement Class Member's respective rights and obligations for such post-Settlement Claims.

15.5    Settling Plaintiff and Class Counsel have represented and warranted that there are no outstanding liens or claims against the Action, and Settling Plaintiff and Class Counsel will be solely responsible for satisfying any liens or claims asserted against the Action.

15.6    Settling Plaintiff and each Settlement Class Member shall be deemed to agree and acknowledge that the foregoing Releases were bargained for and are a material element of the Settlement Agreement.

15.7    The Releases do not affect the rights of Noticed Class Members who timely and properly submitted a Request for Exclusion.

15.8    The Settlement Agreement shall be the exclusive remedy for all Settlement Class Members with regards to the Released Claims.

16.      Neither the Settlement Agreement, nor any of its terms and provisions, nor any of the negotiations or proceedings connected with it, nor any of the documents or statements referred to therein, nor this Judgment, nor any of its terms and provisions shall be:

16.1      Offered by any person or received against any of the Released Parties as evidence or construed as or deemed to be evidence of any presumption, concession, or admission by any Released Party of the truth of the facts alleged by any person or the validity of any claim that has been or could have been asserted in the Litigation or in any litigation against any Released Party, or other judicial or administrative proceeding, or the deficiency of any defense that has been or could have been asserted in the Action or in any litigation against any Released Party, or of any liability, negligence, fault or wrongdoing of any Released Party;

16.2      Offered by any person or received against any of the Released Parties as evidence of a presumption, concession, or admission of any fault, misrepresentation, or omission with respect to any statement or written document approved or made by any of the Released Parties or of any other wrongdoing by any of the Released Parties;

16.3      Offered by any person or received against any of the Released Parties as evidence of a presumption, concession, or admission with respect to any liability, negligence, breach, fault, omission, or wrongdoing in any civil, criminal, or administrative proceeding in any court, administrative agency, or other tribunal;

16.4      Offered or received in evidence in any action or proceeding against any of the Released Parties in any court, administrative agency, or other tribunal for any purpose whatsoever, other than to enforce or otherwise effectuate the Settlement Agreement (or any agreement or order relating thereto), including the Releases or this Judgment.

17.      In the event that the Effective Date does not occur, this Judgment shall

automatically be rendered null and void and shall be vacated and, in such event, all orders entered and releases delivered in connection herewith shall be null and void, and the Parties will be returned to the status they occupied before entry of this Order.

18.     This Judgment and the Settlement Agreement (including the Exhibits thereto) may be filed in any action against or by any Released Party in order to support any argument, defense or counterclaim, including, without limitation, those based on principles of *res judicata*, collateral estoppel, release, good faith settlement, judgment bar or reduction, or any other theory of claim preclusion, issue preclusion, or similar defense or counterclaim.

19.     Settling Plaintiff and all Settlement Class Members and their respective spouses, family members, executors, representatives, administrators, guardians, wards, heirs, attorneys-in-fact, estates, bankruptcy estates, bankruptcy trustees, successors, predecessors, joint tenants, tenants in common, tenants by the entirety, co-mortgagors, co-obligors, co-debtors, attorneys, agents and assigns, and all those who claim through them or who assert claims (or could assert claims) on their behalf, have released the Released Claims as against the Released Parties, and are, from this day forward, hereby permanently barred and enjoined from directly or indirectly (a) filing, commencing, prosecuting, maintaining (including claims or actions already filed), intervening in, defending, or participating in (as parties, class members or otherwise) any action in any jurisdiction before any court or tribunal based on, arising from, or relating to any of the Released Claims or the facts and circumstances relating thereto, against any of the Released Parties; or (b) organizing any Settlement Class Members, or soliciting the participation of any Settlement Class Members, for purposes of pursuing any action (including by seeking to amend a pending complaint to include class allegations, or seeking class certification in a pending action) in any jurisdiction before any court or tribunal based on or relating to any of

the Released Claims or the facts and circumstances relating thereto. Any person in violation of this injunction may be subject to sanctions, including payment of reasonable attorneys' fees incurred in seeking enforcement of the injunction. The foregoing injunction is issued in order to protect the continuing jurisdiction of the Court and to effectuate and implement the Settlement Agreement and this Judgment.

20.     Settlement Class Members shall promptly dismiss with prejudice all claims, actions, or proceedings that have been brought by any Settlement Class Member in any jurisdiction that are based on Released Claims pursuant to the Settlement Agreement and this Judgment, and that are enjoined pursuant to this Judgment.

21.     The claims of Settling Plaintiff, individually and on behalf of the Settlement Class, including all individual claims and class claims presented herein, are dismissed on the merits and with prejudice against Defendants without fees (including attorneys' fees) or costs to any party except as otherwise provided in this Judgment.

22.     Settling Parties are directed to implement and consummate the Settlement according to its terms and provisions, as may be modified by Orders of this Court. Without further order of the Court, Settling Parties may agree to reasonably necessary extensions of time to carry out any of the provisions of the Settlement Agreement, as may be modified by the Preliminary Approval Order or this Judgment.

23.     Pursuant to Rule 54(b), the Court enters Judgment as described herein and expressly determines that there is no just reason for delay. Without impacting the finality of this Judgment, the Court shall retain jurisdiction over the construction, interpretation, consummation, implementation, and enforcement of the Settlement Agreement and this Judgment, including jurisdiction to enter such further orders as may be necessary or appropriate.

Case No. 20-cv-20836-BLOOM/Louis

24.     The Clerk shall **ADMINISTRATIVELY CLOSE** the case.

**DONE AND ORDERED** in Chambers at Miami, Florida, on May 20, 2021.

_____

**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

Copies to:

Counsel of Record